**FILED**

**DECEMBER 14, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEWARD JOHNSON and ARTHUR BRIGHT, | | |
| Plaintiffs, | | |
| v. | | **07 C 7036** |
| C.S. JOHNSON (STAR # 16589), C.M. BADY (STAR # 11453), TERRY HILLARD, LORI LIGHTFOOT, PHILIP CLINE, TISA MORRIS, MAYOR RICHARD DALEY, and the CITY OF CHICAGO, | No. | **JUDGE GUZMAN<br>MAGISTRATE JUDGE BROWN** |
| Defendants. | | |

## COMPLAINT AT LAW

NOW COME the PLAINTIFFS, by and through the LAW OFFICES OF BLAKE HORWITZ, LTD., and pursuant to this Complaint at Law, state the following against the above named Defendants, to wit C.S. JOHNSON (STAR # 16589), C.M. BADY (STAR # 11453), (hereinafter, the "DEFENDANT OFFICERS"), TERRY HILLARD, LORI LIGHTFOOT, TISA MORRIS, MAYOR DALEY and PHILIP CLINE (hereinafter, the "SUPERVISORY DEFENDANTS"), and the CITY OF CHICAGO.

## JURISDICTION

1.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

## PARTIES

2.      PLAINTIFFS are residents of the State of Illinois and of the United States.

3.    The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

4.    RICHARD DALEY was and is the acting mayor for the CITY OF CHICAGO.

5.    PHILIP CLINE was and is the acting superintendent of police for the Chicago Police Department.

6.    TERRY HILLARD was the acting superintendent of police for the Chicago Police Department.

7.    LORI LIGHTFOOT was the Chief Administrator of the Chicago Police Department's Office of Professional Standards (OPS) from August 2002 to July 2004.

8.    TISA MORRIS was the Chief Administrator of the Chicago Police Department's OPS from July 2004 to October 2006.

9.    The CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICERS.  At all times material to this complaint, the DEFENDANT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

## **FACTS**

10.    On or about June 21, 2007, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the PLAINTIFFS.  This conduct violated the Fourth Amendment to the United States Constitution.

11.    On or about June 21, 2007, PLAINTIFFS did not obstruct justice, resist arrest and/or batter and/or assault any of the DEFENDANT OFFICERS.

12.    The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure to the PLAINTIFFS.

13.     The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFFS with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFFS notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/or learn that PLAINTIFFS had committed criminal activity of any sort.  The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFFS.

14.     On June 21, 2007, PLAINTIFFS had not committed an act contrary to the laws of the State of Illinois.

15.     As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICERS, PLAINTIFFS were caused to suffer damages.

16.     On or about June 21, 2007, the DEFENDANT OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty.  This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS.

17.     Upon information and belief, C.S. JOHNSON (STAR # 16589), on June 21, 2007, came into physical contact with PLAINTIFFS.

18.     Upon information and belief, C.M. BADY (STAR # 11453), on June 21, 2007, came into physical contact with PLAINTIFFS.

**CONSPIRACY**

19.     Some or all of the DEFENDANT OFFICERS conspired to cause damage to PLAINTIFFS in the following manner::

   a.  agreeing to falsely arrest and/or falsely institute criminal charges/proceedings against the PLAINTIFFS;

     b.   agreeing not to report each other after falsely arresting and/or charging PLAINTIFFS;

     c.   generating false documentation to cover-up for their own and each other's misconduct;

20.    In connection with the above conspiracy, the DEFENDANT OFFICERS specifically engaged in communication on or about June 21, 2007, whereby the DEFENDANT OFFICERS agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above.  As a result of this conspiracy, the DEFENDANT OFFICERS by and through their conduct, proximately caused PLAINTIFF JOHNSON to, *inter alia*, suffer injury, be charged with criminal allegations, incur financial loss, including attorney's fees, and suffer emotionally.

## EQUAL PROTECTION – CLASS OF ONE

21.    The actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFF JOHNSON, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly towards the PLAINTIFF JOHNSON, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

22.    In connection with the Equal Protection Claim, PLAINTIFF JOHNSON is a member of a protected class (African-American) and PLAINTIFF JOHNSON was treated differently by the DEFENDANT OFFICERS as a result.  The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF JOHNSON differently, trying to cause further injury to PLAINTIFF JOHNSON by illegally generating false evidence against and criminally charging PLAINTIFF JOHNSON, specifically due to the status of PLAINTIFF JOHNSON as African-American.

