**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEWARD JOHNSON and ARTHUR BRIGHT, | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.:  07 C 7036 |
| vs. | ) ) | Judge Ronald Guzman |
| C.S. JOHNSON (STAR #16589), C.M. BADY (STAR #11453), TERRY HILLARD, LORI LIGHTFOOT, PHILLIP CLINE, TISA MORRIS, MAYOR RICHARD DALEY, and the CITY OF CHICAGO, | ) ) ) ) ) ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) ) | |

## DEFENDANTS JOHNSON, BADY AND CITY OF CHICAGO'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants, City of Chicago ("City"), Charlie Johnson, and Charron Bady, by their attorney, Terrence M. Burns of Dykema Gossett, PLLC, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), hereby move to dismiss[1] plaintiffs' complaint in its entirety.  In support thereof, these defendants state:

## INTRODUCTION

1.      On October 30, 2007, plaintiff filed their complaint in this matter against several defendants, including Officers Johnson, Bady, and the City.  (Dkt. #1, attached as Exhibit A).  Plaintiffs' complaint includes the following counts:

| | |
|---|---|
| Count I | §1983 False Arrest |
| Count II | State Law False Arrest |
| Count III | State Law Malicious Prosecution |

---

[1] Defendants Daley, Hillard, Cline, Lightfoot, and Morris have separately filed motions to dismiss count VII of the complaint, which is the only count directed against them.  To the extent applicable to them (Section I, *infra*), those defendants join and adopt this motion for dismissal of the complaint.

Count IV           §1983 Deliberate Indifference to Medical Needs

Count V           §1983 Conspiracy

Count VI           State Law Conspiracy

Count VII           §1983 Municipal Official Liability

Count VIII           §1983 Equal Protection

Count IX           §1983 *Monell*

Count X           745 ILCS 10/9-102

Count XI           State Law – *Respondeat Superior*

2.      Although plaintiffs' complaint is 23 pages long and contains 127 paragraphs, it fails to state a claim for which relief can be granted. In the alternative, because plaintiffs' complaint is vague and deficient as to even the most fundamental factual allegations, defendants cannot reasonably be required to frame a responsive pleading without a more definite statement from plaintiffs. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Separately, plaintiffs' *Monell* claim (count IX) is inadequate and should be dismissed.

## STANDARD OF REVIEW

3.      A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). Such a motion tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Although when considering a motion to dismiss a court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom (*see Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)), a court is not obligated to accept a complaint that merely raises the possibility of relief. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In addition, a court should not strain to find inferences not plainly apparent from the face of the complaint. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). Rather, to survive a 12(b)(6) motion to dismiss, the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" (*see* Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice" of what the "claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (*quoting Conley v.*

*Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  *See also Kyle v. Morton High School*, 144 F.3d 448 (7th Cir. 1998) (*citing Leatherman v. Tarrant County Narcotics*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993)).

4.     Further, the factual allegations must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *Concentra Health*, 496 F.3d at 776 (*quoting Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14)).  With regard to §1983 claims, a complaint must set forth sufficient allegations to place the court and the defendants on notice of the gravamen of the complaint.  *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

## ARGUMENT

### I.     PLAINTIFFS' COMPLAINT FAILS TO GIVE NOTICE OF THE CONDUCT THAT FORMS A BASIS FOR THEIR CLAIMS

5.     Plaintiffs' complaint fails to give sufficient notice of the conduct that forms the basis for their claims.  The only "facts" pertaining to the alleged police misconduct are contained in paragraphs 10-18 of the complaint.  In those paragraphs, plaintiffs claim that "on or about" June 21, 2007, Officers Johnson and Bady violated their constitutional rights by coming into physical contact with them and engaging in an unreasonable seizure.  (*See* Exhibit A, ¶¶ 10, 12, 17-18).  Notably, plaintiffs do not include the site of their arrest, identify the time of their encounter with the police, explain what happened, or offer any details regarding the allegedly unlawful "acts or omissions" of the defendant officers.  Even more confusing, the complaint vaguely alleges "physical contact," a "show of force," and "use of force" by defendant officers (Exhibit A, ¶¶ 12, 17-18), yet there is no excessive force or failure to intervene claim asserted by plaintiffs.  At most, the complaint indicates something happened on June 21, 2007, involving plaintiffs and Officers Johnson and Bady.  No further information is provided.

