# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY CHAPARRO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 07 C 5277 |
| OFFICER P. O. POWELL (STAR NO. 11570), | ) |
| OFFICER M. J. BUTZEN (STAR NO. 11307), | ) Suzanne B. Conlon, Judge |
| OFFICER A. E. ACEVEZ (STAR NO. 18154), | ) |
| HAZEL HOLMES, and the CITY OF | ) |
| CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jerry Chaparro brings this 42 U.S.C. § 1983 action against the City of Chicago ("the city") and four individual defendants, including three Chicago Police Department ("CPD") officers. He alleges the individual defendants subjected him to an unreasonable seizure in violation of the Fourth Amendment and other constitutional injuries. In Count IX, he alleges the city is liable for these violations under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The city moves for dismissal of Count IX under Fed.R.Civ.P. 12(b)(6).

### BACKGROUND

I.   **Chaparro's Arrest**

Chaparro alleges the individual defendants arrested him without probable cause, subjecting him to an unreasonable seizure in violation of the Fourth Amendment. Cmplt. ¶¶ 6-9. He claims he was arrested because he attempted to photograph his car inside a city impound lot. *Id.* at ¶ 117. He asserts he had a right to photograph his car and committed no crime. *Id.* at ¶¶

10, 116-20. He further alleges the defendant officers used excessive force in arresting him and conspired to cover up their misconduct. *Id.* at ¶ 17.

## II.   City Policy or Custom

Chaparro alleges a city policy or custom comprising a litany of police misconduct including: abuse of authority, use of excessive force, failure to discipline officers for misconduct, concealing police misconduct, failure to properly investigate or remedy police misconduct, failure to provide training to prevent police misconduct, and arresting citizens who photograph cars inside city impound lots. *Id.* at ¶ 21. He alleges misconduct among CPD special operations officers, none of whom was involved in Chaparro's arrest; the Office of Professional Standards' inadequate oversight of CPD officers; the misconduct of four CPD officers, none of whom was involved in Chaparro's arrest; general "lawlessness" among CPD officers, citing allegations of torture "from the 1980's [and] the 1990's;" and the city's abandonment of a software program intended to predict misconduct among CPD officers. *Id.* at ¶¶ 24-82.

## DISCUSSION

### I.   Legal Standards

#### a.  Fed.R.Civ.P. 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To meet this requirement, (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests" and (2) the complaint's factual allegations "must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a speculative level." *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)

2

(quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)) (ellipsis and quotation marks omitted). A complaint must provide factual support for its claims, not merely "labels and conclusions." *Bell Atl.*, 127 S.Ct. at 1965. This requirement ensures a defendant has information sufficient to prepare his defense and "allow[s] the court to determine at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not the case can be got rid of immediately . . . ." *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999); *accord Bell Atl.*, 127 S.Ct. at 1966-67.

In weighing a 12(b)(6) motion, the court must accept all the complaint's well pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Cler v. Illinois Ed. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). A court need not draw inferences in a plaintiff's favor that are "too attenuated to be reasonable." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994) (superseded by statute on other grounds).

### b. Municipal Liability under *Monell*

A municipality is liable under *Monell* if its policy or custom is the "moving force" behind a constitutional violation. *Bd. of County Commissioners v. Brown*, 520 U.S. 397, 400 (1997). To prevail on a *Monell* claim, a plaintiff must establish (1) a violation of his constitutional rights; (2) the existence of a municipal policy or custom; and (3) "a direct causal link" between that policy or custom and his injury. *Id.* at 403-04; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Three types of municipal policy can support a *Monell* claim: (1) an express policy, (2) a well settled, widespread practice or custom, or (3) a decision by a municipal official with final policymaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The standards for proving culpability and causation in this context

are "rigorous . . . to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Commissioners*, 520 U.S. at 405. *Monell* does not subject municipalities to *respondeat superior* liability. *Id.* at 403.

## II.  Analysis

Chaparro bases his *Monell* claim on an alleged widespread practice or custom he terms the "code of silence," which roughly equates to a city-wide acceptance of police misconduct. Response at 2. He claims the code of silence caused the individual defendants to violate his constitutional rights because it reassured them they would not be punished for malfeasance. He relies on instances of CPD misconduct spanning two decades not directly related to his arrest.

The city argues Chaparro fails to establish the existence of a cognizable municipal policy or custom that encompasses the wide spectrum of alleged misconduct. The city also argues Chaparro fails to demonstrate a causal link between the policy he alleges and his arrest. It contends Count IX does not identify a policy or custom "closely related to [Chaparro's] ultimate injury," rendering Chaparro's *Monell* theory *respondeat superior* by another name. *Id.* at ¶ 8 (quoting *City of Canton*, 489 U.S. at 391). The city points out that the bulk of Chaparro's factual allegations have, at best, a tenuous relationship to his arrest. The complaint contains numerous allegations regarding misconduct by CPD special operations officers, but none of the individual defendants is a special operations officer.

Count IX is deficient. The factual allegations fail to plausibly suggest a policy cognizable under *Monell*. The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. *See Bd. of County Commissioners*, 520 U.S. at 403. Chaparro relies on a purported "code of silence" based on

numerous, tenuously related instances of police misconduct. But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom. Under Chaparro's logic, any instance of police misconduct would be "caused" by the "code of silence," because any misconduct could be linked to an officer's imputed belief he could escape punishment. Chaparro's *Monell* theory collapses into *respondeat superior*, an outcome explicitly forbidden by the Supreme Court.

Nor do Chaparro's allegations plausibly suggest a direct causal link between a municipal policy and his injury. He asserts a general lawlessness among CPD officers caused the violations surrounding his arrest. But he provides no facts to show that link; and the policy he alleges is so nebulous that any connection to a particular constitutional violation is highly attenuated. Indeed, the injury Chaparro allegedly suffered is no more related to the "code of silence" than any other injury caused by any other kind of police misconduct. As the city notes, Chaparro's attorney has demonstrated this fact by including identical *Monell* allegations in at least six other § 1983 cases against the city alleging different instances of alleged police misconduct.[1]

---

[1] *See* Farley v. Wilke, No. 07 C 5254, Dkt. No. 1 (N.D. Ill. Sep. 17, 2007) (Gottschall, J.); Martin v. Quinn, No. 07 C 4991, Dkt. No. 1 (N.D. Ill. Sep. 5, 2007) (Guzman, J.); Jones v. Unknown Officers, No. 07 C 5279, Dkt. No. 1 (N.D. Ill. Sep. 18, 2007) (Norgle, J.); Safford v. Janik, No. 07 C 5276, Dkt. No. 1 (N.D. Ill. Sep. 18, 2007) (Coar, J.); McComb v. Unknown Officers, No. 07 C 5564, Dkt. No. 1 (N.D. Ill. Oct. 2, 2007) (Marovich, J.); Moumji v. Officer with star number 2351, 07 C 5256, Dkt. No. 1 (N.D. Ill. Sep. 17, 2007) (Lefkow, J.).

## CONCLUSION

The motion to dismiss Count IX is granted. The city's motion to bifurcate discovery is moot.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

January 2, 2008