C

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARIA ELROD, as Special Administrator )
of the Estate of KENNETH ELROD, )
Deceased, )
        Plaintiff, )    **Case No. 06 C 2505**
 )
 )
        v. )    **Judge Mark Filip**
 )    **Magistrate Judge Geraldine Soat Brown**
CITY OF CHICAGO, and OFFICER )
EDWARD YERKE #1105, Individually, )
        Defendants. )
 )
——————————————————— )
 )
CHRISTINA CENTERA, on her own behalf )
and as Administrator for the Estate of )
DEMETRI CENTERA, Deceased, )
        Plaintiff, )    **Case No. 07 C 203**
 )
 )
        v. )
 )
CITY OF CHICAGO, and Chicago Police )
Officer EDWARD P. YERKE, )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

      Plaintiff Maria Elrod, as administrator of the estate of Kenneth Elrod, and plaintiff Cristina

Centera, on her own behalf and as administrator of the estate of Demetri Centera (collectively,

"Plaintiffs") filed separate complaints pursuant to 42 U.S.C. § 1983 against defendants City of

Chicago ("the City") and individual police officer Edward Yerke. The lawsuits allege that on the

same night, April 7, 2006, Yerke beat up Kenneth Elrod and shot and killed Demetri Centera.

(Centera Comp. ¶¶ 6-8; Elrod Compl. ¶¶ 5-8.)  Centera's lawsuit was reassigned to District Judge

Filip as related to Elrod's. [Dkt 42.]  In addition to claims under state law, both Plaintiffs bring §



1983 claims of excessive force against Yerke, and claims against the City pursuant to *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658 (1978), alleging that certain customs, policies, and practices of the City caused the alleged constitutional violations.

Presently before the court is Defendants' Motion to Bifurcate § 1983 Claims and to Stay Discovery and Trial On Those Claims ("Defs' Mot.") [dkt 43], which the District Judge referred to this court for decision. [Dkt 45.][1] The City has offered to stipulate to the entry of judgment against it for any compensatory damages awarded to Plaintiffs if any City employee is found to have violated Plaintiffs' constitutional rights as alleged in their Complaints. (Defs.' Mot. Leave Cite Suppl. Auth., Ex. B, Stip. ¶ 5.) [Dkt 57.]

For the following reasons, Defendants' Motion is granted. Plaintiffs' claim against Yerke under § 1983 and Plaintiffs' state law claims are bifurcated from Plaintiffs' *Monell* claims against the City, and discovery on the *Monell* claims, including expert discovery, is stayed at least until after discovery on Plaintiffs' remaining claims has been completed.

## Discussion

Fed. R. Civ. P. 42(b) provides, in pertinent part, that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue or of any number of claims . . . ." District courts have discretion in determining whether to try issues separately pursuant to Rule 42(b). *McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861, 870 (7th Cir. 1994); *see*

---

[1] A decision regarding bifurcation does not dispose of any claim or defense, and thus, a magistrate judge may "hear and determine" it. 28 U.S.C § 636(b)(1)(A).

*also Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000) (stating that "[t]here is

no question that a district court has the discretion to sever a *Monell* claim against a municipality from

claims against individual police officers and stay litigation of the *Monell* claim until the rest of the

case is resolved") (citing *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000)).

The issue of whether to bifurcate a *Monell* claim from the discovery and trial of the

underlying constitutional tort claim (and the related state law claims) is one that has been addressed

by a number of courts in this district. Some judges have exercised their discretion in favor of

bifurcating the *Monell* claims from the other claims.[2] Other judges have refused to bifurcate *Monell*

claims.[3] Some of the judges denying motions to bifurcate indicated a willingness to revisit the issue

again later or deferred discovery on the *Monell* claims until after the completion of fact discovery

on the other claims. *See, e.g., Medina*, 100 F. Supp. 2d at 898 (stating intention to revisit issue of

bifurcation at later point in the litigation and deferring discovery on *Monell* claim); *Lopez*, 2002 WL

335346 at *3 (deferring discovery on *Monell* claim).

Thus, there is a growing body of precedent in this district for both granting and denying

bifurcation in § 1983 cases. Although most of the courts deciding the issue begin their discussions

---

[2]*See, e.g., Myatt v. City of Chicago*, 816 F. Supp. 1259, 1263-64 (N.D. Ill. 1992); *Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007); *Jones v. City of Chicago*, 1999 WL 160228 at *2-3 (N.D. Ill. Mar. 10, 1999) (Kocoras, J.); *Keys v. City of Harvey*, 1996 WL 34422 at *2-3 (N.D. Ill. Jan. 26, 1996) (Nordberg, J.); *Patterson v. Burge, et al.*, No. 03 C 4433, dkt 410 (Gottschall, J.) (granting bifurcation on reconsideration); *Coffie v. City of Chicago*, No. 05 C 6745, dkt 136 (Holderman, J.); *Booker v. City of Chicago*, No. 04 C 6371, dkt 249 (Keys, M.J.) (Report & Recommendation). *Accord Lopez v. City of Chicago*, No. 01 C 1823, dkt 160 (Der-Yeghiayan, J.) (barring trial of *Monell* claims); *Wawryniuk v. City of Chicago*, No. 03 C 4291, dkt 34 (St. Eve, J.) (barring discovery of *Monell* issues).

[3]*See, e.g., Medina*, 100 F. Supp. 2d at 898; *Nessel v. City of Northlake*, 1994 WL 685508 at *1 (N.D. Ill. Dec. 5, 1994) (Bobrick, M.J.); *Lopez v. City of Chicago*, 2002 WL 335346 at *3 (N.D. Ill. Mar. 1, 2002) (Darrah, J.).

with the same general principles, the outcome of each decision is dependent upon the facts of that particular case. Thus, this opinion will not recite the analyses of the many various cases granting or denying bifurcation, but rather will consider the principles in light of the facts of this case and the parties' arguments.

Here, Defendants argue that bifurcation would expedite the litigation process and promote judicial economy, allowing the City to avoid potentially unnecessary discovery and litigation costs, and protecting Yerke from possible prejudice. (Defs.' Mot. at 2-4.) Plaintiffs respond that bifurcation will decrease efficiency because the same discovery will be needed to prove the *Monell* claims as the other claims and discovery disputes will increase, that bifurcation will result in two trials rather than one, that limiting instructions can be used to cure any prejudice to Yerke, and that there are non-economic benefits such as deterrence that would be lost if bifurcation is ordered. (Pls.' Resp. at 4-7, 9-10, 13.) [Dkt 47, 53.]

