C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRISPUS BOOKER,                        )
                                       )
            Plaintiff,                 )
                                       )
        v.                             )    Case No. 04 C 6371
                                       )
CITY OF CHICAGO, CHICAGO               )
POLICE OFFICERS GEORGE K.              )    Judge Mark Filip
LIVERGOOD, G. McGOVERN,                )
and as yet unknown                     )    Magistrate Judge
CHICAGO POLICE OFFICERS                )    Arlander Keys
                                       )
            Defendants.                )

TO:  THE HONORABLE MARK FILIP
     UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

Currently before the Court is Defendant City of Chicago's Renewed Motion to Bifurcate. Plaintiff claims that, on November 19, 2002, Officer Livergood shot him without cause or provocation, and then, with the assistance of other Chicago Police Officers, planted evidence indicating that Mr. Booker had been armed. Plaintiff also seeks to hold the City responsible for the conduct of the Individual Chicago Police Officers, pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

The City has moved yet again to bifurcate the proceeding. In its renewed Motion, the City has sweetened the pot, so to

speak, by offering to stipulate to judgment against it, in the event that Plaintiff establishes a constitutional violation on the part of *any* City employee— not just the named Individual Defendants.  For the reasons set forth below, the Court recommends granting the City's Motion.

### Background Facts and Procedural History

Plaintiff complains that the City's quest to avoid *Monell* discovery has necessitated the filing of more than 18 briefs[1] on the topic.  Shortly after the case was filed, the City persuaded Judge Filip to structure discovery, requiring the parties to complete fact discovery before undertaking *Monell* discovery. Upon the completion of fact discovery, the City attempted to block Plaintiff's Motion to Lift the Policy Discovery Stay by offering a stipulation to judgment that, the City claimed, mooted Plaintiff's ability to satisfy the Constitution's justiciable case and controversy requirement with regard to the *Monell* claims against the City.  In the stipulation, the City agreed to waive the Plaintiff's need to prove the *Monell* elements if the Plaintiff succeeded on his claims against the Individual Officer Defendants.  In light of this stipulation, the City argued, there

---

[1] That total does not include the City's Motion for Leave to File a Reply In Support of Its Renewed Motion for Bifurcation, Plaintiff's Response to the City's Motion, or Plaintiff's May 16, 2007 Letter informing the Court that Judge Hibbler denied a purportedly similar bifurcation motion with an offer to stipulate to judgment in *Johnson v. City of Chicago*, 05 C 6545.

would be no need for discovery or a trial on the *Monell* claim.

Plaintiff opposed the stipulation, arguing that the unilateral stipulation, which did not acknowledge guilt, was not recognized by the Federal Rules of Civil Procedure. In addition, Plaintiff disputed that the stipulation would prevent him from satisfying the Constitution's justiciable case and controversy requirement, because his "absolute rights" had been infringed. *Citing* In *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-18 (2d Cir. 1999) (permitting the plaintiff to proceed with claim, even though only nominal damages were available, reasoning that "a judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all purposes of, and is not the equivalent of, a judgment against the municipality.")

This Court recommended denying the City's Motion in its Report and Recommendation, issued on December 15, 2006. Initially, the Court distinguished *Amato*[2], finding more

---

[2] This Court explained, at pages 12 and 13 of its December 15, 2006 Report and Recommendation, that "*Amato* is distinguishable, however, because the municipality had not stipulated to judgment on

persuasive the Seventh Circuit's decisions in *Greisz v. Household Bank*, 176 F.3d 1012 (7th Cir. 1999)(finding that the bank's settlement offer, which was the equivalent of a default judgment, eliminated the legal dispute upon which federal jurisdiction was based); and *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 876 (7th Cir. 1987) ("[n]o matter how desirable it may be to have a constitutional question settled, the resolution must await the concrete controversy, for only then does the judge have an adequate justification for giving an opinion") The Court rejected Plaintiff's argument that he had the right to pursue his constitutional claim, even if the City stipulated to judgment and no additional damages were available.

However, the Court concluded that, while a true offer of judgment would render Plaintiff's *Monell* claim moot for lack of a case or controversy under Article III of the Constitution, the stipulation offered by the City presented a potential minefield of liability loopholes.  This Court explained that "[a]bsent a stipulation to specific elements, as opposed to a waiver of proof

---

the *Monell* claims if the plaintiff successfully established the underlying constitutional violation.   *See Id.* (noting that the city could avoid a trial by making an offer of judgment.)  In addition, the *Amato* trial court simply dismissed the claims against the city and its officials once the jury awarded the plaintiff only nominal damages, reasoning that a judgment against the city would be pointless as it could not result in a substantial economic award to the plaintiff.  In the instant case, however, the City is *agreeing to the entry of judgment* against it, even if the Individually Named Defendants are slapped with only a nominal penalty."

under certain circumstances, it is unclear how the district court should proceed in the event that the Individual Officers effectively assert qualified immunity, or if the Individual Officers settle with Mr. Booker." Booker v. City Chicago, No. 04 C 6371, Report and Recommendation at p. 17 (Dec. 15, 2006).

Instead of filing objections to that Report with the district court, the City filed a Motion to Bifurcate Plaintiff's *Monell* claims, and to stay discovery and trial on those claims.

The City's Motion did not set forth its previous stipulation, but instead indicated that the City would "likely" stipulate to judgment in the event that Plaintiff prevailed over the individual Defendants.

In analyzing the City's Motion, the Court noted that the district court has wide latitude in determining whether to bifurcate Plaintiff's claims against the Individual Defendants from the policy claims against the City. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citing Fed. R. Civ. P. 42(b)). This Court explained that, in certain instances, it is easy to predict how a court might rule when faced with a motion to bifurcate. For example, courts typically reject requests for bifurcation when the evidence is overlapping. *Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994)("reasoning that bifurcation was not practical because the same witnesses would have to testify at both parts of a bifurcated trial.")

Conversely, where it is apparent that a non-bifurcated proceeding would result in the admission of evidence that is both prejudicial and inadmissible as to one of the defendants or issues, courts generally bifurcate the proceedings. *See e.g.*, *Huddleston v. Pohlman*, 06-3009, 2007 WL 647335, at *1 (C.D. Ill. Feb. 27, 2007) (bifurcation was warranted because evidence that was admissible for purposes of damages, but not liability, would prejudice the defendant.) *But see Nessel v. Northlake*, No 93 C 6176, 1994 WL 685508, at *1-2 (N.D. Ill. Dec. 5, 1994) (noting that an instruction to the jury explaining the limited applicability of potentially prejudicial evidence typically is sufficient to cure any potential prejudice.)

The instant case, however, lacked any special circumstances that would dictate a result one way or another. The City insisted that bifurcation would further the interests of convenience, expedition and economy, because it was unlikely that a trial on the *Monell* claims would be necessary regardless of whether Plaintiff or the Individual Defendants prevailed. The City argued that, if the Individual Defendants prevailed, Plaintiff could not, as a matter of law, proceed against the City. Similarly, should Plaintiff succeed, a second trial would be unlikely because the City "*most likely* would accept judgment against it without plaintiff having to prove his section 1983 claims."

The Court was not persuaded, and on April 10, 2007, this
Court issued a Report recommending that the City's Motion to
Bifurcate be denied. The Court acknowledged that Plaintiff's
claims against the Individual Defendants are relatively
straightforward and involved only a single incident; typically
these factors counsel in favor of granting the City's Motion.
*Parker v. Banner*, No. 05 C 6378, 2007 Wl 898090, at *1 (March 22,
2007) (where Judge Zagel focused on the fact that the claims
against the officers involved a single, straightforward incident,
and noted that "the commonplace nature of the case — an
allegation of police officer's misconduct— is significant.")
However, the Court found the City's argument regarding efficiency
to be unconvincing in light of the withdrawal of its previous
agreement to stipulate to judgment against it. The Report
explained that:

> The Court agrees that bifurcation would be ideal if a second
> trial would be avoided. However, the Court does not have a
> crystal ball to enable it to see, with certainty, whether
> the Individual Defendants will prevail at trial or whether
> the City would, in fact, consent to a judgment against it in
> the event that Plaintiff prevails. The City's argument
> glosses over the potential downside of bifurcating this
> trial. Should Plaintiff succeed in his claims against the
> Individual Defendants, and the City then refuses to consent
> to a judgment against it (and the City has not made an
> unqualified offer to consent to judgment), the parties and
> the district court will be faced with the onerous task of
> undertaking *Monell* discovery, perhaps the filing of
> dispositive motions, a second final pretrial order,
> including motions in limine, and a new trial upon the
> completion of the trial against the Individual Defendants.
> Certainly the time, effort, and burden in pursuing this
> second trial would far outweigh the inconvenience of

proceeding with only one trial.

