IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEWARD JOHNSON and ARTHUR BRIGHT,<br><br>    Plaintiffs,<br><br>    v.<br><br>C.S. JOHNSON (STAR # 16589), C.M. BADY (STAR # 11453), TERRY HILLARD, LORI LIGHTFOOT, PHILIP CLINE, TISA MORRIS, MAYOR RICHARD DALEY, and the CITY OF CHICAGO,<br><br>    Defendants. | No. 07 C 7036<br><br>JUDGE GUZMAN<br><br>MAGISTRATE JUDGE SOAT BROWN |

## RESPONSE TO DEFENDANTS JOHNSON, BADY AND CITY OF CHICAGO'S MOTION TO DISMISS

NOW COME the Plaintiffs, by and through HORWITZ, RICHARDSON & BAKER LLC, and hereby submit their Response to the Defendants' Motion to Dismiss:

### INTRODUCTION

The instant action is a police misconduct case arising from a June 21, 2007 incident in which Plaintiffs allege, *inter alia,* false arrest, malicious prosecution, deliberate indifference to medical needs, and a *Monell* claim. Plaintiffs filed suit under 42 U.S.C. § 1983 against the City of Chicago, the Defendant Officers, and the above named supervisory officials.

On June 21, 2007, Plaintiff Bright was doing construction work on a home in the 8400 Block of S. Exchange, Chicago, Illinois and forgot his keys inside. Plaintiff Bright then crawled through the window of the home to retrieve his keys and promptly returned to his vehicle. At that time Plaintiffs were approached by police officers who demanded that Plaintiff Johnson give them information regarding people with drugs or they were going to seize his vehicle and take him to jail. Plaintiff Johnson thought the police were joking until he saw a police wagon pull up and

1

realized that these officers were indeed going to arrest him and Plaintiff Bright, despite the fact that they had done nothing wrong and that Plaintiff Bright was authorized to enter the residence. Both Plaintiffs were subsequently arrested and Plaintiff Johnson was charged with possession of a controlled substance. The police followed through on their threat, and seized Plaintiff Johnson's vehicle. Additionally, while Plaintiff Johnson was being unlawfully detained, he was denied access to necessary prescribed medications.

On February 25, 2008, the Supervisory Defendants, Mayor Richard Daley, and Officers Johnson and Bady together with the City of Chicago, each brought Motions to Dismiss. Plaintiffs state that, for the reasons set forth below, Defendants Johnson's and Bady's together with the City of Chicago's Motion to Dismiss[1] should be denied.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must accept all well-pleaded allegations in the Plaintiffs complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). A complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All that need be specified are the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). "Plaintiffs in a § 1983 case against a municipality are required to comply only with the conventional standards of notice pleading; they are not required to meet any heightened pleading standard." *Sledd v. Lindsay*, 102

---

[1] Plaintiffs are withdrawing their claims against Terry Hillard, Lori Lightfoot, Phillip Cline, Tisa Morris, and Mayor Richard Daley, and voluntarily moving this Court to dismiss them with prejudice in this action. Plaintiffs anticipate filing an amended complaint naming additional officers once limited discovery has occurred.

F.3d 282, 288 (7th Cir. 1996). Under this notice pleading standard, plaintiff need not plead facts or legal theories. *Hefferman v. Bass*, 467 F .3d 596, 599 (7th Cir. 2006) (citing cases).

## ARGUMENT

### I. PLAINTIFF'S FIRST AMENDED COMPLAINT INCLUDES FACTS SUFFICIENT TO MEET THEIR BURDEN UNDER RULE 12(b)(6).

Defendants argue that Plaintiffs' Complaint has not included facts sufficient to put Defendant on notice as to the conduct that forms the basis of his claims. However, the Defendants have chosen to completely disregard the above-referenced standard. Defendants are arguing to hold Plaintiffs' Complaint to a heightened standard, one of specific fact pleading, and their interpretation and characterization of Plaintiff's Complaint is erroneous and subjective.

