**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEWARD JOHNSON and ARTHUR BRIGHT, <br><br> Plaintiffs, <br><br> vs. <br><br> C.S. JOHNSON (STAR #16589), C.M. BADY (STAR #11453), TERRY HILLARD, LORI LIGHTFOOT, PHILLIP CLINE, TISA MORRIS, MAYOR RICHARD DALEY, and the CITY OF CHICAGO, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No.: 07 C 7036 <br> ) <br> ) Judge Ronald Guzman <br> ) <br> ) Magistrate Judge Geraldine Soat Brown <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS**

Defendants, City of Chicago, Richard M. Daley, Terry Hillard, Philip Cline, Lori Lightfoot, Tisa Morris, Charlie Johnson, and Charron Bady, by their attorney, Terrence M. Burns of Dykema Gossett PLLC, for their joint reply in support of their motions to dismiss, state as follows:

**INTRODUCTION**

Defendants filed three separate motions challenging plaintiffs' complaint. Defendant City of Chicago ("City") and Police Officer Defendants Charlie Johnson and Charron Bady filed a motion to dismiss plaintiffs' entire complaint for failure to state a claim upon which relief can be granted, or the alternative, for an order requesting a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. (Dkt. #30). The second portion of the motion to dismiss is directed to plaintiffs' purported *Monell* claim against the City. (*See* Motion to Dismiss, ¶¶ 9-25, Dkt. #30). Defendants Daley, Hillard, Cline, Lightfoot, and Morris separately filed motions to dismiss the complaint as against them on the basis they were sued only in their official capacities. (Dkt. ##32, 34). Suits against city employees and officials in their official capacities are redundant and unnecessary when the municipal entity is also a named defendant. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985).

As to the official capacity defendants (Daley, Hillard, Cline, Lightfoot, and Morris), plaintiffs are formally withdrawing their claims and agree these defendants should be dismissed with prejudice from this action. (Dkt. #47). Accordingly, defendants Daley, Hillard, Cline, Lightfoot, and Morris request that this Court enter an order dismissing them with prejudice.

That leaves remaining for this Court's adjudication the motion to dismiss (Dkt. #30) brought by the City and individual police officer defendants Johnson and Bady (jointly hereinafter, the "remaining defendants"). Plaintiffs allege police misconduct arising from an incident that occurred "on or about" June 21, 2007. The complaint is devoid of factual detail as to the circumstances of the underlying incident. Lacking the basic information that would provide the City with sufficient notice of the incident underlying plaintiffs' claims, the complaint should be dismissed. And even if the complaint is allowed to stand, or if plaintiffs are given leave to re-plead, or if this Court requires a more definite statement from plaintiffs concerning the underlying facts, the unnecessary and irrelevant *Monell* allegations should be stricken and dismissed. Plaintiffs fill their complaint with generalized allegations of unrelated misconduct against various members and units of the Chicago Police Department dating back over 25 years, purportedly in support of some vague and ill-defined *Monell* claim. Despite their number, these purported *Monell* allegations do not identify or support a specific municipal policy or practice that directly caused, or is closely related to, the underlying constitutional deprivation alleged by plaintiffs. As such, plaintiffs' *Monell* claim equates to nothing more than an impermissible *respondeat superior* claim against the City.

## DISCUSSION

I. **PLAINTIFFS' COMPLAINT FAILS TO GIVE ADEQUATE NOTICE OF THE CONDUCT THAT FORMS THE BASIS OF THEIR CLAIMS**

The remaining defendants' motion to dismiss initially seeks dismissal of the complaint in its entirety because it lacks basic information providing adequate notice of the incident underlying plaintiff's claim. Plaintiffs do not include the circumstances or location of their arrests, identify the time of their encounter with the police, explain what happened, or offer any hints or details regarding any other allegedly unlawful "acts or omissions" of the defendant officers. As plaintiffs' complaint currently stands, there is no meaningful way the remaining defendants can answer, investigate or evaluate the scope and extent of plaintiffs' claims. For that reason, these defendants seek the dismissal of the complaint.

Contrary to the arguments in plaintiffs' response, the remaining defendants are not attempting to impose a heightened pleading standard on plaintiffs.[1]  Rather, these defendants submit the complaint lacks the minimal level of factual detail so as to provide fair notice of the claims against them.  *Pratt v. Tarr*, 464 F.3d 720, 732 (7th Cir. 2006).  A complaint "should contain information that one can provide and that is clearly important."  *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 780 (7th Cir. 2007).  Plaintiffs have failed to meet even this minimal standard.  Plaintiffs' complaint should be dismissed for its failure to provide an adequate "quantum of information" about their claims.  *See Concentra Health,* 496 F.3d at 779 n.3; *see also Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) ("The lack of intimation of *any facts* underlying the [plaintiff's] claim … justifies dismissal") (emphasis in original).  Alternatively, these defendants request that this Court order plaintiffs to provide a more definite statement pursuant to Fed. Rule 12(e).  (*See* Motion to Dismiss, Dkt. #30, at p. 12).