23.     With regard to an Equal Protection Claim, PLAINTIFF JOHNSON was a "Class of One." In that regard, PLAINTIFF JOHNSON was treated with ill will and/or discriminated against with no rational basis. PLAINTIFF JOHNSON was intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICERS. The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF JOHNSON differently and trying to cause further injury to PLAINTIFF JOHNSON by generating false evidence against PLAINTIFF JOHNSON. Further, PLAINTIFF JOHNSON was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

## *MONELL* ALLEGATIONS

24.     It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

  a.  generate false documentation to cover-up for the misconduct of fellow police officers;

  b.  engage in acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

  c.  fail to properly discipline officers from said police department who have committed act(s) of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

  d.  fail to properly investigate a complaint of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence perpetrated by a CITY OF CHICAGO police officer upon another;

  e.  fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of

innocent citizens, excessive force, and/or serious acts of violence has been committed by said officer upon another;

f.    allow misconduct to occur in various types and severity such that police officers believe that they can engage in false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence without repercussions and/or significant repercussions;

g.    fail to provide adequate sanctions/discipline to officers who commit false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h.    fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i.    fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j.    fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.    fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l.    fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said

officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.  fail to properly investigate officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.  fail to take proper remedial action with officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.  fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing false arrest, fabricating evidence, malicious prosecuting others, misrepresentating facts, causing significant intrusions to the body of innocent citizens, using excessive force, and/or committing serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

25.    This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

26.    A code of silence exists between the officers of said police department of the Defendant Municipality.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

## SPECIAL OPERATIONS OFFICERS

27.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least 10 civilian complaints lodged against them.

28.     The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least 10 civilian complaints lodged against them, between the years 2001 and 2006.

29.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least 10 civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers").

30.     The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

31.     In the year 2007, an order was entered by the HONORABLE JUDGE LEFKOW regarding the Special Operations Officers for the City of Chicago.  The order provided, *inter alia*, that the parties were permitted to make public the names of 662 Special Operations Officers that had 10 or more civilian complaints lodged against them.

32.     The CITY OF CHICAGO refuses to release the names of the Special Operations Officers, referenced in the order of the HONORABLE JUDGE LEFKOW, to the public.

33.     There are at least 4 police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

34.     Within the last 4 years, 6 police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

35.     There are 10 police officers who worked in the Special Operations Section who received a combined total of 408 complaints of misconduct (with the Office of Professional Standards). With regard to those 408 complaints, only three were sustained.

36.     Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never received a complaint that has been sustained.

37.     The practices and/or customs regarding the actions and lack of investigation of the Special Operations Officers, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers designated as Special Operations Officers in the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

38.      A code of silence exists between the Special Operations Officers in the CITY OF CHICAGO.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**OFFICE OF PROFESSIONAL STANDARDS (OPS)**

39.     Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last 10 years, have resulted in a "sustained finding" against said officer.

40.     The OPS is fully funded by the City of Chicago.

41.     The OPS, over the last 10 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

42.     The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

43.    Over the last 10 years, there has not been an entity and/or agency, not employed by the City of Chicago, which has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by OPS.

44.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, which has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

45.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the work performed by OPS to determine whether OPS is properly investigating the complaints of misconduct of Chicago Police Officers.

46.    Due to the intimate connection between the OPS and the Mayor of the City of Chicago, as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

47.    For example, Officer Raymond Piwnicki obtained 56 complaints against him within 7 years and failed to receive meaningful discipline for any act of misconduct.

48.    Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as 10 lawsuits, amounting to over 2.5 million dollars in City tax dollars that had to be paid as a result of the litigation that was lodged against him.

49.    This lack of independent review has been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that it has created an environment where police officers for the CITY OF CHICAGO recognize that they will not be punished for committing acts such as those alleged in this complaint and that, in fact, said acts are either permitted or quietly

consented to by superior officers of the CITY OF CHICAGO police department in order to permit

said conduct to re-occur.

## PARTICULARIZED MISCONDUCT OF
## CERTAIN OFFICERS[1]

50.     Chicago Police Officer Broderick Jones has pled guilty, in Federal Court, before the

Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit: possession

of cocaine with the intent to distribute, robbery and extortion.

51.     In his plea of guilty, Broderick Jones admitted that he committed robbery, extortion and

possession of cocaine with the intent to distribute, while he was working for the Chicago Police

Department and while he was acting in the capacity of a Chicago Police Officer.  He also

admitted to undertaking these efforts from 1999 through March 2005.

52.     Chicago Police Officer Corey Flagg pled guilty, before the Honorable Judge Guzman, in

Federal Court, to having conspired, along with Chicago Police Officers Eural Black, Darek

Haynes, Broderick Jones and others, to intentionally possessing and distributing cocaine and

marijuana.