6.     The remaining paragraphs in the section of the complaint entitled "Facts" fail to provide any additional insight into the alleged misconduct that forms the basis for plaintiffs' claims.  Instead, plaintiffs set out generalized, conclusory language that the defendant officers arrested them and charged them with criminal activity.

7.     Rule 8(a)(2) requires that a complaint contain a minimal level of factual detail so that the defendant has fair notice as to the claims against it and is given a "reasonable opportunity" to form an answer.  *Pratt v. Tarr*, 464 F.3d 720, 732 (7th Cir. 2006).  A defendant

must receive sufficient detail to "begin to prepare [its] defense." *Id.* at 733. In addition, a complaint "should contain information that one *can* provide and that is clearly important." *Concentra Health*, 496 F.3d at 780 (emphasis in original).

8.     In this case, the site and time of plaintiffs' encounter with the police, and more importantly, what allegedly happened, is known to plaintiffs. Plaintiffs, however, did not include any of this basic information in their pleadings. As plaintiffs' complaint currently stands, there is no meaningful way defendants can answer it. Knowing the nature of the defendant police officers' alleged misconduct towards plaintiffs also is significant so that the City can evaluate the possible scope and extent of plaintiffs' claims. Defendants are unable to mount any meaningful investigation into plaintiffs' claims, much less begin to prepare their defense. Moreover, the vague "facts" appear to conflict with legal theories pled in the complaint. Since plaintiffs' complaint fails to provide "some quantum of information" about their claims, it should be dismissed. *See Concentra Health*, 496 F.3d at 779 n.3; *see also Bell Atlantic*, 127 S. Ct. at 1965; *Pratt*, 464 F.3d at 733.

## II.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A *MONELL* CLAIM

9.     As an independent and separate matter, plaintiffs' *Monell* claim should be dismissed. In essence, plaintiffs claim they were subjected to an illegal arrest on or around June 21, 2007, due to a practice of general "lawlessness" at the Chicago Police Department. The law is clear, however, a claim that "past generalized bad police behavior led to future generalized bad police behavior" fails the "rigorous standards of culpability and causation" required for municipal liability. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *see also Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997). Indeed, the law requires litigants to "identify the offending municipal policy with precision" so courts can prevent trials from straying off into "collateral accusations of marginally related incidents." *Id*. Contrary to these strict pleading requirements, plaintiffs' policy and practice claim is based upon a myriad of unrelated incidents such as Special Operations Section ("SOS") misconduct, miscellaneous allegations against convicted and/or indicted former Chicago police officers (Flagg, Black, Jones, and Haynes), alleged 1980's Area 2 torture, the alleged non-independence of OPS, and BrainMaker. There is no connection apparent from the pleadings between these miscellaneous allegations and the vague misconduct underlying plaintiffs' claims. There are no allegations in the complaint suggesting this is a SOS

case, a 1980's Area 2 case, a torture case, an indicted officer case, or a BrainMaker case, so including *Monell* allegations based on these topics is without justification and is inappropriate. If these "unfocused" allegations remain a part of the complaint, this litigation likely will devolve into collateral accusations of marginally related incidents resulting in a squandering of scarce judicial and municipal time and resources. *See Carter*, 164 F.3d at 218. Accordingly, the City respectfully asks this Court to dismiss the *Monell* policy and practice allegations of plaintiffs' complaint.

10.     Plaintiffs' complaint appears to suggest some interaction between plaintiffs and the police on June 21, 2007. As noted above, the complaint is woefully deficient of allegations that describe the underlying incident alleged by plaintiffs. In contrast, the overwhelming majority of plaintiffs' complaint involves allegations of misconduct against the City made in other civil and criminal matters over the past 25 years. These allegations of "other conduct" do not identify a specific policy for the purposes of stating a viable *Monell* claim. Moreover, plaintiffs have failed to allege a causal link between this "other" conduct (and corresponding policies/practices) and the purported violation of his rights so as to state a claim for municipal liability.

11.     To prevail on a §1983 claim against the City, a plaintiff must show:  1) a violation of his constitutional rights; 2) an injury; and 3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault. *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382 (1997) ("*Bryan County*"). In addition, a plaintiff must show that the constitutional violation was directly caused by a "custom, policy or practice" of the defendant municipality. *Monell, supra*. As the Supreme Court stated in *Bryan County*, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  520 U.S. at 404, 117 S.Ct. at 1388.