A.      Avoiding a trial of the *Monell* claims.

Defendants' primary argument is that bifurcation should be ordered because a trial on the *Monell* claims will not be necessary, and therefore, discovery on those claims can be dispensed with. In order to assess that argument, it is necessary to review the relationship between the *Monell* claims against the City and the claims against the individual officer, Yerke.

*Monell* held that a local government can be sued under 42 U.S.C. § 1983, but only "when execution of a government's policy or custom . . . inflicts the injury." 436 U.S. at 694. When the local government's failure to train its officers constitutes "deliberate indifference" to a person's rights and causes a deprivation of a person's constitutional rights, the local government is liable to

that person for his injuries. *See, e.g., Canton v. Harris*, 489 U.S. 378, 388-89 (1989). However, "[m]isbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers." *Estate of Sims v. County of Bureau*, _____ F.3d _____, 2007 WL 3036752 (7th Cir. 2007)(citations omitted). Thus, to prevail on a *Monell* claim, a plaintiff must go beyond proving that an individual municipal employee violated the plaintiff's constitutional rights. A fundamental issue here is whether the City's proffered Stipulation makes such additional proof, and the related discovery, unnecessary.

To start, if Plaintiffs cannot prove that Yerke violated their constitutional rights, their *Monell* claims against the City will fail as a matter of law, and the litigation will be over without the need for a trial on the *Monell* claims. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that "neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm").

If Plaintiffs prove that Yerke violated their constitutional rights, they are not entitled to recover any *additional* compensatory damages from the City because of their *Monell* claims. *See, e.g., Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). Thus, the City argues, if Plaintiffs win a verdict against Yerke, Plaintiffs may decide as a practical matter that it is not necessary to go forward to try the *Monell* claim. However, although Plaintiffs may not recover any additional damages, if Plaintiffs prove that Yerke's violation of their rights was a result of the City's policy, the City as well as Yerke is liable to Plaintiffs for the damages caused thereby. *Monell*, 436 U.S. at 690, 691-92, 694.

Defendants argue that it is not necessary or efficient to have a trial of all of the additional

issues necessary to prove the *Monell* claims just to obtain a judgment against the City for the same amount as the judgment against Yerke. Under Illinois law, a local government is required to pay tort judgments for compensatory damages for which its employees are liable for acts within the scope of their employment. 745 Ill. Comp. Stat. § 10/9-102. The Illinois statute permits a plaintiff to bring a claim directly against the municipality and obtain a judgment requiring the municipality to pay the amount due to the plaintiff from the officer. *Wilson v. City of Chicago*, 120 F.3d 681, 684-85 (7th Cir. 1997). Thus, if a plaintiff obtains a judgment for compensatory damages against the individual officer, he may recover the amount of the judgment from the municipality with no need to prove his *Monell* claim. *See Patterson*, No. 03 C 4433, dkt 298 at 5; *Medina*, 100 F. Supp. 2d at 895-96 (stating that, "from an economic standpoint, a prevailing plaintiff in a § 1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers. . . . As a result, plaintiffs generally choose to forego the more difficult route of seeking to hold the municipality liable under *Monell*"); *Grant v. City of Chicago*, 2006 WL 328265 at *1, 3 (N.D. Ill. Feb. 10, 2006) (Lefkow, J.) (stating that, "[i]n the final analysis, the plaintiff gains nothing in her pocket from a [*Monell*] judgment against the City").[4]

There is no guarantee, however, that the municipality will concede liability under the Illinois statute if a verdict is rendered against an individual officer. The municipality may dispute payment, for instance, by arguing that the plaintiff cannot prove that the police officer was acting within the scope of his employment – a requirement under the Illinois statute. *See* 745 ILCS 10/9-102. Here,

---

[4]The statute does not require the municipality to pay punitive damages that might be assessed against the individual officer, but a municipality cannot be liable for punitive damages on a *Monell* claim, either. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271-72 (1981); *Joan W. v. City of Chicago*, 771 F.2d 1020, 1025 (7th Cir. 1985).

the City has denied that Yerke acted within the scope of his employment with respect to plaintiff

Elrod, but admitted that Yerke acted within the scope of his employment with respect to plaintiff

Centera. *See Elrod*, No. 06 C 2505, Answer ¶ 4 [dkt 21]; *Centera*, No. 07 C 203, Answer ¶¶ 4, 73,

77 [dkt 16]. If liability under the statute is contested, the plaintiff may be forced to spend significant

time litigating the issue, which would delay her ultimate recovery.

   Here, the City has offered to stipulate to the entry of judgment against it for any

compensatory damages awarded against Yerke or any other City employee as a result of a finding

of a constitutional violation as alleged by Plaintiffs. (Mot. Leave Cite Suppl. Auth., Ex. B, Stip.)

[Dkt 57.] Thus, if Plaintiffs establish a constitutional injury, the City's Stipulation requires the City

to pay any award of compensatory damages without Plaintiffs' proving the *Monell* prerequisites to

the City's liability, in other words, without any trial on Plaintiffs' *Monell* claims.

   The Stipulation is not an admission of liability that the City's policies or practices caused

Plaintiffs' injuries; on the contrary, the City denies in its Stipulation that it "has any 'policies,

customs or practices' that cause constitutional deprivation" or that "caused the alleged violations that

would give rise to liability under section 1983." (Stip. ¶ 4.) However, significantly, the City is not

merely waiving Plaintiffs' need to prove certain elements required in a *Monell* claim, it is agreeing

to "entry of judgment against the City for compensatory damages" if the finder of fact finds that "any

City employee violated plaintiffs' constitutional rights as alleged in their Complaints." (Defs.' Mot.

Leave Cite Suppl. Auth., Ex. B, Stip. ¶ 5.)

   The City's submission of similar stipulations has been cited as justifying bifurcation orders

in several cases. *See, e.g.*, *Parker*, 479 F. Supp. 2d at 828, 829, 834 (granting bifurcation where city

stipulated to paying monetary judgment entered against its employee); *Patterson*, No. 03 C 4433,

dkt 410 (same); *Coffie*, No. 05 C 6745, dkt 136 at 1 (same); *Grant*, 2006 WL 328265 at *1, 3 (barring trial of *Monell* claims where city provided stipulation to entry of judgment against it); *Lopez*, No. 01 C 1823, dkt 160 at 2 (same). Indeed, in at least one case, the judge modified his recommended ruling denying bifurcation based on the City's submission of a clearer, more comprehensive stipulation to judgment against it if the plaintiff were to establish a violation by any City employee. *Booker*, No. 04 C 6371 [dkt 249]. Conversely, in several cases in which the City did not offer a stipulation of judgment against it, its motion to bifurcate was denied. *See, e.g., Lopez*, 2002 WL 335346 at *3 (denying bifurcation and noting that the city had not offered to stipulate to a judgment against it for compensatory damages awarded to the individual officers); *Medina*, 100 F. Supp. 2d at 897-98 (same); *Nessel*, 1994 WL 685508 at *2.