*Booker v. City of Chicago, et al.*, No. 04 C 6371 Report and Recommendation, at p. 6 (April 10, 2007). The Court noted that it was a close case, but concluded that the burden associated with a potential second round of discovery, dispositive motions, and trial outweighed the potential benefits of severing the trials. Therefore, the Court recommended denying the City's Motion.

### DISCUSSION

In its renewed Motion to Bifurcate, the City contends that its previous offer to stipulate to judgment in the event that Plaintiff prevails over the Individual Defendants had not been withdrawn. In addition, the City is offering an even broader stipulation: the City will stipulate to judgment against it in the event that Plaintiff demonstrates that his constitutional rights were violated by *any* City employee, not just the named Defendants.

Plaintiff argues that the City's most recent stipulation is as illusory as the initial stipulation analyzed by this Court in the December 15, 2006 Report and Recommendation. And while the present stipulation is broader than the initial stipulation, Plaintiff argues that the City's past conduct demonstrates that the promise is worthless. Plaintiff claims that, in *Evans v. City of Chicago*, et al., Appellate Case No. 06-3401, the City

abandoned its obligations under precisely the same stipulation, by undercutting that plaintiff's ability to show culpability on the part of other City employees, thus preventing that plaintiff from triggering the City's liability under the stipulation.

Initially, the Court disagrees that its previous analysis of the stipulation should control. *See Booker v. City of Chicago*, No. 04 C 6371, Report and Recommendation (Dec. 15, 2006). The City has presented the Court with an entirely different legal question. The City is not again asking the Court to accept a procedurally anomalous stipulation, fraught with uncertainty and potential pitfalls. Instead, the City is attempting to persuade the Court that bifurcation is warranted. The Court's analysis of the unilateral stipulation's potential impact on the case and controversy requirement has only minimal relevance in evaluating the advisability of bifurcation.

Similarly, the parties' he said/she said dispute regarding the stipulation in *Evans v. City of Chicago*, et al., Appellate Case No. 06-3401, has no bearing on this Court's Recommendation. This Court is not privy to the negotiations leading up to the *Evans* stipulation, the district court's reasoning in deciding to enter judgment for the City, or the propriety of that decision. Finally, Judge Hibbler's recent denial of the City's Motion to Bifurcate in *Johnson v. City of Chicago,* 05 C 6545, offers this Court precious little in the way of guidance, as the Minute Order

does not explain why Judge Hibbler denied the Motion or reveal
whether that case was analogous to the situation present here.
*See Johnson v. City of Chicago,* 05 C 6545, Min. Order (May 16,
2007).

The Court is not inviting the parties to illuminate the
matter; binding precedent already makes clear that district
courts have "considerable discretion" in determining whether to
try issues separately or together, pursuant to Rule 42(b) of the
Federal Rules of Civil Procedure. *McLaughlin v. State Farm Mut.
Auto Ins., Co.,* 30 F.3d 861, 870 (7th Cir. 1994). In reviewing
the City's Renewed Motion for Bifurcation, the Court considers
only whether bifurcation would be in furtherance of convenience,
would avoid prejudice, or would be conducive to expedition or
economy. Fed. R. Civ. P. 42(b); *Berry v. Deloney,* 28 F.3d 604,
610 (7th Cir. 1994)(noting that "[o]nly one of these criteria
need be satisfied for a court to order a separate trial." )

Upon review, the Court concludes that the City's present
stipulation tips the scales in favor of recommending bifurcation
in this case. *See, e.g., Treece v. Hochstetler,* 213 F.3d 360,
364–65 (7th Cir. 2000). As the Court discussed in its previous
Report and Recommendation, Plaintiff's claims against Defendants
stem from a single incident and straightforward facts, which
counsels in favor of bifurcation. *Parker v. Banner,* No. 05 C
6378, 2007 WL 898090, at *1 (March 22, 2007). In addition,

"given the nature of the acts alleged by Plaintiff, the Court
cannot foresee how the Individual Officers could assert a
qualified immunity defense, which could otherwise complicate the
Plaintiff's ability to ultimately collect a judgment from the
City." *Booker v. City of Chicago, et al.*, No. 04 C 6371, Report
and Recommendation (April 10, 2007).

Plaintiff claims that the stipulation is still riddled with
loopholes - noting that the City has still retained certain
defenses, its right to alter or amend judgment, to move for
judgment as a matter of law, or to appeal. However, the Court
finds that the City would be remiss in surrendering these rights
and does not find them to be evidence of bad faith.

Finally, although the Court still believes that conducting
discovery and trial on both claims simultaneously would not be
unduly burdensome, the City's stipulation persuades the Court
that the probability that the district court would need to
conduct a second trial on Plaintiff's *Monell* claim is negligible.
Bifurcation is appropriate where it would avoid the needless
costs and burdens of a second trial, as well as conserving the
time and resources of the court, and avoiding the unnecessary
inconveniencing of witnesses. *Treece*, 213 F.3d at 365.

The Court is not unsympathetic to Plaintiff's frustration.
Certainly, complying with Plaintiff's *Monell* discovery requests
in the first instance would have been less burdensome than

achieving bifurcation. Nevertheless, the City was within its rights to pursue this course of action. It is apparent that both parties hoped to achieve more than simply obtaining/avoiding *Monell* discovery in this case; the City claims that Plaintiff was merely seeking to churn fees and gain the upper hand in settlement negotiations, and Plaintiff claims that the City would go to almost any length to hide its dirty "policy and practice" laundry. These concerns, however, are not relevant to the Court's inquiry and do not impact the Court's analysis.

## CONCLUSION

Given the broad discretion conferred upon trial courts in deciding whether to bifurcate, it is unlikely that either a decision to grant or deny the City's Motion would be considered an abuse of that discretion; the circumstances in the instant case simply do not compel either conclusion. *See Medina v. City of Chicago*, 100 F. Supp.2d 893, 895 (N.D. Ill. 2000) (while it may be permissible or even desirable to sever *Monell* claims, bifurcation is not mandated.) This Court is of the opinion that, given the City's proffered stipulation, it is unlikely that the district court would be required to conduct a second trial and that, therefore, bifurcation would be conducive to expedition and economy.

For these reasons, the Court recommends that the district court grant the City's Renewed Motion to Bifurcate the §1983 Claims and to Stay Discovery and Trial on those Claims [#235].

Date:  May 22, 2007

RESPECTFULLY SUBMITTED:

_Arlander Keys_

ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Mark Filip.  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).  Failure to object constitutes a waiver of the right to appeal.  *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

13

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 6371 | **DATE** | September 3, 2007 |
| **CASE TITLE** | Crispus Booker vs. City of Chicago, et al. | | |

DOCKET ENTRY TEXT

For the reasons stated below, the Court adopts Judge Keys's recommendation to bifurcate trial and discovery relating to Plaintiff's *Monell* claims, as no abuse of discretion or clear error has been shown concerning that ruling. (D.E. 249.) The Court finds that Judge Keys's previous report and recommendation on this issue is superceded (D.E. 213), and that the parties' motions and objections regarding this matter are resolved. (D.E. 185, D.E. 193, D.E. 217, D.E. 223, D.E. 235.)

*Mark Filip*

■[ For further details see text below.]                                      Docketing to mail not

## STATEMENT

Crispus Booker (also, "Mr. Booker" or "Plaintiff") has sued various Chicago police officers and the City (also, collectively, "Defendants") under 42 U.S.C. § 1983. (D.E. 1 at 1.) Plaintiff claims that on November 19, 2002, Chicago police Officer George Livergood shot him without provocation and then, with the assistance of other officers, planted evidence on him indicating that Plaintiff had been armed. (D.E. 249 at 1.) Plaintiff also alleges counts against the City pursuant to *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978). (D.E. 249 at 1.) The case is currently before the Court because (1) Plaintiff has objected to Magistrate Judge Keys's Report and Recommendation of May 22, 2007, in which Judge Keys recommended that the district court grant the City's Renewed Motion to Bifurcate the § 1983 *Monell* claims and to stay discovery and trial on the claims (*see, e.g.*, D.E. 253 at 12-13); and (2) Plaintiff has asked the Court to rule on a discovery matter which Magistrate Judge Keys indicated the district court should decide (*see id.* at 5-6). For the reasons explained below, the Court (1) respectfully overrules Plaintiff's objection to Judge Keys's recommendation concerning the Renewed Motion to Bifurcate, and (2) allows, at least subject to the conditions discussed below, Plaintiff's request to allow the "discovery" of certain previously-obtained evidence.