Plaintiffs' Complaint provides nine paragraphs outlining the actions of the Defendant Officers that form the basis of Plaintiffs' claims. (See Exhibit A, ¶10-18). In those paragraphs Plaintiffs detail that on June 21, 2007, Defendant Officers Johnson and Bady wrongfully seized and arrested Plaintiffs. Plaintiffs go on to explain that, notwithstanding the fact that Plaintiffs had not committed any criminal activity, Defendant Officers Johnson and Bady arrested Plaintiffs and charged Plaintiff Johnson with criminal activity. Plaintiffs allege that the actions of the Defendant Officers caused them injury and violated their rights as guaranteed under the Fourth Amendment of the United States Constitution. These facts provide ample notice to Defendants of Plaintiffs' claims and meet the requirements of notice pleading required by Federal Rules of Civil Procedure 12(b)(6).

Defendants' claim that the Complaint does not provide the precise location or timing of the arrest, list the exact number of officers present, or detail what happened between Plaintiff and the Defendant Officers is simply not a valid basis for seeking dismissal under Rule 12(b)(6). Rule 12

merely requires that a complaint provide "the bare minimum facts" to the Defendants so they may prepare an answer. *Higgs,* 286 F.3d at 439.

Defendants claim that although Plaintiffs have provided the identity of the arresting Officers (Johnson and Bady) and the date of the incident, Defendants are unable to even begin investigating Plaintiffs' claims. Plaintiffs patently disagree. Defendants have access to Plaintiffs' arrest records and the accompanying reports of Defendant Officers Johnson and Bady. If Defendant is claiming that no documents exist relative to this arrest, then the failure of the City of Chicago to sufficiently document and record the interactions their police officers have with citizens only goes to provide additional support for Plaintiffs' *Monell* claims (addressed further below).

Plaintiffs have provided facts sufficient to put Defendants on notice as to the incident that forms the basis for his claims. Defendants have enough information to begin an investigation and prepare an answer, thus Plaintiff has met his pleading requirement. For this reason, Defendants' Motion to Dismiss should be denied.

## II. PLAINTIFFS HAVE ADEQUATELY PLED THEIR MONELL CLAIM.

Defendant City argues that Plaintiffs have not sufficiently pled their *Monell* claim. However, it is clear that Defendants have disregarded the above-referenced standard and ignored the three-factor test that the Seventh Circuit applies in analyzing § 1983 municipal liability claims. Plaintiffs must allege one of the following:

> 1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiffs constitutional injury was caused by a person with final policymaking authority.

4

*McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000); *see also, Johnson v. City of Joliet,* 2006 WL 1793574, *4 (N.D. Ill. June 27, 2006). Furthermore, Plaintiffs are not required to plead in great detail; they only "must plead some fact or facts tending to support [their] allegation that a municipal policy exists that could have caused [their] injury." *Strauss v. City of Chicago,* 760 F.2d 765, 769 (7th Cir. 1985).

The facts referenced *infra,* excerpted from Plaintiffs' complaint, show that they have alleged facts far beyond what is required by the Federal Rules of Civil Procedure. Plaintiffs allege that well-settled City practices, namely a "code of silence" and a failure to investigate, monitor and/or discipline incidents of police misconduct, caused them to be falsely arrested and maliciously prosecuted. Plaintiffs' burden at this stage is simply to allege facts that would give the City notice of their municipal liability claim. *McCormick,* 230 F.3d at 326. They have done that and more with over 50 numbered paragraphs describing the "code of silence" and the custom and practice of failing to investigate, monitor and/or discipline incidents of police misconduct that exist. For example, paragraph 24 of Plaintiffs' Complaint lists fifteen areas, including failure to discipline, investigate and train, in which the Defendant City of Chicago fosters a practice of covering-up and implicitly condoning acts of police misconduct within its police department. Plaintiffs next describe several operations and departments, such as the Special Operations Section (SOS) and the Office of Professional Standards (OPS), in which there were no independent investigations of complaints and/or substantial discipline was rare when misconduct was found.