Plaintiffs' response unwittingly proves the factual insufficiency of their complaint.  The response brief contains an introductory paragraph that sets forth a detailed description of events plaintiffs contend took place between them and police officers on June 21, 2007.  (*See* Response, Dkt. #45, at pp. 1-2).  However, not one of these purported "facts" is found anywhere in plaintiffs' complaint.  Plaintiffs are forced to go completely outside the four corners of their complaint to provide this Court with a basic explanation of the basis of their claims.  If they are able to provide such factual details for a response brief, why were they omitted from the complaint?  This information is obviously something plaintiffs can provide and is clearly important to their claims.  *See Concentra Health Services*, *supra*.  Plaintiffs' reliance on such "facts" in the response brief finds no basis in the complaint, conclusively reveals the factual insufficiency of that pleading, and confirms the appropriateness of the relief requested in the motion to dismiss.

---

[1] Plaintiffs' response (at p. 2) incorrectly suggests their complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).  As recently noted by the Supreme Court, that statement "has earned its retirement" and is no longer the standard for evaluating motions to dismiss under Rule 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

## II.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A *MONELL* CLAIM[2]

Plaintiffs essentially claim their rights were violated on June 21, 2007, due to a practice of general "lawlessness" at the Chicago Police Department ("CPD"). (*See* Motion to Dismiss, Dkt. #30, at p. 4). Plaintiffs' theory seems to be that because other police officers committed misconduct in the past, that misconduct directly caused the defendant police officers in this case to falsely arrest them. In other words, plaintiffs attempt to base their *Monell* claim on a theory of liability that has been soundly rejected by the courts: "[C]laims that past generalized bad police behavior led to future generalized bad police behavior" are nothing more than a "nebulous chain [that] fails the 'rigorous standards culpability and causation' required for municipal liability under section 1983." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *citing Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382 (1997) (hereinafter, "*Bryan County*"). Recently, District Court Judge Suzanne B. Conlon dismissed a *Monell* claim essentially identical to that attempted here by plaintiffs, concluding the allegations failed to identify a discrete municipal policy or custom. *Chaparro v. Powell*, No. 07 C 5277, 2008 WL 68683 at *3 (N.D. Ill. Jan. 2, 2008).

When alleging a *Monell* claim, a plaintiff must identify with specificity the custom, policy, or practice of which he complains. *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (the allegedly deficient policy must be "closely related to the ultimate injury"). To forego the requirement of specificity would blur the line "between *respondeat superior* liability and truly unconstitutional municipal conduct." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 fn.27 (5th Cir. 2001). As explained by the *Carter*[3] court, "unfocused evidence of unrelated

---

[2] Whether this Court grants or denies any of the relief requested in Section I, above, the City asks this Court to separately consider the second portion of the motion which challenges plaintiffs' unnecessary and irrelevant *Monell* allegations. As explained below, the generalized and unfocused *Monell* allegations arguably pose an incredibly wide-ranging and excessive scope of discovery, which if allowed to proceed at this time, would unnecessarily strain scarce judicial and municipal time and resources. The City's motion to bifurcate §1983 claims and to stay discovery and trial of those claims (Dkt. #36), which would have postponed the need for a ruling on this aspect of the motion to dismiss, was stricken without prejudice (Dkt. #41) until this Court could sort out and identify the appropriate parties in this lawsuit through ruling on the motions to dismiss.

[3] In their response, plaintiffs try to distinguish *Carter* because it arose from the Fourth Circuit and involved a motion for summary judgment rather than a motion to dismiss. (*See* Response, p. 8). Neither argument has merit. *Carter's* discussion of the required close connection of a *Monell* claim to the underlying constitutional deprivation is based on language taken directly from United States Supreme Court decisions, particularly *Bryan County* ("direct causal link") and *City of Canton* ("closely related").

constitutional violations is simply not relevant to the question whether a municipal decision made or caused the violation of the specific federal rights of the plaintiff before the court." 164 F.3d at 218-19. Although plaintiffs have filled their complaint with a 25-year history of miscellaneous and unrelated allegations of misconduct pertaining to the CPD, their attempted *Monell* claim fails to identify with precision a "custom, policy or practice" that allegedly led to the violation of *their* constitutional rights. As such, the so-called "*Monell* Allegations" of the complaint (¶¶ 24-90), as well as count IX, should be dismissed. *See Chaparro*, *supra* ("The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability").