53.     Corey Flagg pled guilty to having worked with Eural Black, Darek Haynes and Broderick

Jones to obtain cocaine, marijuana and drug money, through robbery and extortion.

54.     Corey Flagg, in his plea of guilty, stated that he understood that any cocaine and

marijuana obtained during the course of his criminal efforts would be distributed to the people he

was criminally involved with (i.e. Eural Black, Darek Haynes and Broderick Jones).

55.     Corey Flagg admitted, in his plea agreement, that while he was a Chicago Police Officer,

he knew that Broderick Jones recruited Chicago Police Officers, including himself and Officer

---

[1] These allegations serve as an example of misconduct by Chicago Police Officers, as well as the failure of the
Chicago Police Department and OPS, to monitor itself.

Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

56.    Corey Flagg, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official position as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

57.    Eural Black, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Hibbler:

    a.    attempting to conspire and distribute controlled substances;

    b.    multiple acts of robbery and racketeering;

    c.    the procurement of weapons from individuals through robbery and extortion;

    d.    recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

    e.    delivering controlled substances in exchange for cash;

    f.    not enforcing the law with individuals that he was involved so that he could promote criminal activity;

    g.    along with Eural Black, Corey Flagg, Darek Haynes and non-Chicago Police Officers, distributing cocaine (up to 5 kilograms);

    h.    distributing cocaine in exchange for cash;

    i.    conducting home invasions of individuals (along with Corey Flagg, Eural Black and Darek Haynes) for the purpose of obtaining money, property, weapons and controlled substances;

    j.    using the power of his office as a Chicago Police Officer to engage in the above (a-i) acts;

12

    k.   using the facilities of the Chicago Police Department, namely, his badge, gun, bullet proof vest and handcuffs, to promote his illegal activity (a-i).

## OPS INVESTIGATION RELATIVE TO
## BLACK, FLAGG, JONES AND HAYNES

58.    Corey Flagg, prior to being charged of criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

59.    Corey Flagg has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

60.    Eural Black, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

61.    Broderick Jones, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

62.    Darek Haynes has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

63.    Darek Haynes, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

## LAWLESSNESS IN THE CHICAGO POLICE DEPARTMENT AND ITS
## CONNECTION TO THE POLITICAL SCHEME OF THE CITY OF CHICAGO

64.    Due to the lack of legitimate review of misconduct by Chicago Police Officers, many police officers for the City of Chicago believe that they can engage in lawless activities.

65.    The financial relationship between the City of Chicago and the OPS is such that the OPS cannot be independent.

66.     This is due to the fact that, *inter alia*, if a determination is made by OPS that a police officer has committed an act of misconduct, said determination and the facts which flow from said determination may be used by the person, against whom the misconduct was inflicted, to receive a monetary award and/or settlement against the City of Chicago.

67.     In other words, if OPS renders a decision that a complaint should be sustained against an officer, the complainant may use the information gathered, as well as the fact that the complaint has been sustained, against the officer in a civil proceeding, to receive compensation.

68.     Sustained complaints by OPS dramatically increase the likelihood that the City of Chicago will have to indemnify the officer for the misconduct inflicted by said officer.

69.     Due to the structure of OPS and its intimate connection with the City of Chicago, OPS has been an illegitimate entity to investigate the misconduct of Chicago Police Officers.

70.     Due to the structure of OPS and its intimate connection with the City of Chicago, Chicago Police Officers have been able to engage in significant acts of lawlessness

71.     It is due to these lawless activities that the constitutional rights of citizens become infringed, as police officers believe that they will be protected by OPS, which is, in turn, protected by the Mayor of the City of Chicago who appoints the person in charge of OPS.

72.     This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

73.     A code of silence exists between the officers of said police department of the Defendant Municipality.  This code of silence obstructs the legal process (preventing the free flow of honest

information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

## MISCELLEANOUS FACTS REGARDING MONELL LIABILITY

74.    In the year 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable for misconduct.

75.    William M. Beavers was an Alderman for the City of Chicago.  In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

76.    Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

77.    Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

78.    Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago*, 2003 U.S. Dist., LEXIS, 16565 (N.D. Ill. Sep., 19, 2003).

79.    In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed and slanted in favor of officers.

80.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's to the 1990's, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same.  This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

81.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's to the 1990's, and the fact that the Mayor acknowledges that he failed to properly investigate torture that occurred by Chicago Police Officers while he was Cook County State's attorney, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same.  This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

### BRAINMAKER

82.    In 1995, the City of Chicago became aware of the BrainMaker program.

83.    "BrainMaker" is a software product which can be used as an assistive device to forecast which officers on the police force are potential candidates for misbehavior.