12.     In this case, plaintiffs' attempt to plead a *Monell* claim fails because they have not adequately alleged their constitutional rights were violated as a result of a specific "custom, policy, or practice" of the City. In fact, plaintiffs fail to adequately define the "custom, policy, or practice" that allegedly led to the violation of their constitutional rights. Plaintiffs instead have

filled the complaint with a 25-year history of miscellaneous and unrelated allegations of misconduct brought against the Chicago Police Department and, without sufficient explanation or specificity, have rested their *Monell* claim entirely on that history. (*See* Exhibit A, ¶¶ 24-90.) Stating a valid *Monell* claim, however, requires more than merely listing previous instances of misconduct and from that alleging the existence of an "abstract [policy] of violating citizens' constitutional rights." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

13.    It is well established that when alleging a *Monell* claim, a plaintiff must identify with specificity the custom, policy, or practice of which he complains. *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (the identified deficiency must be "closely related to the ultimate injury"). To forego this requirement would blur the line "between *respondeat superior* liability and truly unconstitutional municipal conduct." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 n.27 (5th Cir. 2001). Accordingly, to ensure that a municipality is not held liable solely for the actions of its employees, "rigorous standards of culpability and causation must be applied." *Bryan County*, 520 U.S. at 405. As the Fourth Circuit explained in *Carter*:

> [B]y requiring litigants to identify the offending municipal policy with precision, courts can prevent trials from straying off into collateral accusations of marginally related incidents. Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover -- our role is to decide concrete cases. Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decision maker caused the violation of the specific federal rights of the plaintiff before the court. Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources. As a practical matter, a case involving inquiries into loosely related incidents can be an unruly one to try.

*Carter*, 164 F.3d at 218-19. *See also Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D. Ill. 2001) (*citing Copeland v. Northwestern Memorial Hospital*, 964 F. Supp. 1225, 1240 (N.D. Ill. 1997) ("[c]laims based wholly on conclusory allegations of *de facto* municipal policy constitute one of the most prevalent forms of abuse in §1983 actions").

14.    In this case, plaintiffs' reliance on 25 years of unrelated misconduct allegations against the City as the basis for their *Monell* claims is exactly the type of "splatter-paint" approach rejected by *Carter*. Plaintiffs' *Monell* allegations begin at paragraph 24, which is divided into sub-paragraphs (a)-(o). These sub-paragraphs do nothing more than refer to an

"abstract" policy of violating constitutional rights.[2]  *See Carter*, 164 F.3d at 218.  Plaintiffs' sub-paragraphs do not offer any specifics that would serve to put the City on notice of the policy, practice, or custom that they are challenging.  *See Bell Atlantic Corp.*, 127 S. Ct. 1955, 1969 (2007) (complaint must provide the "grounds upon which [his claim] rests").  Cursory allegations of general duties and the failure to perform those duties do not "stand in the place of an allegation of a municipal policy, custom or practice required to state a *Monell* claim under section §1983."  *Catchings v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005); *see also Mumm v. Wetter*, 2006 WL 163151 at *4 (N.D. Ill. 2006) (boilerplate allegations of a municipal policy, entirely lacking in any factual support that a policy does exist, are insufficient); *Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D. Ill. 2001) (dismissing section 1983 claims and explaining that boilerplate allegations constituted of mere legal conclusions that did not state *Monell* claim).

15.    Plaintiffs' counsel has included similar (and in most cases, identical) boilerplate *Monell* allegations in at least eight other recently filed cases in this courthouse.  *See Michael Farley v. City of Chicago, et al.*, No. 07 C 5254 (J. Gottschall); *Terry Martin v. City of Chicago, et al.*, No. 07 C 4991 (J. Guzman); *Terrance Jones v. City of Chicago, et al.*, No. 07 C 5279 (J. Norgle); *Safford v. City of Chicago, et al.*, No. 07 C 5276 (J. Coar); *James McComb v. City of Chicago, et al.*, No. 07 C 5564 (J. Marovich); *Sarkis Moumji v. City of Chicago, et al.*, 07 C 5256 (J. Lefkow); *Jerry Chaparro v. Powell, et al*, 07 C 5277 (J. Conlon); *Eduardo Almaraz v. City of Chicago, et al.*, No. 07 C 6134 (J. Hart).  Like this case, none of the alleged constitutional violations underlying these other actions relate to the *Monell* topics alleged.  This "one size fits all" approach to *Monell* taken by plaintiffs' counsel essentially proves the absence of the required specificity (*City of Canton*, *supra*), and implicates the potential for abuse forewarned by the *Carter* and *Copeland* courts.  Furthermore, such an approach conclusively defeats any suggestion that the alleged policies were the "moving force" behind plaintiffs' specific