In some cases the assertion of a defense of qualified immunity by the individual officer raises the potential scenario in which a plaintiff who proves a constitutional violation loses his claim against the individual defendant because of the defense of qualified immunity, but could prevail against the City under *Monell* by proving that the violation was the result of a municipal policy or custom. *See Owen v. City of Independence*, 445 U.S. 622, 625 (1980); *Medina*, 100 F. Supp. 2d at 896. In such a case, unless the City stipulates to pay damages notwithstanding the individual officer's qualified immunity, a trial on the City's *Monell* liability would not be avoided, and bifurcation would result in the possibility of two trials with at least some duplicative evidence.

Although Yerke has pleaded the defense of qualified immunity in this case (Def. Yerke's Answer at 12 [dkt 25]), the likelihood of a defendant prevailing on that defense in the context of an excessive force claim has not been a persuasive argument against bifurcation. *See Grant*, 2006 WL 328265 at *3 (citation omitted) (stating that court was "at a loss to imagine how the scenario could

occur in this case, where the facts alleged clearly state a claim for excessive force, and the right to be free from excessive force is clearly established"); *Bailey v. City of Chicago*, No. 07 C 204, dkt 41 at 2 (April 18, 2007) (Conlon, J.) (finding plaintiff's argument that officers might prevail on qualified immunity to be "speculative, and unpersuasive in light of the other factors supporting bifurcation"); *Parker*, 479 F. Supp. 2d at 828, 833 (finding that a qualified immunity defense was a "remote possibility, given the allegations in this complaint," which involved a police officer's misconduct).[5]

In summary, there is no doubt that including the *Monell* claims pleaded by Plaintiffs would add to the length and complexity of the trials of this case. If the *Monell* claims are omitted, the trial of the remaining claims "is likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims." *Medina*, 100 F. Supp. 2d at 895; *see also Myatt*, 816 F. Supp. at 1264 (noting plaintiff's acknowledgment that proof of a "code of silence" policy relating to *Monell* claims would take one to two additional trial days). To the extent that a successful *Monell* claim serves to ensure payment of the damages to Plaintiffs, that goal is achieved by the Stipulation. Thus, bifurcation under the condition of the proposed Stipulation would promote the goals of judicial economy, expediency, and convenience.

---

[5]Whether the City's Stipulation here, in which the City has agreed to the entry of judgment against it for compensatory damages if the jury were to find that "any City employee" violated Plaintiffs' constitutional rights, would require the payment of compensatory damages even if Yerke avoids individual liability because of qualified immunity need not be decided at this time. However, in one case, the addition of the language "any city employee" to the proposed stipulation persuaded the Judge to modify his previous his previous recommended ruling denying bifurcation. *See Booker*, No. 04 C 6371, dkt 249 at 1-2 (recommending granting renewed motion to bifurcate where City "sweetened the pot" by offering to stipulate to judgment against it in the event plaintiff established a constitutional violation by *any City employee*, and not just the named individual defendants).

**B.      Deferring discovery relating to *Monell* issues.**

Discovery relating to a *Monell* claim regarding a municipality's policies and practices "can add significant time, effort, and complications to the discovery process." *Medina*, 100 F. Supp. 2d at 895. Many courts have referred to that fact in granting motions to bifurcate. *See, e.g., Jones*, 1999 WL 160228 at *3 (stating that bifurcating can avoid the potential for "extremely costly and burdensome, yet ultimately unnecessary, discovery"); *Parker* at 834 (stating that *Monell* discovery "may inflict needless, wasteful expense of time and money upon the parties and the court"); *Bailey*, No. 07 C 204, dkt 41, at 2 (ordering bifurcation where *Monell* discovery was likely to be extensive and time consuming yet probably unnecessary); *Patterson*, No. 03 C 4433, dkt 410 (determining that bifurcating would be more efficient based on fact that plaintiff identified numerous witnesses who would testify solely on issue of *Monell* liability, and that the need for expert discovery on municipal policy issues would be eliminated).

In this case, the parties dispute the extent to which the discovery process can be abbreviated by bifurcation. Citing Plaintiffs' discovery requests relating to the *Monell* claims, Defendants assert that the discovery and litigation costs involved with Plaintiffs' policy claims alone consist of producing "thousands of documents" from the Chicago Police Department, the City Council and its committees, and the Police Board, as well as numerous Rule 30(b)(6) witnesses for deposition, and retaining and defending expert witnesses and busy public officials, including Aldermen.  (Defs.' Mot. at 3; Defs.' Reply at 3.)[6]   Plaintiffs counter that much of the *Monell* discovery has in fact

---

[6] Defendants cite Plaintiff Centera's First Set of Requests for Production to the City, especially Nos. 36-42, Centera's First Set of Interrogatories to the City, especially Nos. 11-15, and Elrod's First Set of Requests for Production to the City, especially Nos. 9-11 in support of

already been completed because it overlaps with the discovery in four other shooting cases being litigated by Plaintiffs' counsel against the City, and that "the primary discovery needed here is only "to fill in the gap with the missing files to catch the documents up to this April 2006 shooting." (Pls.' Resp. at 2.) They claim that "[w]hat is really at stake is around a half-dozen extra depositions and several boxes of documents." (Pls.' Resp. at 9.)

Plaintiffs' argument is hard to reconcile with the scope of Plaintiffs' discovery requests.[7] A similar argument was raised by the plaintiff in *Bailey*, No. 07 C 204 [dkt 41], and rejected by the court. In that case, the plaintiff also claimed that the discovery burden associated with the *Monell* issues would be modest and would require only "a half-dozen extra depositions and several boxes of documents." *Id.* at 2. The court found the plaintiff's estimate of the discovery burden to be unrealistic considering her discovery requests to the City, which included a request for "[a]ll documents relating to any discharge of a weapon by any Chicago Police Officer for the five years preceding May 2, 2006, including all Complaint Register files and U-files." *Id.* Plaintiffs in this case served an identical request on the City, which is just part of the *Monell* discovery sought.

their argument. (Defs.' Mot. at 3 n. 2.)