### Background

On February 20, 2004, before discovery commenced in earnest in this case, the City filed a motion asking the Court to "structure" discovery, with issues related to the shooting to be investigated first, to be followed by *Monell* pattern and practice discovery. (D.E. 249 at 2; D.E. 15.) This Court granted Defendants' motion to stay policy-related discovery on Plaintiff's § 1983 claims against the City until after

## STATEMENT

discovery was completed on the underlying claims. (D.E. 249 at 2; D.E. 15.) Eventually Plaintiff moved t lift the policy discovery stay. (D.E. 249 at 2; D.E. 185.) The City also filed its own motion to bar discover and trial of policy issues, offering to stipulate to *Monell* liability if Plaintiff succeeded on his claim that his constitutional rights were violated by the individual defendants. (D.E. 249 at 2; D.E. 193.) In light of this stipulation, the City argued, there would be no need for discovery or a trial on the *Monell* claims. (D.E. 24 at 2.) Judge Keys initially issued a Report and Recommendation denying the City's motion, finding that th proposed stipulation was too vague to moot Plaintiff's *Monell* claims. (D.E. 213 at 4, 17 .) The City made Motion for Reconsideration (D.E. 214), which Judge Keys denied. (D.E. 216.)

   The City did not object to Judge Keys's ruling, instead filing a Motion to Bifurcate Plaintiff's *Mone* claims, and to stay discovery and trial on the claims. (D.E. 249 at 5; D.E. 219; D.E. 222.) The City's moti indicated that the City would likely stipulate to judgment in the event that Plaintiff prevailed over the individual Defendants. (D.E. 249 at 5.) After considering the briefs as well as oral argument, Judge Keys denied Defendants' renewed bifurcation motion, entering another Report and Recommendation on April 10 2007. (D.E. 249 at 7; D.E. 253, Ex. C.) Judge Keys expressed concern that because "the City ha[d] not ma an unqualified offer to consent to judgment," the parties and district court could be "faced with the onerous task of undertaking *Monell* discovery, perhaps the filing of dispositive motions, a second final pretrial orde including motions in limine, and a new trial upon the completion of the trial against the Individual Defendants." (D.E. 249 at 7.) Judge Keys "noted that it was a close case," but concluded that "the burden associated with a potential second round of discovery, dispositive motions, and trial outweighed the potenti benefits of severing the trials." (*Id.* at 8.)

   On April 24, 2007, the City filed a Renewed Motion for Bifurcation. (D.E. 235.) In the motion, the City explained that its previous offer to stipulate to judgment had not been withdrawn, and in addition, the City offered a broader stipulation: the City stated that it would stipulate to judgment against it in the event that Plaintiff demonstrated that his constitutional rights were violated by *any City employee*, not just the named Defendants. (D.E. 249 at 8; D.E. 235 at 1.) Plaintiff argued that the City's stipulation was illusory and that the City's past conduct demonstrated that its promise was worthless. (D.E. 249 at 8.) Plaintiff also argued that the City was simply attempting to relitigate an issue it had already lost. Judge Keys disagreed: noted that the City, by virtue of its broader concession, had presented "an entirely different legal question," and Judge Keys stated that the task was to assess, under the present facts and circumstances of the case, whether bifurcation was sensible. (*Id.* at 9.) Judge Keys granted the City's Renewed Motion, stating that, "given the City's proffered stipulation, it is unlikely that the district court would be required to conduct a second trial and that, therefore, bifurcation would be conductive to expedition and economy." (*Id.* at 12.)

   Plaintiff timely objected to the Report and Recommendation, and he also requested that the Court ru on a discovery matter that Judge Keys had indicated the district court should decide. (*See* D.E. 252; D.E. 2 at 1-2, 5-6.) The discovery matter concerned Plaintiff's ability to use certain documents already in counsels possession relating to the manner in which the City's Office of Professional Standards ("OPS") allegedly investigates police shootings, which Plaintiff claims is relevant to his suit against the individual officers. (*I* at 1, 5-7.) The Court now considers that request and Plaintiff's objections to Magistrate Judge Keys's Repo and Recommendation.

### Analysis

   Before proceeding further, the Court wishes to commend Judge Keys for the patience and thoroughness he has shown in analyzing the discovery and bifurcation issues in the case. The discovery process in this case appears to be quite contentious—perhaps as a consequence of the fact that Plaintiff's

## STATEMENT

counsel routinely file suits against the City, which creates a "repeat-player" dynamic for both sides that promotes aggressive discovery behavior and positions. There is nothing wrong with aggressive advocacy, course, by either side, but it does tend to promote a substantially heightened degree of contentiousness in t discovery process. In reviewing the transcripts and written record in the case, one cannot help but be struc by how patiently, respectfully, and thoughtfully Judge Keys has addressed and analyzed the parties' arguments. Judge Keys obviously has spent a substantial number of hours analyzing the discovery issues presented, and he has done so in his typically thoughtful fashion. While the number of hours he has spent does not dilute the (admittedly deferential) level of review that the Court is directed to apply, the Court would be remiss if it did not recognize the substantial and thoughtful commitment Judge Keys has made to the framing of the discovery process and trial.

Relatedly, the Court respectfully rejects any suggestion (as did Judge Keys) that his initial rulings i this matter before all of the relevant developments had occurred—or any general comments by this Court a earlier stages before the present issues were even squarely framed—should govern the issue presently befo the Court. The issue at hand is whether Judge Keys erred in his recommendation about bifurcation. He wrote a substantial opinion concerning that issue (D.E. 249); and, as he pointed out, the facts and circumstances at issue in that opinion were different than facts and circumstances earlier in the case. (*Id.* a 9.)

## I.    Bifurcation

Because Judge Keys's Recommendation granting the City's Renewed Motion for Bifurcation is not dispositive in the case, Rule 72(a) governs the Court's review of his Report. *See* Fed. R. Civ. P. 72(a). Rul 72(a) states: "The district judge to whom the case is assigned shall consider such objections and shall modi or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *I see also* 28 U.S.C. § 636(b)(1). The clear error standard means that "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997); *Jackson*, 2006 W 2224052 at *4 (citing *Weeks*, 126 F.3d at 943).

Judge Keys granted the City's Renewed Motion to Bifurcate, stating that, "given the City's proffere stipulation [to accept an adverse judgment on the *Monell* claim should Plaintiff succeed on any claim again any city employee], it is unlikely that the district court would be required to conduct a second trial and that, therefore, bifurcation would be conductive to expedition and economy." (D.E. 249 at 12.) In his Objection Plaintiff argues that the issues sought to be bifurcated will arise at the trial of the underlying claim, that any possible prejudice to Defendants can be cured by a jury instruction, that efficiency weighs against bifurcation, and that the City's stipulation does not justify bifurcation. (D.E. 253 at 8-10, 12-13.) Plaintiff also suggests public policy reasons for trying the *Monell* claims along with the claims against the individual officers. (*Id.* at 11-12.) Defendants defend Judge Keys's decision, and echo his view that bifurcating trial and discovery is in the interests of expedition and economy. (D.E. 259 at 6-8.)

Federal Rule of Civil Procedure 42(b) states that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue . . . ." Fed. R. Civ P. 42(b). The Seventh Circuit has held that only one of the criteria listed in Rule 42(b) need be met for bifurcation potentially to be appropriate. *See, e.g., Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000) (citation omitted). The Seventh Circuit also instructs that a district court "'has considerable discretion to order the bifurcation of a trial'" and has stated that it "'will overturn this decision only upon a clear showing

# STATEMENT

of abuse.'" *Id.* at 364–65 (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)).