Defendants argue Plaintiffs "fail to adequately define the 'custom, policy, or practice' that allegedly led to the violation of their constitutional rights. Plaintiffs instead have filled their complaint with a 25-year history of miscellaneous and unrelated allegations of misconduct brought

against the Chicago Police Department..." Mot. at ¶12. The contrary is true: the allegations referred to by Defendant actually *bolster* and *allege in detail* Plaintiffs' *Monell* claim. Furthermore, as the Supreme Court has held, "plaintiff is master of the complaint." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002). How the Plaintiffs choose to allege their claims is not subject to Defendants' critique as long as it meets the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Further, pleadings similar to Plaintiffs' allegations against Defendant City of Chicago have been found sufficient under Rule 12(b)(6). In *Sledd,* the Seventh Circuit reversed the district court's dismissal under 12(b)(6) stating that the district court had "jumped the gun given the detailed allegations Sledd included." *Sledd,* 102 F.3d at 288. In that case, the plaintiff's complaint alleged, "the City and the [Chicago Police Department] maintained a code of silence; that disciplinary complaints almost never resulted in official censure; and that this practice hurt [the plaintiff] in particular, by making the officers believe their actions would never be scrutinized." *Id.* at 289.

Here, Plaintiffs' claim against the City is alleged in a similar fashion. In their complaint, Plaintiffs cite to a code of silence between the City and the Defendant Officers, a lack of independent review of disciplinary complaints, statistics showing that less than one percent of complaints have resulted in officer discipline, and the injury that this code of silence and lack of discipline caused Plaintiffs. Complaint at ¶ 24-26, 39-49, 64-73. The allegations in Plaintiffs' Complaint are highly similar to the allegations in the *Sledd* complaint, which was upheld by the Seventh Circuit. Accordingly, Plaintiffs' complaint is sufficiently pled and the instant Motion to Dismiss should be denied.

Defendants argue that this is not an SOS case. Mot., ¶ 20. Defendants, however, misinterpret Plaintiffs' allegations. Plaintiffs are not arguing that the officers involved in Plaintiffs'

arrests and prosecution were members of SOS; rather, Plaintiffs allege that allowing the SOS officers to remain on the street despite a pattern of misconduct complaints and criminal conduct has served to perpetuate the "code of silence" practice within the Chicago Police Department thus causing the Defendant Officers to believe that, like the SOS officers, there would be little or no consequences for their misconduct toward Plaintiffs. Complaint at ¶ 25, 26.

The Defendants argue that Plaintiffs' OPS allegations do not relate to this case. Mot., at ¶ 21. Defendants are again mischaracterizing Plaintiffs' Complaint; Plaintiffs are not claiming that OPS's involvement or lack thereof in Plaintiffs' particular case caused the constitutional violation, rather that the OPS structure itself shows that there is there is a lack of independent review and accountability of Chicago Police Officer misconduct which in turn fosters the aforementioned "code of silence" and condones future misconduct. See Complaint at ¶ 39-49. Indeed, the connection between OPS and Plaintiff's *Monell* claim is obvious because, as this Court opined in dicta in *Mosby v. 0 'Connor,* "[h]ow better to safeguard the constitutional right to be free from unreasonable seizures than to provide an efficient and effective system for monitoring police misconduct?" *Mosby v. O'Connor,* No. 07 C 3148, p. 6 (N.D. Ill. October 15, 2007) (Guzman, J.) (Order attached hereto as Exhibit B).

In similar fashion, the Defendants argue the supposed irrelevance of Plaintiffs' references to the BrainMaker program. Plaintiffs disagree. BrainMaker is a software product which can be used as an assistive device to forecast which officers on the police force are potential perpetrators of misconduct and abuse. See Complaint at in 82-90. The City abandoned all efforts to utilize this software, further demonstrating the unwillingness of the City of Chicago to legitimately police itself. See Complaint at 90. In addition, the Defendants argue that Plaintiff's reference to *Garcia v. City of Chicago,* 2003 WL 22175618 (N.D. Ill. 2003), is also inapposite because the case involved off-duty officers. It is clear that, again, the Defendants mischaracterize

7

Plaintiff's complaint; Plaintiffs reference *Garcia* to emphasize that the City of Chicago's police abuse investigations were and are incomplete, inconsistent, delayed, and slanted in favor of officers, and a District Court Judge has upheld a jury verdict finding as such. See Complaint at 77-79.