Plaintiffs' response asks this Court to disregard the requirement of specificity. They argue that how they choose to allege their claim is their business as the master of their complaint, and their choices should not be subjected to defendants' "critique." (Response, p. 6). The requirement of specificity is imposed by the United States Supreme Court (*City of Canton*, *supra*), and not the City. This Court should not allow plaintiffs free reign to include in their pleadings whatever impertinent, immaterial, or improperly prejudicial subject matter they see fit. (*See*, *e.g.*, FRCP 12(f)). In addition, plaintiffs' scattershot allegations of wide-ranging and unrelated incidents of misconduct invite the likelihood of extensive and burdensome *Monell* discovery,[4] and implicate the potential for abuse forewarned by the *Carter* court:

> [B]y requiring litigants to identify the offending municipal policy with precision, courts can prevent trials from straying off into collateral accusations of marginally related incidents. Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover -- our role is to decide concrete cases. Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decision maker caused the violation of the specific federal rights of the plaintiff before the court. Permitting plaintiffs to splatter-paint a picture of scattered violations also

---

Moreover, the Supreme Court's requirement of this close connection is equally applicable in assessing whether a proper *Monell* claim is stated or whether a genuine fact issue exists. Defendant City does not rely on *Carter* to the extent the decision assesses the specific facts in that case. Rather, the City's reliance on *Carter* rests on its discussion of the general principles of *Monell* claims and the dangers of allowing a plaintiff to "splatter paint a picture of scattered violations" instead of identifying an "offending municipal policy" with precision. *Carter*, 164 F.3d at 218-19.

[4] The danger of extensive and burdensome discovery is not speculative. Plaintiffs' counsel has asserted the exact same boilerplate *Monell* allegations in at least eight other recently filed cases, one of which was *Chaparro*. (*See* Motion to Dismiss, Dkt. #30, at p. 7).

> squanders scarce judicial and municipal time and resources. As a practical matter, a case involving inquiries into loosely related incidents can be an unruly one to try.

164 F.3d at 218-19.

In its present posture, discovery in this case almost certainly will "stray off into collateral accusations of marginally related incidents" (*e.g.*, SOS; Flagg, Haynes, *et al.*; BrainMaker), allow plaintiffs a "roving commission" to investigate what they believe to be an illegitimate political relationship between OPS and the City, and require the significant expenditure of "scarce judicial and municipal time and resources." Little, if any, of these discovery efforts will assist the Court in deciding this specific case. In light of the potentially unlimited scope of discovery posed by the generalized, unfocused *Monell* allegations, this Court should not condone plaintiffs' failure to specify in their pleadings a "custom, policy or practice" that directly led to the alleged violations of *their* constitutional rights.

Plaintiffs' response urges the numerous allegations suggesting the "general lawlessness" of the CPD "bolster" and "allege in detail" their *Monell* claim. (Response, at p. 6). Plaintiffs' argument misses the point. The "general lawlessness" allegations (¶¶ 27-90) lack any causal nexus to plaintiffs' alleged constitutional deprivations. *See Chaparro*, at *3. At a minimum, these unrelated allegations are unnecessary and irrelevant surplusage that should be stricken and dismissed from the complaint. As recognized by the *Carter* court, claims that "past generalized bad police behavior led to future generalized bad police behavior" are a "nebulous chain" that "fails the 'rigorous standards of culpability and causation' required for municipal liability." 164 F.3d at 218. Plaintiffs have not alleged a direct causal link between any policies generally suggested in their complaint and the specific violation of constitutional rights of which they complain. A plaintiff must allege the requisite causation such that the policy or custom complained of was the "moving force" behind the constitutional deprivation. *O'Sullivan v. City of Chicago*, 327 F.Supp.2d 937, 940 (N.D. Ill. 2004). Here, plaintiffs have not alleged a causal link between any "practices" alleged in paragraphs 27 through 90 of their complaint and the claimed violations of their constitutional rights.

With respect to the allegations concerning the Special Operations Section ("SOS"), plaintiffs lack a direct link between the existence of any municipal policy concerning the SOS and the particular constitutional violation of which they complain. (*See* Motion to Dismiss, Dkt. #30, at pp. 9-10). For example, the allegations of the complaint concerning SOS refer to

6

incidents involving the "robbing and kidnapping" of individuals by SOS officers. Plaintiffs, however, do not complain they were robbed or kidnapped by police officers in this case. Without such a direct causal link, the SOS allegations amount to nothing more than an improper assertion that other police officers were bad in the past, which caused the defendant police officers in this case to be bad.