84.    The Department's Internal Affairs Division used BrainMaker to study 200 officers who had been terminated for disciplinary reasons and developed a database of patterns of characteristics, behaviors and demographics found among the 200 police officers.

85.    The purpose of this study was to try to predict and/or understand the misbehavior of Chicago Police Officers.

86.    BrainMaker compared current officers against the pattern gleaned from the 200 member control group and produced a list of officers who, by virtue of matching the pattern or sharing questionable characteristics, were deemed to be "at risk."

87.    BrainMaker was used to study the records of 12,500 police officers (records that included such information as age, education, sex, race, number of traffic accidents, reports of lost weapons or badges, marital status, performance reports and frequency of sick leaves).

88.    The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago Police Officers.  Of those 91 people, nearly half were found to be already enrolled in a counseling

program founded by the personnel department to help officers that were found to have engaged in acts of misconduct.

89.    Terry Heckart, a graduate student at Ohio's Bowling Green State University, recommended BrainMaker to OPS and/or the Office of Internal Affairs.

90.    Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the City, through its agents, abandoned the project, further demonstrating the inherent difficulty in having the City of Chicago police itself.

## COUNT I
### §1983 False Arrest

91.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

92.    The actions of the DEFENDANT OFFICERS caused the arrest of the PLAINTIFFS without probable cause to believe that PLAINTIFFS committed criminal activity.  Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

93.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

WHEREFORE, PLAINTIFFS demand compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFFS also demand punitive damages, costs and attorney's fees against the DEFENDANT OFFICERS.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT II
### False Arrest –State Claim

94.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

95.    The DEFENDANT OFFICERS arrested PLAINTIFFS without probable cause to believe that PLAINTIFFS committed criminal activity.  The conduct of the DEFENDANT OFFICERS was in violation of the Constitution to the State of Illinois as well as Illinois law. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations set forth above.

WHEREFORE, PLAINTIFFS demand compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFFS also demand punitive damages and costs against the DEFENDANT OFFICERS.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

### COUNT III
### Malicious Prosecution - State Claim

96.    PLAINTIFF JOHNSON re-alleges paragraphs 1 – 90 as though fully set forth herein.

97.    The DEFENDANT OFFICERS alleged that PLAINTIFF JOHNSON violated the laws of the State of Illinois.  These allegations commenced or continued a criminal proceeding against PLAINTIFF JOHNSON.

98.    The DEFENDANT OFFICERS engaged in this effort without probable cause.

99.    The underlying criminal charges were ultimately resolved in favor of PLAINTIFF JOHNSON.

100.    The underlying criminal charges were resolved in a manner indicative of innocence.

101.    The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

WHEREFORE, PLAINTIFF JOHNSON demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF JOHNSON also demands punitive damages and costs

against the DEFENDANT OFFICERS.  PLAINTIFF JOHNSON also demands whatever additional relief this Court deems equitable and just.

## COUNT IV
### § 1983 Deliberate Indifference to Medical Needs

102.    PLAINTIFF JOHNSON re-alleges paragraphs 1 – 90 as though fully set forth herein.

103.    The actions of the DEFENDANT OFFICERS were deliberately indifferent to the medical needs of PLAINTIFF JOHNSON in that said OFFICERS failed to provide PLAINTIFF JOHNSON with immediate medical attention.

104.    Said OFFICERS, instead of transporting PLAINTIFF JOHNSON for immediate medical treatment, collectively and/or individually, refused to provide PLAINTIFF JOHNSON with medical treatment while in police custody.

105.    This conduct violated the Fourteenth Amendment to the United States Constitution.

106.    The aforementioned actions of said OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, PLAINTIFF JOHNSON demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF JOHNSON also demands punitive damages, costs and attorney's fees against the DEFENDANT OFFICERS.  PLAINTIFF JOHNSON also demands whatever additional relief this Court deems equitable and just.

## COUNT V
### § 1983 Conspiracy Claim

107.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

108.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the United States Constitution, *inter alia* the Fourth Amendment and Fourteenth Amendment.

WHEREFORE, PLAINTIFFS demand compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFFS also demand punitive damages, costs and attorney's fees against the DEFENDANT OFFICERS.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT VI
## Conspiracy Claim – State Law

109.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

110.    The aforementioned actions were the direct and proximate cause of the violations of the Constitution of the State of Illinois and Illinois law.