---

[2] Defendants note that these sub-paragraphs are also repetitive and overlap with each other.  For example, sub-paragraphs (c), (e), (f), (g), (h), (i), (k), (l), and (n) allege the same thing:  the City failed to take remedial action, sanction, or discipline officers who commit certain misconduct.  Similarly, sub-paragraphs (d), (j), and (m) all concern the City's alleged failure to investigate misconduct.  Plaintiffs essentially have repeated the same boilerplate allegations 15 times, but not once have they offered precise details or the specificity required to identify a custom, practice, or policy that caused the constitutional deprivations they vaguely allege.

constitutional deprivation in *this* case (*Bryan County, supra*) and suggests plaintiffs' counsel is "shopping" for a court that will give its blessing to his "general lawlessness" theory.

16.     In one of these other cases, *Chaparro v. Powell*, No. 07 C 5277 (N.D. Ill. Jan. 2, 2008), District Court Judge Suzanne B. Conlon recently dismissed a nearly identical *Monell* claim as that attempted by plaintiffs in this case.   (*See* Memorandum Opinion and Order, *Chaparro* Dkt. #51, attached as Exhibit B).  In pertinent part, Judge Conlon ruled:

> The factual allegations failed to plausibly suggest a policy cognizable under *Monell*.  The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. [Plaintiff] relies on a purported "code of silence" based on numerous, tenuously related instances of police misconduct.  But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom.  Under [plaintiff]'s logic, any instance of police misconduct would be "caused" by the "code of silence," because any misconduct could be linked to an officer's imputed belief he could escape punishment.  [Plaintiff]'s *Monell* theory collapses into *respondeat superior*, an outcome explicitly forbidden by the Supreme Court.

*Chaparro*, Slip Op. at pp. 5-6.

17.     Furthermore, Judge Conlon determined that the allegations failed to plausibly suggest a direct causal link between a municipal policy and the plaintiff's injury.  (*Id*. at p. 6). Judge Conlon reasoned that the policy alleged by the plaintiff was so indefinite that any connection to a particular constitutional violation was "highly attenuated."  *Id*.  Judge Conlon concluded:

> Indeed, the injury [plaintiff] allegedly suffered is no more related to the "code of silence" than any other injury caused by any other kind of police misconduct.  As the City notes, [plaintiff]'s attorney has demonstrated this fact by including identical *Monell* allegations in at least six other §1983 cases against the City alleging different instances of alleged police misconduct.

*Id*.  Judge Conlon's decision in *Chaparro* is persuasive, directly on point, and provides this Court with guidance on nearly identical allegations and issues raised in the pending motion.  This Court should follow Judge Conlon's reasoned decision and dismiss plaintiff's *Monell* allegations, including count IX.

18.     A review of the disparate and unfocused allegations asserted by plaintiffs demonstrates the soundness of Judge Conlon's ruling.  The allegations of unrelated officer misconduct contained in paragraphs 27-90 of plaintiffs' complaint seemingly seek to establish the "roving commission" criticized in *Carter*.  Case law is clear that allegations of other

misconduct not connected to a plaintiff's alleged deprivation do not state a claim for municipal liability. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (plaintiff required to demonstrate the existence of a direct causal link between municipal policy and constitutional injury). As explained in *Carter*, the claim that "past generalized bad police behavior led to future generalized bad police behavior, of which [the plaintiff's] deprivations are an example" fails the "rigorous standards of culpability and causation" required for municipal liability. *Carter*, 164 F.3d at 219. Instead, a plaintiff must allege an affirmative link between the deficiency and the particular violations of which he complains. *Canton*, 489 U.S. at 388. More specifically, a plaintiff must allege the requisite causation in that the policy or custom was the 'moving force' behind the constitutional deprivation. *O'Sullivan v. City of Chicago*, 327 F. Supp. 2d 937, 940 (N.D. Ill. 2004).