[7] Plaintiffs' requests include, for example, "All Documents relating to all changes to the Department's policies, practices and training on the issues of the use of force, including deadly force, since 1999"; and "All Documents relating to Chicago police shootings that have been presented or communicated to the Chicago City Council, the Council's Fire and Police Board and/or any member thereof including but not limited to any communications, studies, audits, assessments, evaluations, statistics, memorandums and reports." (Defs.' Mot., Ex. B, Centera's Req. to Prod. Nos. 38, 41.) Interrogatories propounded on the City relating to the *Monell* issues in this case include: "[I]dentify and describe each and every instance in the ten years prior to the events at issue in this matter in which the policymakers . . . have undertaken to review, uncover, or determine the prevalence of the use of deadly force . . . ."; and "Describe all action taken by any policymaker to prevent police shootings. . . ." (*Id.*, Centera's First Set of Interrogs. Nos. 11, 12.)

(Defs.' Mot., Ex. B, Centera's Req. to Prod. No. 37.) If Plaintiffs were confident that all they need

is "to fill in the gap" of other evidence, there would be no need for requests of the breadth served

here. Furthermore, whether the discovery produced in other, unrelated cases would be admissible

in the trial of these cases is not certain. Thus, discovery on the *Monell* claims is likely to be

substantial, notwithstanding Plaintiffs' attempts to minimize it.

Of greater force is Plaintiffs' argument that the discovery on the *Monell* claims is also

discovery that is relevant to the remaining claims. (Pl.'s Resp. at 4-5.) For example, they argue that

evidence regarding other shooting investigations (such as the manner in which shooting

investigations are conducted) is relevant to both the underlying claims and the *Monell* claims, to

show that the investigations are conducted in a manner so as to shield the officers, which could help

impeach or undermine statements made by supposedly unbiased investigators. (Pls.' Resp. at 4-5,

7.) They suggest that bifurcation will result in discovery disputes regarding "what types of discovery

fall on which side of the artificial line," ultimately slowing down discovery. (Pls.' Resp. at 2, 7-8)

That concern has been expressed by other courts. *See Jones,* 1999 WL 160228 at *3; *Myatt,* 816 F.

Supp. at 1264; *Patterson,* No. 03 C 4433, dkt 298 at 4 (denying bifurcation, although granting

bifurcation in later decision).

Whether the *Monell* claims so overlap with the remaining claims as to undermine any

efficiencies to be derived from bifurcation of discovery is a decision that must be made on a case-by-

case basis. After reviewing the claims in this case, the court is not persuaded that proof of the §

1983 claim against Yerke and state law claims would include substantially all of the evidence that

would need to be presented to prove the *Monell* claims. Nor is it persuaded that distinguishing the

*Monell* discovery from the other discovery will be unusually problematic in this case. Plaintiffs'

excessive force claims each involve a single incident relating to Yerke's actions on the one night in question. There are no other defendants, no other allegations of constitutional violation except excessive force. Those facts suggests that it is more efficient to bifurcate the *Monell* claims and to stay *Monell* discovery until at least after discovery regarding the underlying claims is completed (and perhaps ultimately bypassing that discovery altogether). *See, e.g., Parker,* 479 F. Supp. 2d at 828, 834 (granting bifurcation and noting that "[t]he commonplace nature of the case – an allegation of police officer's misconduct – is significant").[8]

Discovery in this case can proceed on the claim against Yerke and related state law claims, while deferring discovery relating to the *Monell* claims. Notably, even Defendants acknowledge that discovery on the claim against Yerke involves certain areas of municipal practice. (Defs.' Reply at 4.) In the event that, in fact, the expected economies and efficiencies do not develop, the issue of bifurcation can be revisited.

C.    **Potential prejudice from trial of both *Monell* and individual liability.**

Defendants argue that bifurcation of the trial will protect Yerke from the possible prejudice of introducing at trial evidence regarding police shootings in which Yerke was not involved, or other evidence regarding the City's policies for addressing police officer misconduct, such as how the Police Department investigates and disciplines its officers after shooting incidents. (Defs.' Reply at 7-8.) While some courts have considered the potential prejudice to the individual defendant in

---

[8]    In contrast, *Hobley v. Burge,* No. 03 C 3678, cited by Plaintiffs, involved allegations of police brutality, conspiracy, and fabrication of evidence involving a number of individual defendants as part of a pattern extending over a substantial period of time. In that case, the discovery relating to that pattern would be difficult to distinguish from discovery on the *Monell* claims.

granting motions to bifurcate, *see, e.g., Myatt*, 816 F. Supp. at 1264 n. 8; *Jones*, 1999 WL 160228

at *3, other courts have noted that such prejudice can be cured by limiting instructions. *See,*

*e.g.,Medina*, 100 F. Supp. 2d at 897 (stating that "[t]hough the court is cognizant of the possibility

of prejudice to the individual officers if the claims are tried together, our system generally trusts

jurors to understand and follow limiting instructions regarding consideration of evidence against

some defendants and not others"); *Nessel*, 1994 WL 685508 at *2.

The City's argument could, in theory, apply to virtually every case that involved both

individual liability and *Monell* policy claims, because the nature of a *Monell* claim requires evidence

that goes beyond the actions of the individual defendant. Generally, the issue of avoiding prejudice

at trial is better addressed by application of the Rules of Evidence, rulings in limine, and limiting

instructions. This argument is not, in itself, a persuasive reason for bifurcation.


**D.    Accountability for, and deterrence of, civil rights violations.**

Plaintiffs raise one final argument to be considered, namely, that there are non-economic

benefits to suing a municipality which may be less likely to occur when a plaintiff pursues only the

individual officer in a § 1983 case. Plaintiffs here intend to prove that the City's system for

investigating and disciplining shootings is so "thoroughly broken" that officers can act "virtually

guaranteed of impunity, a climate that encourages the sorts of abuses alleged here." (Pls.' Resp. at

13.) Plaintiffs argue that the goal of deterrence will be lost if they cannot pursue their *Monell* claims

against the City, and argue that it is important for them to hold all parties accountable, especially the

City. (Pls.' Resp. at 11-12.)

There is no doubt that holding municipalities to account for constitutional violations resulting

from the municipality's policies, customs or practices is an important goal of § 1983. *See Owen*, 445 U.S. at 650. Notably, in *Owen*, the Supreme Court referred to "[a] damages remedy against the offending party" as "a vital component of any scheme for vindicating cherished constitutional guarantees . . ." *Id*. at 651. In its Stipulation here, the City agrees to be liable for any constitutional violation committed by its employees, even without proof that the violation is the result of a policy, custom or practice.