The Court agrees with Judge Keys that bifurcating the trial and discovery of the *Monell* claims against the City will most likely save both the parties' and the Court's time and resources. (*See* D.E. 249 at 11-13. *Accord, e.g., Treece*, 213 F.3d at 365; *Parker v. Banner*, 479 F. Supp. 2d 827, 832 (N.D. Ill. 2007) (Zagel, J.) To be sure, as Plaintiff notes, there are some cases (albeit seemingly the numerical minority of them) where courts have determined that bifurcation was not sensible on the facts and circumstances presented. *See generally Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000) (Kennelly, J.) (collecting substantial caselaw where bifurcation was effected in the manner Judge Keys has recommended here, but ultimately deciding that trial bifurcation was inappropriate in that case); *see also id.* at 895 (noting that "[b]ifurcation, as a general rule, is likely to bring about an earlier end to the litigation against the individual officers, which . . . is likely to end the litigation altogether. . . . The trial of the claims against the individual officers is also likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims."). If Defendants prevail in the trial against the officers, the Court and parties will almost certainly save a significant amount of time and energy with regard to the *Monell* claims. If Plaintiffs prevail, they will receive judgment against the City by virtue of the City's stipulation, also a significantly faster and less costly route than *Monell* discovery and trial. (D.E. 235; *id.*, Ex. 1.) In this regard, the Court finds *Treece*, a § 1983 case involving both an individual and municipal defendant, instructive. *Id.*, 213 F.3d at 361, 364–65. In *Treece*, the City of Naperville made a stipulation similar to the one here, agreeing to the entry of judgment against it if the jury found against the defendant police officer. *Id.* at 361. The district court (Pallmeyer, J.) bifurcated the trial, and ultimately judgment was granted to the individual officer (and also to the City, by virtue of the stipulation). *Id.* In the plaintiff's appeal of the bifurcation order, the Seventh Circuit held that the stipulation had properly weighed in favor of bifurcation. *Id.* at 365. Specifically, the Seventh Circuit stated that, "especially in light of the fact that the City 'agree[d] to entry of judgment'" against itself if the plaintiff prevailed against the individual officer, "bifurcation avoided the needless costs and burdens of a second trial, as well as, but not limited to, the waste of the valuable time and resources of the court and the inconveniencing of witnesses . . . ." *Id.* In this case, the City's now unequivocal stipulation (*see* D.E. 235; *id.*, Ex. 1) weighs similarly in favor of bifurcation. The City now states that it will agree to the entry of judgment against it if "the finder of fact in this case finds that any City employee violated plaintiff's constitutional rights as alleged in his Complaint." (D.E. 235, Ex. 1 at 2.) While Plaintiff suggests that it is possible that ultimately there will be litigation concerning the stipulation, the balance of probabilities and the circumstances of the case suggest that limited judicial and jury resources are likely to be used more prudently by bifurcating than by not doing so. (Or, to be more precise, when evaluating this question, the answer to which is not pellucid, the Court cannot conclude that Judge Keys's thoughtful assessment of the issue is anything other than reasonable, as opposed to "clearly erroneous" or an "abuse of discretion.")

As Judge Zagel has previously explained, the fact that the claims against the Defendants arise from a single incident, and the straight-forward nature of the allegations about the incident, also favor bifurcation. (*See* D.E. 1 ¶¶ 3-13 (alleging that Defendant Officer Livergood shot Booker twice without justification and that Chicago police planted evidence to charge Mr. Booker with weapons offenses).) Because of the uncomplicated nature of the allegations, the first part of the bifurcated trial need deal only with discrete factual issues, and will likely be relatively short. *See Parker v. Banner*, 479 F. Supp. 2d 827, 828 (N.D. Ill. 2007) (Zagel, J.) (bifurcating discovery and conditionally bifurcating the trial of the *Monell* claim against a municipality and stating that "[t]he commonplace nature of the case–an allegation of police officer's misconduct–is significant"). Another reason the specific allegations here weigh in favor of bifurcation is that they seemingly preclude invocation of a qualified immunity defense. While Defendants have not formally waived the defense, and the Court cannot make any absolutely final ruling on its availability for trial without affording the parties a chance to speak to the issue directly, it is difficult to see how the individual defendant

## STATEMENT

could possibly invoke the defense given that Plaintiff alleges he was intentionally shot in the back without any justification whatsoever. (D.E. 1 ¶¶ 3-13.) *See Parker*, 479 F. Supp. 2d at 833 (granting motion to bifurcate in part because, given the allegations in the complaint, invocation of the qualified immunity defense was a remote possibility). Defendants, of course, contend that Plaintiff is simply lying (and that may or may not be true), but Defendants do not appear to quarrel with the proposition that it is well-settled law that police officers cannot shoot defenseless citizens in the back for no reason.

Before concluding, the Court notes its respectful disagreement with a position that seemingly is suggested, at least at times, in the parties' briefs—namely, that there is a "split" of district court authority concerning this general bifurcation issue. The holdings of cases sometimes "split," or more often are in tension to some degree or another, regarding what often are binary legal questions—*e.g.*, does a statute of limitations in a Congressional enactment apply only to cases filed in court, or does it similarly apply to administrative proceedings initiated by the government? *See BP America Production Co. v. Burton*, 549 U. ___, 127 S. Ct. 638 (U.S. 2006). Or, to take another example, can a State constitutionally execute an individual who was under the age of 18 at the time of their capital crime? *See Roper v. Simmons*, 543 U.S. 551 (2005). However, people do not typically suggest that there is a "split" among the outcomes of cases where the relevant analytical question is subject to the exercise of informed discretion on an "all facts and circumstances considered" basis; to the contrary, precedent acknowledges that varied results may all be within the relatively wide path of the sensible exercise of discretion in such a context. *See, e.g., Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 594 (7th Cir. 2006); *Mousa v. I.N.S.*, 223 F.3d 425, 430-31 (7th Cir. 2000). In this case, Judge Keys has carefully weighed the pro and cons of two possible paths for discovery and the structuring of the trial; the Court has carefully reviewed his analysis, and his analysis identifies sensible considerations and makes reasonable assessments about what course will most pragmatically chart the future of the case. (D.E. 249 at 10-12.) Judge Keys's assessment is consistent with the results reached in many other cases—and it is, not surprisingly, also different than the assessment reached in at least some other cases. That is not evidence of a lack of thought, or any legal error, it is simply an inevitable by-product of the conferral of discretion within a universe of cases with different facts and circumstances.

For all of the reasons stated above, the Court respectfully rejects Plaintiff's objection to Magistrate Keys' recommendation. There was no clear error or abuse of discretion in his analysis.

## II.     OPS Discovery

Judge Keys has not ruled on Plaintiff's request to use certain discovery relating to the manner in which the City's Office of Professional Standards ("OPS") allegedly investigates police shootings; rather Judge Keys has directed this matter to the district court. (*See* D.E. 252; *see also* D.E. 249.) Although the Plaintiff has styled his pleading under consideration as "Objections" to the Magistrate Judge's Order regarding bifurcation (*see* D.E. 253), the parties have also fully briefed this discovery dispute. (*See generally* D.E. 253; D.E. 259; D.E. 261.) The Court therefore finds it appropriate to rule on this issue at this time.

Plaintiff argues that he should be permitted to use discovery obtained in other cases regarding OPS investigations of police shootings, regardless of the fate of the *Monell* claims in this case, because the disputed discovery is allegedly relevant to the underlying claims against the individual Defendants in this case. (D.E. 253 at 5.) In this regard, Plaintiff wishes to use records previously obtained in other cases concerning approximately 200 other shooting investigations (some, and perhaps most, involving different CPD officers and different OPS personnel) to show a purported institutional "pro-police" bias of any OPS investigators, who Plaintiff presumes will testify at trial. (*Id.* at 5-6; D.E. 261 at 2.) Plaintiff states that "Plaintiff's counsel already has all of the discovery documents needed to prove what he feels he needs to

## STATEMENT

prove." (D.E. 253 at 6.) According to Plaintiff, his counsel obtained the records in the course of other litigation against the City. (D.E. 261 at 2.) (This is just one example of how the "repeat-player" dynamic of litigation between Plaintiff's counsel and the City tends to promote contentious and aggressive discovery practice in *all* of their cases, as materials obtained, or not obtained, in one case can be used as leverage in later cases.) The records are under protective orders from the previous casess, so Plaintiff may not use them in this case unless the Court allows Plaintiff to "obtain" such discovery in this case and modifies the prior protective orders accordingly. (*See id.* at 1-3.) Defendants argue that the requested discovery is not relevant or admissible with regard to any of the claims against the individual Defendants, and that Plaintiffs should therefore not be allowed to "obtain" this discovery here. (D.E. 259 at 1, 5.)

Generally speaking, a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* District courts have broad discretion under the federal rules to resolve discovery disputes. *See Jackson v. City of Chicago*, No. 03 C 8289, 2006 WL 2224052, at *3-4 (N. Ill July 31, 2006) (collecting cases).

Keeping in mind the broad contours of discoverability, the Court concludes that Plaintiff should be allowed to "obtain" the OPS records already in his counsels' possession. Because bias is a proper form of impeachment, which may be proven by extrinsic evidence, it would be unfair for the Court to completely foreclose Plaintiff from arguing about the putative admissibility of such evidence at trial.

Nonetheless, the Court notes that it is at least initially skeptical about Plaintiff's prospects of using much of this purported "bias" evidence at trial. The Court notes that a party cannot evade the commonsense directives of Fed. R. Evid. 403 and related teachings simply by incanting the word "bias" and making some attenuated or semi-plausible connection to the case at hand. *See, e.g., Quinn v. Neal*, 998 F.2d 526, 529 (7th Cir. 1993) (collecting cases). To the contrary, even if the context of the ability of a criminal defendant to show putative bias of witnesses testifying against him at a criminal trial—a setting where the criminal defendant can invoke the protections of the Sixth Amendment Confrontation Clause and where the defendant typically has his life or liberty at stake—precedent is clear that a trial court has "wide discretion" in determining the putative admissibility of "bias" evidence as well as the scope of potential "bias" cross-examination at trial. *United States v. Abel*, 469 U.S. 45, 54 (1984). Nonetheless, the Court is not well-positioned now to most fairly adjudicate whether some, all, or none of the putative "bias" evidence is admissible for purposes of trial.