Throughout their motion, the Defendants rely heavily on a Fourth Circuit case, *Carter v. Morris,* in arguing that Plaintiffs fail to show an actual affirmative causal link between the City's policy or custom and Plaintiffs' injuries. See Motion at ¶ 9, 12-14, 18-19, 25. *Carter v. Morris,* 164 F.3d 215, 221 (4th Cir.1999) (upholding district court's *summary judgment dismissal* of Section 1983 claim where plaintiff failed to offer evidence to support "affirmative causal link" between alleged custom or policy and injury). *Carter,* however, is inapplicable not only because it is case law from a different circuit, but also because it does not speak to what a plaintiff must plead. Rather, it pertains to what a plaintiff must offer in the way of proof in order to survive summary judgment or to prevail at trial. See *Brown v. Mitchell,* 308 F.Supp.2d 682, n.12 (E.D.Va. 2004). As illustrated above, a Rule 12(b)(6) motion should only be granted where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the allegations. Furthermore, the Supreme Court has ruled that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

As for the City's suggestion that Plaintiffs wish to establish a "roving commission" to root out municipal transgressions, Plaintiffs do not hide that they are indeed hopeful that a judgment against the City will be a catalyst for change and will serve as a deterrent to future official

misconduct; such goals have been held to be permissible when pursuing a *Monell* claim. As Magistrate Judge Schenkier has opined,

> a jury verdict that police misconduct stemmed from unconstitutional municipal policies, practices or customs could provide a greater incentive for change than the payment of a damages award that the City then could chalk up to aberrational conduct by a rogue officer . . .[A] plaintiff who succeeds in proving unconstitutional policies, practices or customs has achieved a significant victory not for himself alone but also as a private attorney general[.]

*Cadiz v. Kruger,* No. 06 C 5463, p. 18-19 (N.D. Ill. Nov. 29, 2007) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 577 (1986) (Memorandum Opinion and Order attached hereto as Exhibit C).

While the potential positive outcome of a *Monell* claim affecting change of a system wide nature in a corrupt police department is compelling motivation for Plaintiffs to allege the claim, at the end of the day, Plaintiffs' Complaint merely needs to pass the muster of Rule 12(b)(6). Defendants are arguing to hold Plaintiffs' complaint to a summary judgment standard and consistently misinterpret and mischaracterize Plaintiffs' Complaint. Plaintiffs' *Monell* claim has been pled with ample sufficiency and should not be dismissed.

### III.   ALTERNATIVELY, PLAINTIFFS SHOULD BE ALLOWED TO AMENDTHEIR COMPLAINT.

For all the reasons argued above, Plaintiffs have sufficiently pled their claims to defeat Defendants' Motion to Dismiss. However, in the alternative, if this Court disagrees, Plaintiffs request leave to amend their Complaint, pursuant to FRCP Rule 15(a), to do the following: (1) to further articulate, if necessary, the causal nexus between the customs and practices of the City and the constitutional violations of Plaintiffs for the *Monell* claim, (2) to amend any other aspect of Plaintiffs' complaint deemed deficient by this Court. *See* Fed.R.Civ.P. 15(a) (leave to amend a

pleading shall be "freely given when justice so requires."); *see also, U.S. v. Hougam,* 364 U.S. 310, 316-17 (1960).

   **WHEREFORE,** for the forgoing reasons, Plaintiffs prays that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted,


/s/Abbas Merchant

HORWITZ, RICHARDSON & BAKER LLC
Two First National Plaza
20 South Clark Street, Suite 500
Chicago, IL 60603
(312) 676-2100