Plaintiffs' response unsuccessfully strains to fill the gap between the generalized *Monell* allegations and the specific claimed violations of their constitutional rights. Plaintiffs' only argument in an effort to salvage the unrelated SOS allegations is to suggest they somehow support their claim based on an alleged "code of silence." Such a tenuous connection creates nothing more than an indirect nebulous chain that fails the "rigorous standards of culpability and causation" required for municipal liability under *Monell*. *Bryan County*, 520 U.S. at 405; *see also City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197 (the alleged deficient municipal policy "must be closely related to the ultimate injury").

Plaintiffs resort to the same strained argument in discussing the allegations concerning former police officers Flagg, Haynes, Jones, and Black. The alleged misconduct of these former officers is unrelated to the type of misconduct alleged against defendant officers in this case. Plaintiffs nevertheless attempt to justify these unrelated allegations by suggesting they support an alleged "code of silence." Again, such an indirect, "nebulous" connection fails to satisfy the requirement recognized in *City of Canton* that the alleged municipal policy or practice be "closely related" to a plaintiff's ultimate injury.

Plaintiffs' response likewise fails to explain how the allegations concerning the Office of Professional Standards ("OPS") are directly related to his specific injury. As set forth in the motion to dismiss, plaintiffs have not alleged they filed complaints with OPS or that OPS failed to conduct an adequate investigation of their complaints. Plaintiffs further do not allege the defendant officers in this case should have been previously disciplined by OPS for similar misconduct. Rather than dispute the absence of a direct causal link to their alleged constitutional deprivation, plaintiffs again suggest the policy allegations concerning OPS support their "code of silence" theory. And once again, this argument at most reflects a vague, nebulous link between the alleged policy and the underlying constitutional violation. To establish that the municipality was the "moving force" behind his specific injury, a plaintiff must allege the municipal action was taken with the "requisite degree of culpability and must demonstrate a direct causal link

7

between the municipal action and the deprivation of federal rights." *Bryan County*, 520 U.S. at 404, 117 S.Ct. at 1388. A direct causal link is missing between plaintiffs' SOS/Flagg/OPS allegations and the alleged constitutional violation underlying plaintiffs' claims.

Plaintiffs' allegations concerning the "BrainMaker" program similarly lack a causal nexus to the alleged misconduct in this case. The complaint simply does not allege any close connection between plaintiffs' claimed injuries and the BrainMaker program. Plaintiffs' suggestion in the response that these allegations demonstrate "the unwillingness of the City of Chicago to legitimately police itself" fails to identify the necessary direct causal link between that alleged policy and plaintiffs' specific constitutional deprivations. Moreover, plaintiffs' response does not describe how the City's alleged failure to use an experimental software program rises to the level of deliberate indifference for purposes of a *Monell* claim.

With respect to the *Garcia* allegations of the complaint (¶¶ 77-79), plaintiffs similarly are unable to articulate a direct causal link to the alleged violation of their constitutional rights on June 21, 2007. (*See* Motion to Dismiss, at p. 11). The general "practice" suggested in the Response (pp. 7-8) provides only another example of an assertion that other police officers were bad in the past, and it caused the officers to be bad in this case. As set forth above, such a generalized allegation lacks precision and is inadequate to support a *Monell* claim.

Finally, plaintiffs' response admits they are using this action in an effort to effect political change in the City. As indicated above, the role of a court in presiding over a *Monell* claim is not to allow a "roving commission to root out and correct whatever municipal transgressions" might be discovered; rather, the court's role "is to decide concrete cases." *Carter*, 164 F.3d at 218. Article III of the Constitution limits the exercise of judicial power to resolution of actual cases and controversies. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752 (1982). The magistrate judge's comments quoted in plaintiffs' response (at p. 9) do not suggest otherwise. While the magistrate suggested a change in municipal policy might be a beneficial result of a *Monell* claim, he does not (and cannot) say that is the *purpose* of a *Monell* lawsuit. The United States Supreme Court has made clear that the primary purpose of §1983 damages is to compensate persons for injuries caused by the deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254-55, 98 S.Ct. 1042 (1978). *Carey* further noted, "To the extent that Congress intended that awards under §1983 should deter the deprivation of constitutional rights, there is no evidence

that it meant to establish a deterrent more formidable than that inherent in an award of compensatory damages." *Id.* at 256-257.