WHEREFORE, PLAINTIFFS demand compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFFS also demand punitive damages and costs against the DEFENDANT OFFICERS.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT VII
## § 1983 LIABILITY OF DEFENDANTS DALEY CLINE, HILLARD, MORRIS AND LIGHTFOOT

111.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

112.    Defendants CLINE, HILLARD, MORRIS, DALEY and LIGHTFOOT, at all times material to this complaint, were aware that the City maintained a widespread and settled policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and otherwise control its police officers. These Defendants were also aware that the maintenance of these practices would result in preventable police abuse.

20

113.    These Defendants oversaw, endorsed, condoned and/or acquiesced in the above-

mentioned policies, practices and customs and refused to take steps to correct them.

114.    These Defendants, at all times material to this complaint, caused and facilitated the

systematic denial of Plaintiff s constitutional rights, by, among other things:

      (a) failing to monitor police officers and groups who violate the constitutional rights of citizens;

      (b) failing to discipline police officers who engaged in constitutional rights violations;

      (c) turning a blind eye to repeated and systemic abuses of the constitutional rights of citizens, including the Plaintiff; and

      (d) failing to develop and implement an effective early warning system to identify police officers and groups who systematically violate the constitutional rights of citizens.

115.    These Defendants were, at all times material to this complaint, deliberately indifferent to the

rights and safety of Plaintiff, as evidenced by their acquiescence to and support of these policies

and their obvious consequences.

      WHEREFORE, PLAINTIFFS demand compensatory damages from DEFENDANTS

PHILIP CLINE, LORI LIGHTFOOT, RICHARD DALEY, TISA MORRIS and TERRY

HILLARD.  PLAINTIFFS also demand costs and attorney's fees against these Defendants.

PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

**COUNT VIII**
**§ 1983 Equal Protection – Class of One**

116.    PLAINTIFF JOHNSON re-alleges paragraphs 1 – 90 as though fully set forth herein.

117.    The actions of THE DEFENDANT OFFICERS violated the Equal Protection clause to

the United States Constitution.

118.    The aforementioned actions of said OFFICERS were the direct and proximate cause of

the constitutional violations set forth above.

WHEREFORE, PLAINTIFF JOHNSON demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF JOHNSON also demands punitive damages, costs and attorney's fees against the DEFENDANT OFFICERS.  PLAINTIFF JOHNSON also demands whatever additional relief this Court deems equitable and just.

## COUNT IX
### *Monell*

119.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

120.    As a direct and proximate result of the aforementioned acts and omissions by Defendant CITY OF CHICAGO there existed a custom, practice, policy, and/or pattern, either implicit or explicit, of the CITY OF CHICAGO in which officers were not held accountable for their wrongful and/or illegal acts.

121.    Said custom, practice, policy, and/or pattern of the CITY OF CHICAGO encouraged, endorsed, created willful ignorance of, or otherwise promoted said wrongful acts of the DEFENDANT OFFICERS.

122.    As a direct and proximate result of said custom, practice, policy, and/or pattern, either implicit or explicit, of the CITY OF CHICAGO, PLAINTIFFS were injured in a personal and pecuniary manner.

WHEREFORE, PLAINTIFFS demand compensatory damages against the CITY OF CHICAGO, costs and attorney's fees.  PLAINTIFFS also demand whatever additional relief this Court deems equitable and just.

## COUNT X
### 745 ILCS 10/9-102 Claim Against the CITY OF CHICAGO

123.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

124.    Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS alleged above.

125.    The DEFENDANT OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF CHICAGO.

WHEREFORE, should the DEFENDANT OFFICERS be found liable for any of the alleged counts in this cause, PLAINTIFFS demand that, pursuant to 745 ILCS 10/9-102, the CITY OF CHICAGO pay PLAINTIFFS any judgment obtained against the DEFENDANT OFFICERS as a result of this complaint.

**COUNT XI**
**Supplementary Claim for *Respondeat Superior***

126.    PLAINTIFFS re-allege paragraphs 1 – 90 as though fully set forth herein.

127.    The aforesaid acts of the DEFENDANT OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent under the doctrine of *respondeat superior*.

WHEREFORE should the DEFENDANT OFFICERS be found liable for any state claims alleged herein, PLAINTIFFS demand judgment against the CITY OF CHICAGO and such other additional relief, as this Court deems equitable and just.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

_____
Attorney for the Plaintiff
Blake Horwitz

**THE LAW OFFICES OF BLAKE HORWITZ, LTD.**

155 N. Michigan Ave., Suite 723
Chicago, IL  60601
(312) 616-4433
(312) 565-7173 (Fax)