19.    Here, plaintiffs have not alleged a causal link between any "policies" alleged in paragraphs 27-90 of their complaint and the violation of their constitutional rights. To the contrary, plaintiffs take a scattershot approach in these paragraphs with respect to the so-called *Monell* claim. In particular, plaintiffs refer to alleged deficiencies or incidents of misconduct involving Special Operations Officers, the Office of Professional Standards ("OPS"), 1980's torture allegations, and non-defendant officers. (*See* Exhibit A, ¶¶ 27-90.) The unfocused evidence of unrelated misconduct described in these allegations strays far from any alleged conduct that forms the basis of plaintiffs' complaint. As such, the alleged policies associated with this "other" misconduct do not aid plaintiffs in their attempt to allege a *Monell* claim. *See Carter*, 164 F.3d at 218 (requiring "close fit" between challenged policy and constitutional violation"). Simply stated, plaintiffs have not asserted facts from which this Court could infer that any policies alleged to exist in paragraphs 27-90 were the "moving force" behind some constitutional injury, if any, that can be gleaned from the complaint. *Bryan County*.

**A.    This Is Not An SOS Case.**

20.    Paragraphs 27-38 contain allegations concerning SOS and incidents of alleged misconduct that occurred between 2001 and 2006 involving SOS officers. In this case, plaintiffs do not allege that SOS police officers were involved in the underlying incident in any way. Plaintiffs allege that certain SOS members have been indicted for kidnapping and robbing individuals. (Exhibit A, ¶ 34). Plaintiffs' complaint, however, is devoid of any allegation they were robbed or kidnapped. Against this backdrop, plaintiffs have failed to allege a direct causal

link between the existence of any "policy" concerning the SOS and their constitutional deprivation. To reiterate, plaintiffs have not shown the City's alleged policy of allowing its SOS officers to rob and kidnap individuals in 2001-2006 was the "moving force" behind their alleged constitutional violation. *See O'Sullivan*, 327 F. Supp. 2d at 942. Rather, plaintiffs' invocation of the SOS cases seems designed to take advantage of the publicity surrounding that alleged misconduct so as to improperly (and prejudicially) bolster their unrelated claim.

      **B.**    **Plaintiff's OPS Allegations Do Not Relate to this Case and Seek to Improperly Establish a Roving Commission to Monitor And/Or Change OPS Procedures.**

      21.    Paragraphs 39-49 and 64-73 contain allegations concerning the Office of Professional Standards ("OPS") and its alleged failure to properly investigate certain officer conduct. In this case, plaintiffs have not even alleged OPS failed to conduct an adequate investigation into any complaint concerning the underlying incident. Nor have plaintiffs alleged that any police officer involved in this case should have been previously disciplined by OPS for similar conduct or that any similar allegations have ever been lodged against a defendant officer. Plaintiffs simply have not provided allegations indicating any causal link between the department's alleged failure to discipline other officers in other cases for other misconduct and any constitutional deprivations in this case. Plaintiffs instead assert general criticisms of OPS based on its purported lack of independence and the existence of an "abstract" policy of failing to investigate. It is doubtful such general criticisms could ever support a *Monell* claim in any case; they certainly do not support a claim in this case. As discussed above, a plaintiff must do more than offer general instances of previous misconduct to state a claim under *Monell*.

      **C.**    **Officers Flagg, Haynes, Jones, and Black Were Not Involved in this Case.**

      22.    Paragraphs 50-63 concern allegations of misconduct by non-defendant officers Flagg, Haynes, Jones, and Black. Flagg, Haynes, Jones, and Black were not involved in this case. Plaintiffs nevertheless include allegations that Flagg, Haynes, Jones, and Black distributed cocaine, committed robbery, and conducted home invasions involving other defendants. These instances of previous misconduct are unrelated to the type of misconduct plaintiffs allege in this case. Plaintiffs here are not alleging their constitutional rights were violated when they were robbed or their home were invaded. Consequently, plaintiffs once again lack the requisite causal link between the alleged policy and their constitutional injury for the purposes of *Monell*.

### D.     *Garcia* is Inapposite.

23.     Paragraphs 77-79 refer to an opinion Judge Holderman authored in connection with another civil case, *Garcia v. City of Chicago*, 2003 WL 22175618 (N.D. Ill. 2003). Plaintiffs allege that, in the *Garcia* opinion, Judge Holderman found the existence of a municipal policy of failing to conduct complete investigations into police misconduct.  Notably, plaintiffs neglect to mention that the specific issue in *Garcia* was whether a custom, practice, or policy existed in 2001 regarding the failure to adequately investigate complaints made against off-duty police officers.  Further, in the opinion referred to by plaintiffs, Judge Holderman merely denied the City's motion for new trial—Judge Holderman did not make findings of fact that a policy of failing to investigate claims against off-duty police officers existed.  *Id.* at *2.  Considering that the policy in *Garcia* concerned adequately investigating complaints made against off-duty police officers, it cannot be said that plaintiffs' constitutional rights here were violated as a result of that policy, as there are no allegations concerning off-duty conduct in this case.  Thus, paragraphs 77-79 do not aid plaintiff in his attempt to plead a *Monell* claim.