Plaintiffs argue that more than mere monetary liability is necessary to deter unconstitutional acts that have their root in the City's policies, customs and practices. Several courts have opined that a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its policies and customs.[9] Other courts conclude that an obligation to pay the judgment is sufficient deterrent.[10]

It is important to remember that bifurcation does not mean dismissal of the *Monell* claims. Plaintiffs retain the right to discover and try their *Monell* claims. Bifurcation in this case means structuring the process to facilitate a more economical and efficient process of discovering the merits

___

[9]*See, e.g., Grant*, 2006 WL 328265 at *3 (granting motion to bar trial of *Monell* claim but acknowledging that "unconstitutional municipal conduct is more likely to elude justice as a result of decisions like this"); *Lopez*, 2002 WL 335346 at *3 (stating that a finding of liability against individual employees, as compared to a finding of liability against a municipality, "may decrease the likelihood of the municipality's acting to prevent future violations when that municipality is, or is not, named in a judgment"); *Medina*, 100 F. Supp. 2d at 896.

[10]*See Lopez*, No. 01 C 1823, dkt 160 at 2 (indicating that deterrent effect will be felt where city consented through stipulation to have judgment entered against it without proof of *Monell* claims); *Wawryniuk*, No. 03 C 4291, dkt 34 at 2 (rejecting plaintiff's argument that barring *Monell* discovery will undermine §1983's objective of deterrence because city's stipulation will enable plaintiff to obtain a judgement against the city itself).

of the underlying § 1983 claim, at the conclusion of which the parties will have the opportunity to consider possible settlement or go to trial on the underlying claim, without having incurred the expense of discovery relating to the *Monell* claims. If settlement is not reached and the trial results in a verdict for one or both of the Plaintiffs, the Plaintiffs reserve their right to discover and try the *Monell* claims. The City's Stipulation does not eliminate that right.

## Conclusion

For the foregoing reasons, Defendants' Motion to Bifurcate § 1983 Claims and to Stay Discovery and Trial On Those Claims is granted. Discovery on Plaintiffs' *Monell* claims, including expert discovery, is stayed until after discovery on Plaintiffs' remaining claims has been completed. A status hearing before this court is set for November 6, 2007 at 9:45 a.m.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

November 1, 2007

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3742 | **DATE** | 11/7/2007 |
| **CASE TITLE** | | Simmons et al. Vs. City of Chicago et al. | |

DOCKET ENTRY TEXT

Plaintiffs' Motion to Unstay Monell Discovery [116] is denied. Defendant City's Motion to Bifurcate Section 1983 Claims and to Stay Discovery and Trial on those Claims [123] is granted. All matters relating to the referral of this case having been resolved, the referral is closed and the case is returned to the assigned judge.

■ [ For further details see text below.]                                    Notices mailed by Judicial staff.

## STATEMENT

Before the Court are two motions: (1) plaintiffs' motion to unstay *Monell* discovery and (2) defendant City of Chicago's ("the City") motion to bifurcate section 1983 claims and to stay discovery and trial on those claims. On 9/21/04, Judge Filip granted the City's motion to bifurcate discovery. The parties proceeded with fact discovery related to plaintiffs' claims against the individual officers. Now, plaintiffs ask this Court to unstay *Monell* discovery. In response, the City filed its motion to bifurcate. The City asks this Court to bifurcate plaintiffs' § 1983 claims against the City pursuant to Federal Rule of Civil Procedure 42(b) and to stay both discovery and trial on those claims.

This case arises out of an accident, which occurred on May 19, 2004, in which a police vehicle driven by Officers Delboccio and Jackson ("the individual officers") struck eight year-old Gregory Jones and eleven year-old Datondra Mitchell. Gregory Jones was killed and Datondra Jackson was seriously injured. At the time of the accident, traffic was backed up on Grand Avenue and the officers were allegedly driving westbound at a high rate of speed in the eastbound lane so as to avoid the traffic congestion. The officers contend that they were chasing a man with a gun. However, no one reported a man with a gun until thirty minutes after the accident. Plaintiffs contend that the officers lied about why they were driving in the eastbound lane in order to conceal their culpability. Plaintiffs' twelve-count complaint alleges wrongful death, due process and equal protection claims against the individual officers and the City. Plaintiffs' claims against the City, brought pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), allege that certain municipal customs, policies and practices caused the alleged constitutional violations.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

**STATEMENT (CONT.)**

Federal Rule of Civil Procedure 42(b) states that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of a claim, cross-claim, counterclaim, or third-party claim, or of any separate issue . . . ." Fed. R. Civ. P. 42(b). The Seventh Circuit has held that only one of the criteria listed in Rule 42(b) need be met for bifurcation potentially be appropriate. *See, e.g., Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000) (citation omitted). The Seven Circuit also instructs that a district court "'has considerable discretion to order the bifurcation of a trial'" and h stated that it "'will overturn this decision only upon a clear showing of abuse.'" *Id.* at 364-65 (quoting *Krocka City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)).

Here, the City has stipulated to entry of a judgment against it for compensatory damages based on constitutional violations. The stipulation provides that "the City agrees to entry of judgment against the City f compensatory damages if and only if the finder of fact in this case finds that any City employee violated plaintiffs' constitutional rights as alleged in their Second Amended Complaint." After reviewing the City's motion to bifurcate and plaintiffs' response, this Court finds that the City's stipulation tips the scales in favor o bifurcation. The fact that plaintiffs' claims arise from a single incident along with the straight-forward nature o the allegations favor bifurcation. *See Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007). Furthermor given the allegations in this case (*i.e.*, that the officers drove at a high rate of speed in the eastbound lane while traveling westbound in order to avoid traffic and that they fabricated their excuse for doing so), it appears that "qualified immunity is much more of a remote possibility." *Id.* at 833. Finally, this Court finds that as a result the City's stipulation, the likelihood of a second trial is negligible. Therefore, bifurcation in this instance serve the interests of judicial economy.

Based on the foregoing, the City's motion to bifurcate plaintiffs' *Monell* claims and to stay discovery an trial on those claims is granted. For the same reasons, plaintiffs' motion to unstay *Monell* discovery is denied.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacob Butko, et al.

Plaintiff,

v.

City of Chicago, et al.

Defendant.

Case No.: 1:07–cv–04207
Honorable Ronald A. Guzman

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, October 10, 2007:

MINUTE entry before Judge Ronald A. Guzman :Motion by Defendant City of Chicago to bifurcate 1983 claims and stay discovery and trial on those claims [26] is granted as stated in open court. Status hearing held on 10/10/2007. Amended pleadings and joinder of parties due by 12/17/2007. Status hearing set for 1/25/2008 at 09:30 AM.Mailed notice(cjg, )

ATTENTION: This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Renee Abner

                    Plaintiff,

v.

                                                   Case No.: 1:07−cv−05773
                                                   Honorable Ronald A. Guzman

City of Chicago, et al.