Similarly, the Court believes it sensible to modify the protective orders from the prior cases to avoid slowing this case or needlessly requiring the City to make more copies of the documents. In *Wilk v. American Medical Association*, the Seventh Circuit held that "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Id.*, 635 F.2d 1295, 1299 (7th Cir. 1980) (citations omitted); *accord Griffith v. Univ. Hospital, LLC*, 249 F.3d 658, 661 (7th Cir. 2001) (citing *Wilk*, 635 F.2d at 1299). The Court appreciates that the City believes it is being whip-sawed by Plaintiff's counsel—who previously agreed to protective orders in other cases, in which they agreed such information would only be used in those cases, but now, likely after searching an electronic database into which all City discovery is data-dumped and warehoused, seek to backtrack from prior representations so as potentially to use the discovery in this case. Nonetheless, the Court independently will rule on whether some, all, or none of this previously-obtained evidence will be used in the instant trial, and precedent directs, not surprisingly, that it is more sensible

## STATEMENT

simply to modify the prior protective orders as opposed to having the City replicate the prior discovery.

The Court expresses no opinion on the ultimate admissibility of the records; Defendants are free to challenge the admissibility of any such evidence if this case goes to trial.

### Conclusion

For the reasons stated above, the Court adopts Judge Keys's recommendation to bifurcate discovery and trial related to Plaintiff's *Monell* claims. (D.E. 249.) The Court grants Plaintiff's request to modify prior protective orders so as allow Plaintiff's counsel to "discover" potential bias evidence obtained in prior litigations against the City.

So ordered.

Order Form (01/2005)   Case 1:06-cv-06998   Document 39   Filed 06/01/2007   Page 1 of 2

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | June 1, 200~~5/29/2007~~ |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6998 | **DATE** | |
| **CASE TITLE** | HERNANDEZ *et al.* v. CITY OF CHICAGO *et al.* | | |

**DOCKET ENTRY TEXT**

Defendant City of Chicago's motion to bifurcate plaintiffs' § 1983 claims against the City and to stay discovery and trial on those claims [21] is granted. The discovery and trial schedule [11] stands, but is limited to the claims against individual defendants L. M. Almdale, M. F. Tuman, and J. E. Willner. SEE BELOW FOR DETAILS.

*Suzanne B. Conl*

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

    Juan Hernandez and Shaye Hall sue the City of Chicago and Chicago police officers L. M. Almdale, M. F. Tuman, and J. E. Willner alleging constitutional and state law violations in connection with their arrests. Plaintiffs allege the officers violated their constitutional rights by subjecting Hernandez to excessive force, arresting Hall without probable cause, and failing to intervene to prevent violation of their rights. Am. Compl., Counts I, V, and VI, ¶¶ 21-23, 34-36, 37-39. They allege the officers' misconduct was undertaken pursuant to Chicago Police Department policy and practice. *Id.* at Count III, ¶ 28; *see Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). They also assert state law battery, malicious prosecution and false arrest claims against the officers. *Id.* at Counts II, IV, VII, and VIII, ¶¶ 24-27, 29-33, 40-42, 43-47. Plaintiffs seek compensatory damages, punitive damages against Almdale, Tuman and Willner, costs, and attorney's fees. The City moves to bifurcate the *Monell* claims, and stay discovery and trial on those claims.

    **Background.** On March 25, 2006, Hall reported to the Chicago Police Department that Hernandez was in possession of her cellular telephone. Am. Compl. at ¶ 5. Officers Almdale, Tuman and Willner responded, and arrested Hernandez. *Id.* at ¶ 6. Although Hernandez did not resist, he was detained and beaten. *Id.* at ¶¶ 6, 8. The officers also arrested Hall for reckless conduct in reporting her phone stolen. *Id.* at ¶¶ 7, 9.

    **Legal Standard.** A court has discretion to order a separate trial of any claim when separation would further convenience or avoid prejudice, or when separate trials would be conducive to expedition and economy, so long as separation does not violate the Seventh Amendment. FED. R. CIV. P. 42(b); *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000). Only one of these criteria needs to be satisfied for the court to order a separate

| | Courtroom Deputy Initials: | AM |
|---|---|---|

## STATEMENT

trial. *Id.* at 365.

**Discussion.** Bifurcation furthers convenience. Discovery on the *Monell* claims is likely to be extensive and time consuming, and may not be necessary should plaintiffs fail to establish a constitutional violation by the individual police officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*Monell* does not authorize the award of damages against a municipality based on the actions of an officer when a jury finds the officer inflicted no constitutional harm). The City argues it will be required to produce thousands of documents and numerous witnesses. Def. Mot. at ¶ 5. Plaintiffs argue the City has previously compiled and produced discovery on *Monell* claims, therefore the information is readily available. Pl. Resp. at 3. However, even if documents are readily available, assembling and reproducing them would be costly and time consuming. *Monell* discovery might be avoided by bifurcation because a second trial may not take place. If the officers are found not liable for the underlying constitutional violation, plaintiffs cannot prevail on their *Monell* claims, and no second trial would be warranted. *Treece*, 213 F.3d at 364.

If plaintiffs prevail on their claims against the officers and are awarded damages, they may not wish to proceed to trial on their *Monell* claims. The City stipulated to entry of a judgment against it for compensatory damages based on constitutional violations. Dkt. No. 30 (May 16, 2007) ("the City agrees to entry of judgment against the City for compensatory damages if and only if the finder of fact in this case finds that any City employee violated plaintiffs' constitutional rights as alleged in their Amended Complaint"). Plaintiffs cannot obtain additional compensatory damages from the City. *Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). They would have no financial incentive to go to trial on their *Monell* claims (although they could be awarded attorneys' fees). Plaintiffs argue their *Monell* claims serve an important function in deterring future misconduct and encouraging reform. However, the *Monell* claims would have little practical significance because plaintiffs could collect their judgment from the City without establishing *Monell* liability. *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988).

Bifurcation of the *Monell* claims avoids the risk of prejudice to the individual officers. Plaintiffs' case against the officers concerns a single incident. Admission of evidence regarding past incidents of excessive force, abuse of authority, and falsification of police reports is not relevant to the individual officers' liability, and could be unduly prejudicial.

The facts of this case make it amenable to bifurcation. Plaintiffs' arrests and the ensuing investigation constitute a discreet series of events. Any fact discovery regarding the individual officers' liability in connection with the incident may proceed, but discovery exclusively relevant to the *Monell* claims is stayed.

*Suzanne B. Conlon*

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 06 C 6772 | DATE | 5/17/2007 |
| CASE TITLE | Hill vs. City of Chicago, et al | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part Defendants' Oral Request to Bifurcate Plaintiffs' Monell Claims.

■[ For further details see text below.]                                    Notices mailed by Judicial staff.

### STATEMENT

Plaintiffs Harold Hill and L.C. Young, as Special Administrator of the Estate of Dan Young, Jr., deceased, seek redress under 42 U.S.C. §§1983 and 1985 for alleged violations of their constitutional rights stemming from Hill's and Dan Young's wrongful convictions. Hill and Young[1] bring constitutional claims against individual police officers and a Cook County Assistant State's Attorney, as well as against the City of Chicago based on alleged unconstitutional polices, practices or customs. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Before the Court is the City's request to bifurcate Plaintiffs' *Monell* claim from the claims against the individual Defendants. *See* Fed.R.Civ.P. 42(b). For the reasons stated below, the Court, in its discretion, stays all "purely *Monell*" fact and expert discovery through the resolution of any summary judgment motions on the individual Defendants' liability. At that time, the Court will consider bifurcating Plaintiffs' *Monell* claims from their other claims for trial.

### BACKGROUND

In the early 1990s, Chicago police officers arrested Young and Hill for the rape and murder of Kathy Morgan. (R. 50-1, Hill's Amend. Compl. ¶¶ 1, 10; R. 56-3, Young's Compl. ¶¶ 1, 12.) Over a decade after they were convicted and imprisoned for Morgan's murder, DNA evidence exonerated Young and Hill. (Amend. Compl. ¶ 2; Compl. ¶ 2.) Having conclusively established their innocence, their wrongful convictions were vacated in January 2005 by agreement with the Cook County State's Attorneys' Office. (Amend. Compl. ¶ 2; Compl. ¶ 2.) Plaintiffs allege that the wrongful convictions were a direct result of police misconduct, including false confessions secured by means of improper coercion during police interrogations. (Amend. Compl. ¶ 3; Compl. ¶ 5.) Plaintiffs bring this action against the City of Chicago and present and former Chicago police officers in the Violent Crimes Division at Area 3, as well as a Cook County Assistant State's Attorney. (Amend. Compl. ¶ 52; Compl. ¶ 76.)