As noted in the motion to dismiss, plaintiffs' attorney has asserted the same boilerplate *Monell* allegations in a number of other recently filed cases in this district. In one of these other cases, *Chaparro v. Powell*, *supra*, Judge Conlon dismissed an almost identical *Monell* claim to that attempted by plaintiff in this case. The extensive analysis of *Chaparro* need not be repeated here. (*See* Motion to Dismiss, Dkt. #30, at p. 8). Tellingly, plaintiff's response does not even mention or attempt to distinguish *Chaparro*. Judge Conlon's decision in *Chaparro* is persuasive, directly on point, and provides this Court with guidance on the identical allegations and issues raised in the pending motion. This Court should follow Judge Conlon's well-reasoned decision and dismiss plaintiff's *Monell* allegations, including count IX.

Finally, plaintiffs point to *Sledd v. Lindsay*, 102 F.3d 282 (7th Cir. 1996), for the proposition their complaint indeed satisfies the *Monell* pleading requirements. *Sledd*, however, does not support plaintiffs' position and, furthermore, is not inconsistent with the *Carter* or *Bryan County* decisions relied on by the City. In *Sledd*, the Seventh Circuit was able to identify a discrete, causally connected *Monell* claim. *Sledd*, 102 F.3d at 288. The specificity present in *Sledd* is the same precision that the City submits is required under *Carter* and *Bryan County*, and is lacking in plaintiffs' complaint. *Sledd*, *Carter* and *Bryan County* are all aligned with *Chaparro*, which stated:

> The custom or policy under underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. [Plaintiff] relies on a purported "code of silence" based on numerous, tenuously related instances of police misconduct. But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom. Under [plaintiff]'s logic, any instance of police misconduct would be "caused" by the "code of silence," because any misconduct could be linked to an officer's imputed belief he could escape punishment.

*Chaparro*, *supra*, at *3. In the complaint, unlike in *Sledd*, *Carter* or *Bryan County*, plaintiffs' purported *Monell* claim fails to set forth specific allegations that suggest a discrete, defined custom or policy causally connected to the underlying constitutional violations being alleged.

Plaintiffs' complaint is replete with allegations that have nothing to do with their arrests or the specific allegations of misconduct against the defendant police officers in their case. Although the complaint contains a myriad of purported *Monell* allegations concerning previous

9

instances of misconduct, it is devoid of allegations causally linking plaintiffs' specific alleged constitutional deprivations to these other events. Plaintiffs' *Monell* allegations (count IX and ¶¶ 24-90) should be dismissed.

## **CONCLUSION**

As an initial matter, defendants Daley, Hillard, Cline, Lightfoot, and Morris request an order dismissing them from this action. Plaintiff has conceded these defendants should be dismissed with prejudice. As to the remaining defendants, plaintiffs' complaint should be dismissed on the basis that it fails to provide defendants with sufficient notice of the essential facts underlying their claim. The Court alternatively could order plaintiffs to provide a more definite statement concerning the underlying facts.

As a separate consideration, plaintiffs' purported *Monell* claim is inadequate and improper. Plaintiffs' complaint is replete with so-called *Monell* allegations that have nothing to do with their alleged arrests or the assertions of misconduct against defendant police officers in this case. Although the complaint contains a myriad of purported *Monell* allegations concerning previous instances of misconduct, it is devoid of allegations causally linking plaintiffs' specific alleged constitutional deprivations to these other events. *Chaparro*, *supra*. This Court should grant the City's motion to dismiss the *Monell* claims.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court enter orders providing the following relief: (1) Defendants City, Johnson, and Bady request an order dismissing plaintiffs' complaint, or alternatively, requiring plaintiffs to provide a more definite statement but nevertheless dismissing plaintiffs' *Monell* allegations, including count IX and paragraphs 24 through 90 of the complaint; (2) Defendant Daley requests an order dismissing count VII in its entirety, and further dismissing him with prejudice from this action; and, (3) defendants Hillard, Cline, Lightfoot, and Morris request and order dismissing count VII in its entirety, and further dismissing them with prejudice from this action.

Dated: April 28, 2008                            Respectfully submitted,

                                                  By: s/ Paul A. Michalik
                                                     One of the Attorneys for Defendants

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Kimberly D. Fahrbach
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2008, I electronically filed the foregoing **Defendants' Joint Reply in Support of Their Motions to Dismiss** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Horwitz, Richardson & Baker, LLC
20 South Clark Street
Suite 500
Chicago, Illinois  60603
312.676.2100 (telephone)
312.372.7076 (facsimile)
lobh@att.net

                s/ Paul A. Michalik
                Paul A. Michalik

CHICAGO\2439470.1
ID\PAM