### E.     BrainMaker is Irrelevant.

24.     Finally, paragraphs 82-90 concern the police department's prior use of the "BrainMaker" program and corresponding study of 200 officers in 1995 to determine "at risk" officers.  How the City's alleged failure to use an experimental software product rises to the level of a custom, policy, or practice for purposes of a *Monell* claim is unclear at best.  Moreover, plaintiffs' complaint simply does not allege any connection between their claims and the BrainMaker program.  Once again, plaintiffs have failed to plead a nexus or causal link between the City's alleged "policy" concerning BrainMaker and the alleged conduct by any defendant officer that allegedly violated their constitutional rights.

### F.     Count IX Should Be Dismissed.

25.     The preceding discussion demonstrates paragraphs 24-90 of plaintiffs' complaint are replete with allegations that have nothing to do with their arrests or the allegations of misconduct against Officers Johnson and Bady in this case.  Although plaintiffs' complaint contains a myriad of allegations concerning unrelated instances of previous police misconduct, it is devoid of any facts linking their alleged constitutional deprivation to these other practices. Count IX therefore should be dismissed.  *See Aleman v. Sheriff of Cook County*, 2005 WL

3116048 at *2 (N.D. Ill. 2005) (finding that complaint was devoid of any allegations that can be construed as pleading a causal nexus, or even a tenuous connection, between the defendants' misconduct and the alleged policy or practice).   Plaintiffs merely have provided boilerplate allegations of previous instances of misconduct.   A *Monell* claim is not adequately pled by including references to every "municipal transgression" that has occurred and the language "custom, policy, or practice."   *See Carter*, 164 F.3d at 218-19; *Catchings v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005) (declining to infer the existence of a policy without factual allegations supporting that theory).   Therefore, plaintiffs' failure to plead any facts linking his constitutional injury to these alleged policies is fatal, and his *Monell* claims (Count IX and paragraphs 24-90) should be dismissed.   *See, e.g., Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) (a plaintiff needs to demonstrate a causal link between the defendant's conduct and his injury).

## CONCLUSION

26.    Plaintiffs' complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim against defendants upon which relief can be granted.   Alternatively, the count should require plaintiff to supplement the complaint pursuant to Rule 12(e), because as it stands, it is so vague and ambiguous that defendants cannot meaningfully investigate and prepare a responsive pleading.   Notwithstanding these deficiencies, separate grounds exist for the dismissal of count IX.   Plaintiffs' *Monell* allegations (count IX and ¶¶ 24-90) are inadequate and improper and should be stricken and dismissed.


WHEREFORE, for the foregoing reasons, defendants respectfully request that this Court enter an order dismissing plaintiffs' complaint in its entirety.   Alternatively, defendants Johnson, Bady and the City of Chicago ask this Court to order plaintiffs to provide a more definite statement concerning the factual circumstances underlying their claims.   The City further asks this Court to dismiss plaintiffs' *Monell* allegations, including count IX and paragraphs 24 to 90 of the complaint.

Dated: February 25, 2008                    Respectfully submitted,


                                            By: s/ Paul A. Michalik_____
                                                One of the Attorneys for Defendants,
                                                City of Chicago, Officer Charlie Johnson, and
                                                Officer Charron Bady

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Kimberly D. Fahrbach
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 25, 2008, I electronically filed the foregoing

**Defendants Johnson, Bady and City of Chicago's Motion to Dismiss Plaintiffs' Complaint**

with the Clerk of the Court using the ECF system, which sent electronic notification of the filing

on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Erica E. Faaborg
Law Offices of Blake Horwitz
155 North Michigan Avenue
Suite 723
Chicago, Illinois  60601
312.6l6.4433
lobh@att.net

                                        s/ Paul A. Michalik
                                        _____
                                        Paul A. Michalik

CHICAGO\2425470.1
ID\PAM

14