                    Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, November 19, 2007:

      MINUTE entry before Judge Ronald A. Guzman :Status hearing held on
11/19/2007. It is hereby ordered that plaintiff's Monell claim is severed and discovery is
stayed as to those claims. Discovery schedule: Rule 26 disclosures by 11/29/07.
Amendment of pleadings and joinder of parties by 1/31/08. Fact discovery closes 5/31/08.
Status hearing set for 6/4/2008 at 09:30 AM.Mailed notice(cjg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov.*

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Chase Mosby, et al.

Plaintiff,

v.

Case No.: 1:07−cv−03148
Honorable Ronald A. Guzman

D O'Connor, et al.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, November 1, 2007:

     MINUTE entry before Judge Ronald A. Guzman :Motion by Plaintiffs Chase Mosby, Woodie Drummer, Andre Mosby to strike stipulation [77] is denied. The stipulation, with the interpretive gloss described in the colloquy between the Court and the parties is entered. The Monell count against the city itself is bifurcated in all respects. Enter proposed draft order directing the City to produce complaint register (CR) files of the defendant officers and also CR file no. 1004104.Mailed notice(cjg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ARVIN PARKER,

    Plaintiff,

    v.

CHICAGO POLICE OFFICER VINCENT
BANNER, CHICAGO POLICE OFFICER
DONALD BLAIR, CHICAGO POLICE
OFFICER TIMOTHY MADISON,
CHICAGO POLICE OFFICER COREY
ANDERSON, and CITY OF CHICAGO, a
municipal corporation,

    Defendants.

No. 05 C 6378
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Arvin Parker claims that certain individual police officers denied him his constitutional rights. He has now sued those officers for damages and added a count claiming that the City of Chicago is liable as well because the officers' actions were caused by unconstitutional policies, practices or customs of the City.

Parker now questions whether a city may gain dismissal or postponement of § 1983 liability claims for damages by simply stipulating that it will pay whatever monetary judgment is entered against its employee who is a co-defendant in the lawsuit. The City has already made such a stipulation in this case.

The commonplace nature of the case – an allegation of police officer's misconduct – is significant. The Supreme Court opinion that permitted such policy and practice lawsuits did not consider a case like this one. In *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658 (1978),

the issue was a gender-based discriminatory policy of a municipal government. A legal change in that official policy made injunctive relief moot. There were no individual employees who decided to act unconstitutionally; there was only the city policy to blame. So the only issue was whether money damages could be awarded against the city.

In *Monell*, the Court held that a municipality could not be held to pay damages simply because its employee, acting within the scope of his or her employment, wrongly injured the plaintiff. Instead of allowing *respondeat superior* to be the rule, the plaintiff instead would have to prove that an unconstitutional policy, practice or custom existed. By overruling *Monroe v. Pape*, 436 U.S. 658 (1961), the Court decided that municipalities were not immune from monetary damages under § 1983. However, the ruling created a fairly unique standard of employer liability for damages. This could have been in recognition of the effect its new rule would have on municipal finances, of the decidedly more formal way in which governments set policy or possibly of the winding way in which custom and practice arise.

The other seminal case of *Owen v. City of Independence*, 445 U.S. 622 (1980), also did not resemble an ordinary police liability claim. In *Owen*, the city manager fired a police chief for management failures with respect to the police property room without giving the chief notice or a hearing. The individual city employees were protected by qualified immunity rules,[1] so the plaintiff's only available remedy was the suit against the city. The Court allowed the suit to go forward.

> § 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well. The knowledge that a

---

[1] The individual officers in this case have not yet asserted immunity.

Page 2 of 13

municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

445 U.S. at 651-52 (citations omitted).[2] The Court clarified its reasoning by stating that, "[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees . . . ." *Id.* at 651. I read *Owens* to say that deterrence of future violations will occur because the city will have to pay damages and, if damages grow too large, then the city will change its policies, customs and practices.

In this case, the City has already stipulated that it would pay whatever compensatory damages are awarded for the actions of its employees.[3] If a constitutional violation occurred,

---

[2]I think the quoted passage in *Owen* is actually an endorsement of the idea that the executive and legislative branches of city government ought to be reasonably sure about the constitutionality of their actions before performing them. I have not found much support in subsequent cases for the idea that municipal officials are liable for any act or policy where the lawfulness was subject to "any doubt." This would be entirely inconsistent with the idea of qualified immunity, which states that governmental actors are shielded from liability so long as "their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). The municipality cannot be liable unless an officer is individually liable on the underlying claim. *Treece v. Hochstetler*, 213 F.3d 360, 361 n.2 (7th Cir. 2000). So if qualified immunity exists for an officer, then the municipality should not be liable either.
Police conduct is often challenged on constitutional grounds. Lower courts reach conflicting results, professors offer differing opinions and usually the final answer is not known for years, until the Supreme Court rules. In any one of the many areas in which reasonable arguments can be made for, and against, a particular police practice, only a fool of a police chief could testify that he had no doubts about the legality of a practice.

[3]Plaintiff argues that the stipulation is illusory because Illinois law already requires indemnification (not to mention the current collective bargaining agreement between the City and its officers). The stipulation is not illusory for two reasons. First, the stipulation is binding for the life of this case, even if state law or union agreements change. Second, without the stipulation Plaintiff may have to bear the cost of enforcing the existing indemnification rights if, for example, he prevails against an individual officer but loses its case against the City. If that were

then the City pays. In my view, that is all *Owen* requires. The idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-71 (1981).

In other cases, I have postponed consideration (including discovery) of *Monell* claims against the City. In this case, Plaintiff offers an extensively briefed motion contending that my decisions are in error, so I will re-examine the issue.

There is nothing in the precedents of our Court of Appeals that dictates the rule. In *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), Judge Posner, writing for the Court, noted the importance of the claim against the City.

> The issue has little, probably no, practical significance. No damages were awarded against the City that were not also awarded on a joint and several basis against the individual defendants; and since the City indemnifies its employees for damage awards . . . Jones will collect his judgment in full whether or not the City is held liable.

*Id.* at 995.

Plaintiff argues that this means that, even if nothing is at stake, the claim against the City must go forward alongside the individual claims. This is patently untrue. The City did not challenge (nor did Judge Posner address) the validity of proceeding on a claim of no practical significance. Practical significance is not an irrelevant consideration. *See, e.g., Alliance to End Repression v. City of Chicago*, 820 F.2d 873 (7th Cir. 1987). If nothing is at stake then there

---

to occur, the City might then claim on a variety of grounds that it does not have to indemnify the officers. The stipulation guarantees that if the officers are finally assessed damages, Plaintiff will be paid notwithstanding any change in law or policy, and without further legal costs.

may be no case or controversy. If that is true then there may not be any reason, or even jurisdiction, to proceed.