## STATEMENT

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides federal district courts with broad discretion to tailor the sequence of discovery, especially when a plaintiff files a complaint against public officials. Fed.R.Civ.P. 26; *Crawford-El v. Britton*, 523 U.S. 574, 597-98, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "Whether to bifurcate claims at trial is a matter within this Court's sound discretion." *Fairley v. Andrews*, 423 F.Supp.2d 800, 812 (N.D. Ill. 2006) (citing *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000)).

Under 42 U.S.C. § 1983, a government agency or municipality cannot be liable under the theory of respondeat superior. *Monell*, 436 U.S. at 691 ("municipality cannot be held liable *solely* because it employs a tortfeasor") (emphasis in original). In other words, "units of local government are responsible only for their policies rather than misconduct by their workers." *Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007). Instead, to establish the City's liability, Plaintiffs must prove the existence of an unconstitutional policy, practice, or custom that proximately caused their constitutional injuries. *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005). Further, if Plaintiffs fail to establish that the individual Defendants violated their constitutional rights, they cannot bring an action against the City under *Monell* based on an alleged unconstitutional police, practice, or custom. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original).

## ANALYSIS

Plaintiffs allege that the City is responsible for their constitutional injuries based on two separate customs, policies, or practices. First, they contend that the City is responsible for their constitutional injuries by tolerating an atmosphere in which the individual police officers coerced confessions and committed other abuses. Plaintiffs allege a second, independent policy or custom derived from the City's "Street Files" practice. Based on these two alleged policies, Plaintiffs' *Monell* allegations raise various issues beyond the constitutional claims against the individual Defendants.

By bifurcating discovery, the Court will eliminate the need to exhaustively pursue these two separate *Monell* claims, which will provide benefits throughout the discovery phase of this case. *See Grant v. City of Chicago*, No. 04 C 2602, 2006 WL 328265, at *1 (N.D. Ill. Feb. 10, 2006) (listing cases). More specifically, because a finding of the individual Defendants' liability is a prerequisite to establishing a *Monell* claim, a stay of discovery on "purely *Monell*" issues through the resolution of any summary judgment motions on the individual Defendants' liability will serve the interests of efficiency for both the Court and the parties. *See Parker v. Banner*, ___ F.3d ___, No. 05 C 6378, 2007 WL 898090, at *6 (*Monell* "discovery may inflict needless, wasteful expense of time and money upon the parties and the court."). Meanwhile, the Court is confident in counsel's ability to differentiate between "*Monell*" discovery and discovery directed at the claims against the individual Defendants. While some blurring may occur at the outer boundaries — and Defendants are advised to give Plaintiffs leeway in investigating those areas — it generally is not difficult to discern whether discovery is directed at violations committed against Plaintiffs by the named police officers and Assistant State's Attorney, as opposed to the City's broader policies and practices.

The Court thus stays *Monell* discovery until after completion of discovery and summary judgment on the underlying substantive claims against the individual Defendants. The Court's ruling does not indicate that Plaintiffs are not entitled to *Monell* discovery. Also, the Court puts the parties on notice that once the Court orders *Monell* discovery, the Court will not be receptive to any delays:

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 07 C 204 | DATE | 4/18/2007 |
| CASE TITLE | BAILEY vs. CITY OF CHICAGO | | |

**DOCKET ENTRY TEXT**

Defendant City of Chicago's motion to bifurcate plaintiff's § 1983 claims against the City and to stay discovery and trial on those claims [27] is granted. The discovery and trial schedule [19] stands, but is limited to the claims against individual defendants Michael Alesia and Melissa Uldrych, and to the state law claims against the City of Chicago. SEE BELOW FOR DETAILS.

*Suzanne B. Conlon*

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

Nikita Bailey, administrator for the estate of Michael Dunbar, sues the City of Chicago and Chicago police officers Michael Alesia and Melissa Uldrych alleging constitutional and state law violations in connection with Dunbar's shooting death. Bailey alleges the officers violated Dunbar's constitutional rights by subjecting him to unreasonable and excessive force and by failing to intervene to prevent the violation of his rights. Am. Compl., Counts I and II, ¶¶ 47-49, 59-61. Bailey alleges the officers' misconduct was undertaken pursuant to Chicago Police Department policy and practice. *Id.* at Counts I and II, ¶¶ 50-56, 62; *see Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). She also asserts state law wrongful death and survival claims against the officers, and *respondeat superior* and indemnification claims against the City. Bailey seeks compensatory damages, punitive damages against Alesia and Uldrych, and attorneys' fees. The City moves to bifurcate the *Monell* claims, and stay discovery and trial on those claims.

**Background.** On May 3, 2006, Dunbar and a passenger were sitting in a parked automobile. Am. Compl. at ¶ 6. Officers Alesia and Uldrych approached. *Id.* at ¶ 7. Dunbar attempted to drive away, and at least one officer fired at the moving automobile. *Id.* at ¶ 8. A bullet struck and killed Dunbar. *Id.* The City investigated, and within forty-eight hours, issued a press release announcing that the shooting was justified. *Id.* at ¶ 12. Bailey contends the investigation of Dunbar's shooting, like other such investigations, was a sham. *Id.* at ¶¶ 12, 26-41. She alleges the City maintains a policy and practice of failing to adequately train, supervise, discipline and control its officers. *Id.* at ¶ 13. Bailey alleges the City's flawed policy led to Dunbar's shooting because it tends to excuse police shootings, regardless of fault. *Id.* at ¶¶ 13, 25, 44-47.

**Legal Standard.** A court has discretion to order a separate trial of any claim when separation would further convenience or avoid prejudice, or when separate trials would be conducive to expedition and economy,

Courtroom Deputy Initials:

| | AM |
|---|---|

07 C 204 BAILEY vs. CITY OF CHICAGO

Page 1 of 2

## STATEMENT

so long as separation does not violate the Seventh Amendment. Fed. R. Civ. P. 42(b); *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000). Only one of these criteria needs to be satisfied for the court to order a separate trial. *Id.* at 365.

Discussion. Bifurcation furthers convenience. Discovery on the *Monell* claims is likely to be extensive and time consuming, and may not be necessary should Bailey fail to establish a constitutional violation by the individual police officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*Monell* does not authorize the award of damages against a municipality based on the actions of an officer when a jury finds the officer inflicted no constitutional harm). The City argues it will be required to produce thousands of documents and numerous witnesses. Def. Mot. at 2-3. Bailey claims the discovery burden will be modest, requiring only "a half-dozen extra depositions and several boxes of documents." Pl. Resp. at 8. Bailey's estimate appears unrealistic considering her requests for production and interrogatories. *See, e.g.,* Def. Mot. at Ex. C, Request for Production No. 36, "All documents relating to any discharge of a weapon by any Chicago Police Officer for the five years preceding May 3, 2006, including all Complaint Register files and U-files."

Bifurcation of the *Monell* claims avoids the risk of prejudice to the individual officers. Bailey's case against the officers concerns a single incident, Dunbar's shooting. Admission of evidence regarding other incidents involving police shootings or excessive force is not relevant to the individual officers' liability, and could be unduly prejudicial.

Bailey argues bifurcation is neither expeditious nor economical because it will lead to duplicate trials. However, a second trial may not take place. If the officers are found not liable for the underlying constitutional violation, Bailey cannot prevail on her *Monell* claims, and no second trial would be warranted. *Treece*, 213 F.3d at 364. Bailey argues that if the officers prevail based on qualified immunity, she may still succeed in proving her *Monell* claims. *Owen v. City of Independence*, 445 U.S. 622 (1980) (a municipality may not assert qualified immunity of its officers as a defense to liability under § 1983). This argument is speculative, and unpersuasive in light of the other factors supporting bifurcation.

If Bailey prevails on her claims against the officers and is awarded damages, she may not wish to proceed to trial on the *Monell* claims. Bailey cannot obtain additional compensatory damages from the City. *Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). The City acknowledges that it is obligated to pay a judgment against the officers. Def. Mot. at 4; 745 ILCS § 10/9-102. The City asserts that it would accept judgment rather than defend itself in a second trial. Def. Reply at 5. Bailey would have no financial incentive to go to trial on the *Monell* claims (although she could be awarded attorneys' fees). She seeks no other remedy. Her *Monell* claims would have little practical significance because she could collect her judgment from the City without establishing *Monell* liability. *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988).