Other circuits have walked through this field. Plaintiff relies on *Amato v. City of Saratoga Springs*, 170 F.3d 311 (2nd Cir. 1999). In *Amato* the plaintiff claimed excessive force and the District Judge postponed trial of the count against the City until the claim against the individual officers was tried. On its face, Plaintiff's use of this case is perplexing. Both the majority and the concurrence in *Amato* approved the severance and postponement of the *Monell* claim and noted that such action was taken "with some frequency . . . [because] severance is often appropriate in terms of judicial efficiency . . . ." *Id.* at 320. Moreover, *Amato* offers no holding concerning the issue here. Amato won a pyrrhic victory against the individual officers when the jury awarded him $1.00 in damages. The District Judge then dismissed the case without stating a ground. The panel assumed his ground was "the futility of proceeding when only nominal damages were at stake," and the Court of Appeals held that, if this was the ground for dismissal, then the District Judge had erred in doing so. *Id.* at 317. There is no indication that the defendant in *Amato* had agreed to pay the judgment against the officers.

Plaintiff finds one particular passage in *Amato* attractive:

> A judgment against a municipality not only holds that entity responsible for its actions . . . but can also encourage [it] to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.

*Id.* at 317-18.

This is reasoning at a fairly high level of abstraction. I doubt that the Second Circuit panel would have contended that an award of $1.00 would alert any city or its citizenry to the issue of police misconduct. Instead, I think the basis for the *Amato* ruling was founded on the principle that the law allows nominal damages to vindicate deprivations of absolute rights. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).[4] In reaching its conclusion, and offering broad language in support of it, I think the Second Circuit read dicta in *Carey* as holding — an error against which a distinguished member of that court has written a persuasive argument. *See* Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249 (2006).

 *Carey* dealt with students that had been expelled from school without appropriate due process. The school argued that the suspensions were inevitable, even if there had been a full hearing. The Court recognized that the case before it might well be devoid of any actual damages and, after a discussion of various theories to justify nominal damages even in the absence of conventional damages, it arrived at certain guiding principles. *Carey*, 435 U.S. at 256-59. *Carey* can be read in two ways: to hold that nominal damages are either available in all cases, or available in those cases where traditional compensable injury did not occur. The Court told us which of the two readings is better. It used the explicit language of holding when it closed its opinion.

---

[4]Judge Jacobs concurred because there was no stated ground in the record for dismissing the *Monell* claim. Otherwise he declined to join in the opinion because the trial would be, "a wasteful imposition on the trial judge and on the taxpayers and veniremen of Saratoga Springs . . . Whatever benefit the majority envisions, . . . [i]t is . . . just as likely that a second trial would benefit the plaintiff only as an act of spite designed to inflict expense on the municipality and compel deference and attention to himself." *Amato*, 170 F.3d at 322-23.

> We therefore hold that if, upon remand, the District Court
> determines that respondents' suspensions were justified,
> respondents nevertheless will be entitled to recover nominal
> damages not to exceed one dollar from petitioners.

*Id.* at 266-67.

That statement is as far as *Carey* goes – where no other damages are available, nominal damages can be sought. This is why I do not necessarily quarrel with the result in *Amato*. The Second Circuit may well have regarded the nominal damage award against the individual defendants as the equivalent of a determination that no compensatory damages could be awarded. Thus, under *Carey*, nominal damages were available against the City of Saratoga Springs.

The Ninth Circuit produced two other opinions that Plaintiff relies upon: *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), and *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir. 1999). In *Larez*, the *Monell* claim had been severed until the individual officers had been tried. The Court of Appeals spent little time in dealing with the propriety of a second trial. It is impossible to tell what was argued in support of the appeal of the *Monell* trial. The panel devoted its efforts to dealing with the mixed *Monell* and individual claims against the police chief himself. The panel reversed the verdict in the second trial due to evidentiary error. The opinion is not useful as reasoned precedent on the issue here.

Similar to *Larez* and *Amato*, *Ruvalcaba* involved a case in which the *Monell* claims were severed and the individual defendants were tried first. It is not clear whether this severance was simply a division of proceedings which was conducted in two phases before the same jury. Ruvalcaba lost part of his claim against the individual officer and was fully compensated for the part that he won, but trial errors left him in a position to pursue the *Monell* claims against the city

and its police chief. The *Monell* claim against the police chief was a real dispute because punitive damages were possible. As to the City, the Court simply followed *Larez* without any further reasoning, and said the trial against the City could proceed for nominal damages. Both of these Ninth Circuit opinions do not even attempt to persuade.[5]

Both the Second and Ninth Circuits assume that, when one receives a nominal award from an individual defendant, there is a right to have an *additional* award of nominal damages against the municipality. There may be a policy against double recovery of anything, including nominal damages, but I am not addressing that question here.[6]

---

[5] A California state court also rejected the Second and Ninth Circuits' rule, instead using the reasoning of the Seventh Circuit in *Jones v. City of Chicago*. The Court wrote:

> First, . . . [w]hy litigate the issue of municipal liability in the abstract when the municipality already has already accepted in reality?
>
> Second, a separate *Monell* trial for nominal damages would be expensive in time and resources to prove (or refute) a widespread pattern or practice of misbehavior. . . . [T]he possibility exists that departments with serious structural problems could use a nominal *Monell* defense verdict as a clean bill of health, thereby delaying needed reforms. . . .
>
> Third, the expense of *Monell* pattern or practice litigation would unduly inflate the settlement value of suits like this one [a simple excessive force claim in which a seven week trial produced a damage award of $3,380 compensatory and $1000 punitive damages]. . . .
>
> Fourth, *Monell* . . . claims raise problems of federalism . . . [T]hey implicate virtually every aspect of a police department's operations . . . [and risk] constitutionalizing particular . . . requirements . . . .
> Our decision does not apply to situations where the entity has refused to indemnify, nor does it extend to *express* departmental policies that are unconstitutional.

*Choate v. County of Orange*, 103 Cal. Rptr. 2d 339, 351-53 (Cal. Ct. App. 2000) (emphasis in original) (internal quotations omitted).