Bailey argues that there is no meaningful distinction between discovery for the *Monell* claims and the remaining claims, and bifurcation will lead to needless discovery disputes. This argument is unpersuasive because the facts of the case make it amenable to bifurcation. Dunbar's shooting and the ensuing investigation constitute a discreet series of events. Any fact discovery regarding the individual officers' liability in connection with the shooting may proceed, but discovery exclusively relevant to the *Monell* claims is stayed.

*Suzanne B. Conlon*

07 C 204 BAILEY vs. CITY OF CHICAGO

Page 2 of 2

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 5382 | **DATE** | 4/2/2007 |
| **CASE TITLE** | | Ferrell, et al vs. Soto, et al | |

**DOCKET ENTRY TEXT**

Defendant's Joint Motion to Structure Discovery and for the City to Join the Individual Defendants' Motion to Dismiss [28] is granted in part and denied in part as moot.

■[ For further details see text below.]

Notices mailed by Judicial staff.

### STATEMENT

Plaintiffs Mark Ferrell and Cynthia Johnson-Ferrell filed a multi-count Complaint against Defendant Chicago Police Officers William Soto and John A. Keene, as well as the City of Chicago, alleging violations of their constitutional rights, including *Monell* claims against the City. *See* 42 U.S.C. § 1983. Before the Court is Defendants' Joint Motion to Structure Discovery, namely, to stay discovery on Plaintiffs' *Monell* claims until the parties complete discovery on Plaintiffs' underlying substantive claims and through the resolution of any summary judgment motions on the individual officers' liability. The Court grants Defendants' motion.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides federal district courts with broad discretion to tailor the sequence of discovery, especially when a plaintiff files a complaint against public officials. Fed.R.Civ.P. 26; *Crawford-El v. Britton*, 523 U.S. 574, 597-98, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

Under Section 1983, a municipality cannot be liable under the theory of respondeat superior. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d at 1006, 1029 (7th Cir. 2006). As such, to establish a constitutional claim against the City, Plaintiffs must show that (1) they suffered a deprivation of a federal right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, which (3) proximately caused their constitutional injuries. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006). Moreover, it is the well-established law of this Circuit that a municipality's liability for a constitutional injury is predicated on a finding that the individual officers are liable for the underlying substantive claims. *See Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed 2d 806 (1986)

06C5382 Ferrell, et al vs. Soto, et al

## STATEMENT

("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original).

## ANALYSIS

Because a finding of the individual officers' liability is a prerequisite to establishing a *Monell* claim, a stay of discovery on "purely *Monell*" issues through the resolution of any summary judgment motions on liability of the individual defendants will serve the interests of efficiency. Plaintiffs' *Monell* allegations raise a host of "policy and practice" issues beyond those presented against the individual defendant officers. Eliminating the need to exhaustively pursue these issues will provide benefits throughout the discovery phase of this case.

The Court thus stays *Monell* discovery until completion of discovery and summary judgment on the underlying substantive claims against the individual officers. The Court's ruling does not indicate that Plaintiffs are not entitled to *Monell* discovery. Also, the Court puts the parties on notice that once the Court orders *Monell* discovery, the Court will not be receptive to any delays. Finally, the Court denies the City's request to join the individual defendants' motion to dismiss as moot because the Court has already issued its order on this motion. (*See* R. 33-1.)

06C5382 Ferrell, et al vs. Soto, et al

Page 2 of 2

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Maria Valdez | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 3173 | **DATE** | 12/22/2006 |
| **CASE TITLE** | Paine vs. City of Chicago, et al | | |

**DOCKET ENTRY TEXT**

The Section 1983 claim against the City of Chicago is ordered bifurcated from the constitutional claims against the unnamed individual officers and the state law claims pursuant to Federal Rule of Civil Procedure 42(b). Both discovery and trial on the *Monell* claims are stayed. Any fact discovery regarding the individual officers' liability may proceed, but discovery that is exclusively relevant to the *Monell* claims is stayed. The City's "Motion to Bar Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City" [95] is GRANTED, in part, and DENIED, in part. The City may renew its motion following resolution of the claims against the individual unnamed officers.

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

## STATEMENT

This matter comes before the Court pursuant to a referral by the district court. Plaintiff Kathleen Paine, mother and guardian of the estate of Christina Rose Eilman, brings this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") and Illinois common law against the City of Chicago (the "City") and unnamed individual police officers involved in the arrest, detainment, and release of her daughter. Plaintiff's three-count complaint alleges the following claims: Count I—Section 1983 claim against unnamed individual police officers for deliberate indifference to medical needs; Count II—Section 1983 claim against the City under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978); and Count III—Supplemental state law claim for willful and wanton conduct against the City and the unnamed individual officers. The City has filed a "Motion to Bar Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City." For the reasons set forth below, the City's "Motion to Bar Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City" [Doc. No. 95] is GRANTED, in part, and DENIED in part. The City may renew its motion following resolution of the claims against the individual unnamed officers.

In order to succeed on her *Monell* claim against the City, the plaintiff must prove: (1) a violation of her constitutional rights; (2) an injury; and (3) that the injury and violation of her constitutional rights were directly caused by the City's own action or inaction that carried the requisite degree of fault. *Kunz v. City of Chicago*, 01 C 1753, 2003 WL 21960360, at *1 (N.D.Ill. Aug. 13, 2003) (citing *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997)). In this case, the City has agreed to waive "Plaintiff's need to prove her *Monell* claims and accepts an entry of judgment against the City for compensatory damages if Plaintiff can prove her constitutional rights were violated by defendant officers." (Def.'s Reply at 1; See City's Stipulation at ¶ 5, attached to City's Motion as Ex. A.)

06C3173 Paine vs. City of Chicago, et al

## STATEMENT

As a result of the City's waiver, if the finder of fact finds element one, Plaintiff will prevail in her *Monell* claim against the City. In determining whether Plaintiff's constitutional rights were violated, if the finder of fact concludes the individual unnamed officers violated the Plaintiff's constitutional rights, "the City will be obligated to pay." *Kunz*, 2003 WL 21960360, at *1. Conversely, if the finder of fact concludes the individual unnamed officers did not violate the Plaintiff's constitutional rights, the Plaintiff will not be able to recover from the City because the U.S. Supreme Court has held that no case law "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional injury." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

The City argues that without its stipulation, proof of Plaintiff's *Monell* claim "would require additional extensive and expensive discovery, and the Court and jurors would have to endure lengthy, complex, and multifacted testimony and evidence about the City's polices." (Def.'s Motion at 4-5.) And, the Plaintiff has consistently requested a swift resolution of her claims. In light of this and in the interests of judicial economy, the Court will order bifurcation of the *Monell* claim against the City under Federal Rule of Civil Procedure 42(b). In bifurcating the *Monell* claim, the court stays discovery and postpones trial on the *Monell* claims until after the resolution of the Section 1983 claims against the unnamed individual officers and the state law claims. District courts have broad discretion in ordering the bifurcation of a plaintiff's claims, as part of their inherent power to control their dockets. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Federal Rule of Civil Procedure 42(b) allows district courts to separate the trial of any issue, if separation is warranted "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," so long as the separation does not violate the Seventh Amendment. Fed.R.Civ.P. 42(b). Further, bifurcation of Section 1983 claims from *Monell* claims has been affirmed in order to avoid unnecessary expenses. *See Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000).

Accordingly, the Section 1983 claim against the City of Chicago is ordered bifurcated from the constitutional claims against the unnamed individual officers and the state law claims pursuant to Federal Rule of Civil Procedure 42(b). Both discovery and trial on the *Monell* claims are stayed. Any fact discovery regarding the individual officers' liability may proceed, but discovery that is exclusively relevant to the *Monell* claims is stayed. The City's "Motion to Bar Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City" [Doc. No. 95] is GRANTED, in part, and DENIED, in part. The City may renew its motion following resolution of the claims against the individual unnamed officers.

06C3173 Paine vs. City of Chicago, et al

Page 2 of 2

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 05 C 6745 | DATE | 11/20/2006 |
| CASE TITLE | Coffie vs. City of Chicago, et al. | | |

DOCKET ENTRY TEXT

The § 1983 claims against the defendant City of Chicago are ordered bifurcated pursuant to Federal Rule of
Civil Procedure 42(b). Both discovery and trial on those claims are stayed. The defendant City of
Chicago's "Motion to Bar Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City" (Dkt.
No. 100) is dismissed as moot. The City of Chicago may renew its motion following resolution of the claims
against the individual officers and state claims against the City of Chicago. All set dates for dispositive
motions and trial are limited to the individual claims against the defendant officers and the state claims
against the City of Chicago.

■[ For further details see text below.]

Notices mailed.