[6] Even if a plaintiff has the right to pursue additional nominal damages, a court (following *Amato*) would have the discretion to control expenses by imposing those discovery costs on the

Next, Plaintiff cites *Medina v. City of Chicago*, 100 F. Supp. 2d 893 (N.D. Ill. 2000), in which the City moved to sever an excessive force claim against two officers from the *Monell* claim and to stay discovery on that claim. Judge Kennelly noted the rulings in this District which had granted such motions and cited *Amato* as well as *Treece v. Hochsteler*, 213 F.3d 360 (7th Cir. 2000), which upheld the discretionary power of the trial judge to sever the *Monell* count in a case where the City stipulated to entry of judgment against itself should the officer be found liable. He rightly observed that these precedents do not *require* severance but noted the advantages of the practice since "[i]n many if not most cases, disposition of the individual claims will either legally or practically end the litigation," because loss of the individual claim ordinarily ends the case, and winning the claim means the plaintiff may not need, or want, to proceed further. *Medina*, 100 F. Supp. 2d at 895. He also noted the many ways in which bifurcation shortens the time to disposition and the expense of litigation. *Id.*

Judge Kennelly declined to bifurcate. He did so for two reasons grounded in the interest of the plaintiff. First, the City had not conceded it would pay any judgment against the individual officers. There remained the non-economic benefit of deterrence of future misconduct.[7] Second, he also declined to bifurcate based on case management principles. The individual officers had

---

plaintiff, or declining any petition for attorneys' fees. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages . . . the only reasonable fee is usually no fee at all.").

The municipality itself could also reduce the effects by defaulting and paying the nominal damages. *See Amato*, 170 F.3d at 321, n.11. It could do so "without fear that [it] might suffer collateral consequences . . . [because] a default judgment lacks preclusive effect in other litigation." *Id.* at 323.

[7]Unlike the Second and Ninth Circuits, Judge Kennelly did not rely on a vindication rationale.

not shown why a joint trial would prejudice them.[8]  Nor did the City show why the *Monell* issue

would make the trial much longer.

This case stands on a different footing.  In *Medina*, the City did not stipulate that it would

pay any compensatory damages awarded against the officers.  Also, I think qualified immunity is

a much more remote possibility, given the allegations in this complaint.

The most striking thing about Plaintiff's citation of *Medina* is the end of the actual

opinion.

> That leaves the issue of discovery.  Even if the Court is not willing
> to bifurcate the trial at this point, that does not mean that discovery
> must proceed all at once. . . . In this case, the Court will defer
> discovery on the *Monell* claim until after the completion of fact
> discovery on the claims against the individual officers.  At that
> time, . . . the court will be able to reassess the case, including . . .
> the scope of discovery that the *Monell* claim would entail.

*Id.* at 898.  In short, Plaintiff has not cited authority critical of the idea that discovery of *Monell*

claims should come after discovery for other claims.  Most of the cases Plaintiff cites severed the

*Monell* count.  The two judges who did not sever simply reserved the decision for later.

---

[8]He did recognize, however, that even if the proof against the individual officers is weak,
*Monell* proof inherently proffers bad acts by officers that are not on trial which may persuade a
jury the officers on trial must also be bad.

Plaintiff here has not asked for any type of injunction because he does not want one.[9] He sets forth what he wants in his brief:

> Plaintiff is entitled to tell his story to a jury. [His] story is not just one of individual police officers who crossed the line but that of a City who is well aware of the unconstitutional behavior of its officers and condones their behavior by covering up . . . or ignoring it . . . . [He wants a] right to a jury trial to air his dispute . . . .

He wants a verdict or an opinion stating that the City either engages in an unconstitutional practice or has an unconstitutional policy. This is much like the relief sought in *Alliance to End Repression v. City of Chicago*, 820 F.2d 873 (7th Cir. 1987) (holding that a battle over the conclusions in an inherently non-binding judicial opinion is not a thing over which there can be a justiciable controversy). In simple terms, if you just want a trial court to say that the City was wrong, you have not presented a case or controversy to that court. If you want some kind of relief then you might get the opportunity for a trial court to say what you want, but you cannot sue for the court's opinion since, "[t]he expression of judicial views is a *by-product* of the need to decide the case." *Id.* at 876 (emphasis in original).

The policy claims in this case are legitimate matters of public concern, over which there is already public debate. I do not think Plaintiff argues that *Monell* discovery is necessary in bringing claims of police abuse to the public consciousness. When an Alderman, the Chairman

---

[9]Everything so far is based on the fact that Plaintiff in this case has only asked for monetary damages. Some plaintiffs may also seek broad injunctive relief against specific practices. In terms of severance of injunction issues and discovery, the practical considerations support separation of the two even more strongly, because the injunctive issue will not only require the extra *Monell* discovery, but also that the judge consider issues not germane to a trial for money damages. Even if the first trial resulted in a clear definition of the unconstitutional policy, custom or practice, there will still be questions about the scope, nature and efficacy of an injunction.

of the Committee on Police and Fire of the Chicago City Council, states there is "an environment where police officers . . . have ample reason to believe that they will not be held accountable even in instances of egregious misconduct," as Plaintiff quotes, it is difficult to believe that City policies, customs and practices are not already under scrutiny.

Given a choice between having a court hear a single case or having a legislature conduct a hearing (free from ordinary evidentiary constraints) in order to decide whether and how to change policy, practice or custom, the choice ought to be made in favor of leaving it to the legislature. It is the job of the City Council to deal with citywide policies and practices. The court sits to remedy any particular act by a city employee which violates the Constitution, and it will do so regardless of what the City Council may choose to do. Here that remedy would be a damage award which is being paid by the City. That award is a good reason for it to change policies that are unconstitutional.

In the absence of claims for equitable relief, and in addition to damages, Plaintiff wants a piece of paper saying that the City acts unconstitutionally. I do not know exactly why he wants that paper, but securing a verdict or opinion for the sole purpose of having those words does not create a case or controversy within the meaning of Article III of the Constitution.

All of this is why I will postpone, and perhaps preclude, the extensive *Monell* discovery requested in this case. That discovery may inflict needless, wasteful expense of time and money upon the parties and the court. I would also be inclined to sever the trial of any individuals from a trial of the City. If Plaintiff loses against the officers, the case is over. If Plaintiff prevails, then he can decide whether it is worth pursuing his claim against the City. If he is entitled to try for

additional nominal damages, then he clearly has a right to pursue them. The mandate of "case or controversy" only requires that something concrete be at stake – a dollar will do.

Defendant's motion to postpone *Monell* discovery[10] and conditionally sever the trial of the City from the trial of the officers is granted.[11]

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: March 22, 2007

---

[10]This does not preclude Plaintiff from seeking evidence with respect to prior conduct of the officers or inquiring about their understanding of policy, practice or custom, since these things are relevant to the individual claims.

[11]"Conditionally" because if the wrong is defined as holding someone hostage to secure a weapon or property, there might be so few instances of this that severance would not be the most economical way to approach the case. However, that paucity of instances would also endanger Plaintiff's policy, practice or custom claim.