## STATEMENT

Plaintiff Coprez Coffie ("Coffie") filed a first amended complaint against defendants City of Chicago
("the City"), and individual officers Scott Korhonen ("Korhonen"), and Gerald Lodwich ("Lodwich"),
alleging constitutional violations pursuant to 42 U.S.C. § 1983. The City has filed a "Motion to Bar
Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City." (Dkt. No. 100.) For the reasons
stated below, the court sua sponte bifurcates the § 1983 claims against the City from those claims against the
defendant officers, and, as a result, the City's motion is moot.

In his first amended complaint, Coffie alleges that the individual officers used excessive force against
him, unconstitutionally searched him, and violated his substantive due process rights. Furthermore, one of
the individual officers allegedly failed to intervene to prevent the claimed violation of Coffie's constitutional
rights. Against the City, Coffie brings claims under *Monell v. Dep't of Soc. Servs. of the City of New York*,
436 U.S. 658 (1978), alleging that the City's customs, policies, and practices caused these alleged
constitutional violations (hereinafter "*Monell* claims"). Coffie also asserts state claims of respondeat
superior and indemnification against the City.

The City, in its motion to bar discovery and trial of the *Monell* claims, offers a unilateral
"stipulation," which "waives Plaintiff's need to prove various Monell elements and agrees to entry of
judgment against it for compensatory damages" if Coffie can establish that the named individual officers
violated his constitutional rights. (Def. Mot. at 1.) The City, however, in its unilateral stipulation
specifically decries liability under *Monell* even as it agrees to an entry of judgment. With this stipulation, the
City claims to seek to "eliminate the significant costs and burdens" associated with the discovery and
litigation of the *Monell* claims. Coffie objects to the City's stipulation, asserting among other arguments that
the stipulation is illusory and undermines the public policy of deterrence of § 1983 claims against

05C6745 Coffie vs. City of Chicago, et al.

EXHIBIT

A

## STATEMENT

municipalities, *see Owen v. City of Independence*, 445 U.S. 622, 651 (1980).

In the interests of judicial efficacy, rather than address the arguments raised by both parties at this point, the court sua sponte has decided at this time to exercise its authority under Federal Rule of Civil Procedure 42(b) to bifurcate the *Monell* claims against the City from the constitutional claims against the individual officers and the state claims against the City. In bifurcating the *Monell* claims, the court stays discovery and postpones trial on the *Monell* claims until after the resolution of the claims against the individual officers and the state claims against the City. District courts have broad discretion in ordering the bifurcation of a plaintiff's claims, as part of their inherent power to control their dockets. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Federal Rule of Civil Procedure 42(b) allows districts courts to separate the trial of any issue, if separation is warranted "in furtherance of convenience or to avoid prejudice, or when separate trials will be conductive to expedition and economy," so long as the separation does not violate the Seventh Amendment. Fed. R. Civ. P. 42(b).

In this case, bifurcation of the *Monell* claims best serves the interests identified in Rule 42(b) of avoidance of prejudice, convenience, expedition, and economy. Such action by the court allows the City to avoid potentially unnecessary discovery and litigation costs should Coffie fail to establish a constitutional violation and thus as a matter of law be unable to prove any *Monell* violation, *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The City has represented in its reply brief that defending against the *Monell* claims will require the City to "produce potentially thousands of more documents" in addition to other significant costs in judicial and litigant resources. (Def. Reply at 6.) While the cost of discovery and litigation in and of itself may not be a sufficient reason to bifurcate claims, the court strongly weighs this consideration when coupled with the possibility that such expense may not ultimately need to be expended and that the litigation may be expedited. In addition, Coffie's allegations involve a single incident, so bifurcation of the *Monell* claims from the claims against the individual officers will protect the individual officers from the possible prejudice of introducing at trial broader evidence regarding the City's customs, policies, and practices for addressing officer misconduct. Bifurcating the *Monell* claims instead of barring them at this stage in the litigation balances the interests of the defendants to reduce potentially unnecessary litigation costs with the interests of the plaintiff not to foreclose unnecessarily the opportunity to establish the City's liability on the *Monell* claims.

Based on the court's decision to bifurcate and thus stay discovery and trial on the *Monell* claims, the court provides guidance on the allowable discovery. Any fact discovery regarding the individual officers' liability may proceed, but discovery that is exclusively relevant to the *Monell* claims is stayed.

Accordingly, the § 1983 claims against the defendant City of Chicago are ordered bifurcated pursuant to Federal Rule of Civil Procedure 42(b). Both discovery and trial on those claims are stayed. The defendant City of Chicago's "Motion to Bar Discovery and Trial of 'Policy' Issues on § 1983 Claims Against the City" (Dkt. No. 100) is dismissed as moot. The City of Chicago may renew its motion following resolution of the claims against the individual officers and state claims against the City of Chicago. All set dates for dispositive motions and trial are limited to the individual claims against the defendant officers and the state claims against the City of Chicago.

05C6745 Coffie vs. City of Chicago, et al.

Page 2 of 2

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4433 | **DATE** | 4/11/2006 |
| **CASE TITLE** | Patterson vs. Burge, et al. | | |

The City of Chicago's motion to reconsider [299] is granted in part and denied in part. The court bifurcate plaintiff's claims against the individual defendants from plaintiff's *Monell* claims. At a later time, the cour will revisit plaintiff's *Monell* claims to determine if discovery and another trial are warranted in light of the City of Chicago's stipulation/waiver, which admits its liability if any of the individual defendants are foun liable for a constitutional deprivation.

■ [ For further details see text below.]

Docketing to mail not

## STATEMENT

Before the court is the City of Chicago's ("the City's") motion to reconsider this court's August 2, 2005 order. In that order, the court denied the City's motion to bar discovery and trial on plaintiff's *Monell* claims. The City had moved to bar discovery and trial on plaintiff's *Monell* claims based on what it called "stipulation." To succeed on a *Monell* claim, plaintiff must prove: (1) that unconstitutional conduct was perpetrated by a municipal employee, *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1998); (2) that the unconstitutional conduct was the result of a municipal policy, *Pembaur v. Cincinnati*, 475 U.S. 469, 479-8( (1986); and (3) that there is a causal link between the unconstitutional action and the plaintiff's injury. *Mon v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Although the City's "stipulation" is n a stipulation in the traditional sense (it does not admit facts or liability), the City has offered to waive proof of the last two of the elements necessary for its liability under *Monell*. That is, if one of the individual defendants is found liable at trial for a constitutional tort against the plaintiff, the City will consent to its *Monell* liability without the plaintiff having to prove the existence of a policy or the existence of a causal li between the unconstitutional action and the plaintiff's injury.

In the court's August 2, 2005 order, the court recognized that it had discretion to order the sequencing of discovery or the bifurcation of plaintiff's claims. The court, however, chose not to do either because the impact of the City's stipulation on discovery and trial of the individual claims was unclear. Order at 3. The court also expressed concern that, since plaintiff had sued several high level municipal officials such as Richard Devine, drawing lines necessary for discovery as to the individual claims and the *Monell* claims for thes officials might be difficult. *Id.* Thus, the court held that granting the City's motion would only result in difficulty and confusion. *Id.* at 7.

After reviewing the City's motion to reconsider, the court has determined that bifurcating the claims against the individual defendants from the *Monell* claims will be more efficient than proceeding on these claims simultaneously. *See Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). During discovery, plaintiff identified numerous witnesses as being witnesses solely on the issue of *Monell* liability. Motion to

## STATEMENT

Reconsider, Exhibit A. Because the City is not seeking to bar discovery under Fed. R. Evid. 404(b), plain will still be able to present witnesses whose testimony would be admissible to show prior bad acts of the individual defendants. Thus, it is unlikely that excluding *Monell* evidence from a trial of the individual defendants would impair the court's ability to get at the truth of plaintiff's claims. Indeed, the City has informed the court that Superintendent Cline's deposition was taken in *Hobley v. Burge* and that *Monell* issues were excluded from his deposition since a similar motion to bar *Monell* discovery was pending in th case.

Additionally, bifurcating the claims will eliminate the need (at least in the near term) to conduct expert discovery on the issue of whether a municipal policy existed. Although some of this discovery has already occurred (the City attached plaintiff's expert report as an exhibit to its Motion to Supplement its Motion to Reconsider), the City has indicated that plaintiff's expert report will necessitate additional discovery and expert reports on its part.

Because the City's motion for reconsideration has provided the court with a clearer picture of the discovery in this case, the court bifurcates plaintiff's claims against the individual defendants from the *Monell* claims. The court notes, however, that it need not determine at this stage whether discovery and a trial on the *Monell* claims should be barred. In light of the City's "stipulation," it may well be that discove and a trial on those claims will be unnecessary. The final word on that issue is best left to a later time, such as the pretrial conference on plaintiff's claims against the individual defendants, when discovery is comple and the evidence to be presented at trial is clear.