**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEWARD JOHNSON and ARTHUR BRIGHT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.:  07 C 7036 |
| C.S. JOHNSON (STAR #16589), C.M. BADY (STAR #11453), and the CITY OF CHICAGO, | ) ) ) ) | Judge Ronald Guzman |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) ) | |

## DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT AT LAW

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Dykema Gossett PLLC, for its answer to plaintiff's complaint, states:

## JURISDICTION

1.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

**ANSWER:**   Defendant City admits plaintiffs' complaint includes claims that invoke the jurisdiction of this Court.  Defendant City denies any liability to plaintiffs for any of the claims asserted in the complaint.

## PARTIES

2.      PLAINTIFFS are residents of the State of Illinois and of the United States.

**ANSWER:**   Defendant City admits police reports indicate plaintiff Deward Johnson gave a home address in Chicago, Illinois.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any information provided by plaintiff

Deward Johnson. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 2.

3.    The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

**ANSWER:**    Defendant City admits Defendant Officers Johnson and Bady were employed by the Chicago Police Department on June 21, 2007, and they would have been acting as employees of the Chicago Police Department when performing the duties of their office. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 3.

4.    RICHARD DALEY was and is the acting mayor for the CITY OF CHICAGO.

**ANSWER:**    Defendant City admits Richard M. Daley has been the duly elected Mayor of the City of Chicago since 1989.

5.    PHILIP CLINE was and is the acting superintendent of police for the Chicago Police Department.

**ANSWER:**    Defendant City admits Philip Cline served as the Superintendent of Police for the Chicago Police Department from October 2003 through August 2007.

6.    TERRY HILLARD was the acting superintendent of police for the Chicago Police Department.

**ANSWER:**    Defendant City admits Terry Hillard served as the Superintendent of Police for the Chicago Police Department from 1998 to 2003.

7.    LORI LIGHTFOOT was the Chief Administrator of the Chicago Police Department's Office of Professional Standards (OPS) from August 2002 to July 2004.

**ANSWER:**    Defendant City admits the allegations contained in paragraph 7.

8.    TISA MORRIS was the Chief Administrator of the Chicago Police Department's OPS from July 2004 to October 2006.

**ANSWER:**    Defendant City admits the allegations contained in paragraph 8.

9.     The CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICERS.   At all times material to this complaint, the DEFENDANT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

**ANSWER:**    Defendant City admits it is a municipal corporation duly incorporated under the

laws of the State of Illinois.  Defendant City further admits that, on June 21, 2007, Defendant

Officers Johnson and Bady were employees of the Chicago Police Department, and they would

have been acting under color of law as employees of the Chicago Police Department in the

performance of the duties of their offices.  Defendant City denies any liability to plaintiffs

pursuant to the claims asserted in their complaint.   Defendant City denies any remaining

allegations in paragraph 9 inconsistent with the foregoing.

## FACTS

10.     On or about June 21, 2007, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the PLAINTIFFS.   This conduct violated the Fourth Amendment to the United States Constitution.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations

contained in paragraph 10.

11.     On or about June 21, 2007, PLAINTIFFS did not obstruct justice, resist arrest and/or batter and/or assault any of the DEFENDANT OFFICERS.

**ANSWER:**    Defendant City admits police department reports in its possession concerning

plaintiff Deward Johnson's June 21, 2007 arrest do not reflect that plaintiffs obstructed justice,

resisted arrest, or battered or assaulted Defendant Officers Johnson and Bady.

12.     The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure to the PLAINTIFFS.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations

contained in paragraph 12.

13.     The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFFS with criminal activity, and arrested, participated in the arrest and/or failed to

prevent the arrest of the PLAINTIFFS notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/or learn that PLAINTIFFS had committed criminal activity of any sort. The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFFS.

**ANSWER:**    Defendant City admits plaintiff Deward Johnson was arrested by Officers Johnson and Bady on June 21, 2007 and charged with possession of cannabis and cocaine. Defendant City denies the remaining allegations contained in paragraph 13.

14.    On June 21, 2007, PLAINTIFFS had not committed an act contrary to the laws of the State of Illinois.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations contained in paragraph 14.

15.    As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICERS, PLAINTIFFS were caused to suffer damages.

**ANSWER:**    Based on police department reports, Defendant City denies the allegations contained in paragraph 15.

16.    On or about June 21, 2007, the DEFENDANT OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS.

**ANSWER:**    Defendant City admits Defendant Officers Johnson and Bady have been sued in their individual capacities. Defendant City admits Officers Johnson and Bady were employed as police officers by the Chicago Police Department on and around June 21, 2007. Defendant City admits that on June 21, 2007, Officers Johnson and Bady were on duty as police officers, and their participation in the lawful arrest of plaintiff Deward Johnson would have been within the course and scope of their employment. Defendant City denies Officers Johnson and Bady were on duty "at all times relevant to this complaint." To the extent any remaining allegations in paragraph 16 are inconsistent with the foregoing, Defendant City denies those allegations.

17.     Upon information and belief, C.S. JOHNSON (STAR # 16589), on June 21, 2007, came into physical contact with PLAINTIFFS.

**ANSWER:**     Defendant City admits Defendant Officer Johnson was assigned Star #16589 on June 21, 2007.  Defendant City with without knowledge or information as to the meaning of the vague term "physical contact" as used by plaintiff in paragraph 17, and it therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. Defendant City admits Officer Johnson participated in the arrest of plaintiff Deward Johnson on June 21, 2007.  Defendant City admits Officer Johnson encountered plaintiff Arthur Bright on June 21, 2007, but it denies Bright was arrested.   Defendant City denies any remaining allegations in paragraph 17 inconsistent with the foregoing.

18.     Upon information and belief, C.M. BADY (STAR # 11453), on June 21, 2007, came into physical contact with PLAINTIFFS.

**ANSWER:**     Defendant City admits Defendant Officer Bady was assigned Star #11453 on June 21, 2007.  Defendant City with without knowledge or information as to the meaning of the vague term "physical contact" as used by plaintiff in paragraph 17, and it therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.  Defendant City admits Officer Bady participated in the arrest of plaintiff Deward Johnson on June 21, 2007. Defendant City admits Officer Bady encountered plaintiff Arthur Bright on June 21, 2007, but it denies Bright was arrested.  Defendant City denies any remaining allegations in paragraph 18 inconsistent with the foregoing.

## CONSPIRACY

19.     Some or all of the DEFENDANT OFFICERS conspired to cause damage to PLAINTIFFS in the following manner:

    a.     agreeing to falsely arrest and/or falsely institute criminal charges/proceedings against the PLAINTIFFS;

b.        agreeing not to report each other after falsely arresting and/or charging PLAINTIFFS;

c.        generating false documentation to cover-up for their own and each other's misconduct.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 19, including

subparagraphs (a) through (c), inclusive, and each of them.

20.     In connection with the above conspiracy, the DEFENDANT OFFICERS specifically engaged in communication on or about June 21, 2007, whereby the DEFENDANT OFFICERS agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above. As a result of this conspiracy, the DEFENDANT OFFICERS by and through their conduct, proximately caused PLAINTIFF JOHNSON to, *inter alia*, suffer injury, be charged with criminal allegations, incur financial loss, including attorney's fees, and suffer emotionally.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 20.

### EQUAL PROTECTION — CLASS OF ONE

21.     The actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFF JOHNSON, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly towards the PLAINTIFF JOHNSON, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 21.

22.     In connection with the Equal Protection Claim, PLAINTIFF JOHNSON is a member of a protected class (African-American) and PLAINTIFF JOHNSON was treated differently by the DEFENDANT OFFICERS as a result. The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF JOHNSON differently, trying to cause further injury to PLAINTIFF JOHNSON by illegally generating false evidence against and criminally charging PLAINTIFF JOHNSON, specifically due to the status of PLAINTIFF JOHNSON as African-American.

**ANSWER:**    Defendant City upon information and belief admits that plaintiff Deward Johnson

is an African-American. Defendant City denies the remaining allegations contained in paragraph

22.

23.     With regard to an Equal Protection Claim, PLAINTIFF JOHNSON was a "Class of One." In that regard, PLAINTIFF JOHNSON was treated with ill will and/or discriminated

against with no rational basis. PLAINTIFF JOHNSON was intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICERS. The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF JOHNSON differently and trying to cause further injury to PLAINTIFF JOHNSON by generating false evidence against PLAINTIFF JOHNSON. Further, PLAINTIFF JOHNSON was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 23.

### *MONELL* ALLEGATIONS

24.    It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

a.    generate false documentation to cover-up for the misconduct of fellow police officers;

b.    engage in acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

c.    fail to properly discipline officers from said police department who have committed act(s) of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

d.    fail to properly investigate a complaint of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence perpetrated by a CITY OF CHICAGO police officer upon another;

e.    fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence has been committed by said officer upon another;

f.    allow misconduct to occur in various types and severity such that police officers believe that they can engage in false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence without repercussions and/or significant repercussions;

g.    fail to provide adequate sanctions/discipline to officers who commit false arrest, fabrication of evidence, malicious prosecution, misrepresentation of

facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h.    fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i.    fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j.    fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.    fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l.    fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.    fail to properly investigate officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists

among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.    fail to take proper remedial action with officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.    fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing false arrest, fabricating evidence, malicious prosecuting others, misrepresenting facts, causing significant intrusions to the body of innocent citizens, using excessive force, and/or committing serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 24, including subparagraphs (a) through (o), inclusive, and each of them.

25.    This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 25.

26.    A code of silence exists between the officers of said police department of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 26.

## SPECIAL OPERATIONS OFFICERS

27.    Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least 10 civilian complaints lodged against them.

**ANSWER:**    Defendant City, upon information and belief, admits the allegations contained in paragraph 27.

28.     The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least 10 civilian complaints lodged against them, between the years 2001 and 2006.

**ANSWER:**    Defendant City denies the factual premise underlying the allegations of this

paragraph, and it therefore denies paragraph 28.

29.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least 10 civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers").

**ANSWER:**    Defendant City denies the allegations contained in paragraph 29.

30.     The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 30.

31.     In the year 2007, an order was entered by the HONORABLE JUDGE LEFKOW regarding the Special Operations Officers for the City of Chicago.  The order provided, *inter alia,* that the parties were permitted to make public the names of 662 Special Operations Officers that had 10 or more civilian complaints lodged against them.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 31.

32.     The CITY OF CHICAGO refuses to release the names of the Special Operations Officers, referenced in the order of the HONORABLE JUDGE LEFKOW, to the public.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 32.

33.     There are at least 4 police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

**ANSWER:**    Defendant City, upon information and belief, admits the allegations contained in

paragraph 33.

34.     Within the last 4 years, 6 police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

**ANSWER:**    Defendant City, upon information and belief, admits six police officers who were

members of the Special Operations Section of the CPD have been indicted.  Defendant City lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations contained in paragraph 34.

35.    There are 10 police officers who worked in the Special Operations Section who received a combined total of 408 complaints of misconduct (with the Office of Professional Standards).  With regard to those 408 complaints, only three were sustained.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 35.

36.    Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never received a complaint that has been sustained.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the vague allegations contained in paragraph 36.

37.    The practices and/or customs regarding the actions and lack of investigation of the Special Operations Officers, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers designated as Special Operations Officers in the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 37.

38.    A code of silence exists between the Special Operations Officers in the CITY OF CHICAGO.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 38.

### OFFICE OF PROFESSIONAL STANDARDS (OPS)

39.    Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last 10 years, have resulted in a "sustained finding" against said officer.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 39.

40.    The OPS is fully funded by the City of Chicago.

**ANSWER:**    Defendant City admits the allegations contained in paragraph 40.

41.     The OPS, over the last 10 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 41.  Defendant City states the chief administrator of OPS was appointed by the mayor subject to the approval of city counsel.  Chicago Municipal Code, Section 2-57-030.  Defendant City further states that OPS was restructured by ordinance in 2007 as the Independent Police Review Authority.

42.     The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 42.  Defendant City states the chief administrator of OPS was appointed by the mayor subject to the approval of city counsel.  Chicago Municipal Code, Section 2-57-030.  Defendant City further states that OPS was restructured by ordinance in 2007 as the Independent Police Review Authority.

43.     Over the last 10 years, there has not been an entity and/or agency, not employed by the City of Chicago, which has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by OPS.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 43.

44.     Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, which has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 44.

45.     Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the work performed by OPS to determine whether OPS is properly investigating the complaints of misconduct of Chicago Police Officers.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 45.

46.     Due to the intimate connection between the OPS and the Mayor of the City of Chicago, as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 46.

47.    For example, Officer Raymond Piwnicki obtained 56 complaints against him within 7 years and failed to receive meaningful discipline for any act of misconduct.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the vague allegations contained in paragraph 47, including what is meant by the term "meaningful discipline" and what the allegations purport to be an "example" of. Defendant City further notes that an answer or substantive response to certain portions of paragraph 47 might be construed as revealing confidential information about a non-party that should be protected from disclosure.

48.    Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as 10 lawsuits, amounting to over 2.5 million dollars in City tax dollars that had to be paid as a result of the litigation that was lodged against him.

**ANSWER:**    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 48. Defendant City further notes that an answer or substantive response to certain portions of paragraph 48 might be construed as revealing confidential information about a non-party that should be protected from disclosure.

49.    This lack of independent review has been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that it has created an environment where police officers for the CITY OF CHICAGO recognize that they will not be punished for committing acts such as those alleged in this complaint and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 49.

## PARTICULARIZED MISCONDUCT OF
## CERTAIN OFFICERS[1]

50.    Chicago Police Officer Broderick Jones has pled guilty, in Federal Court, before the Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit: possession of cocaine with the intent to distribute, robbery and extortion.

---

[1] These allegations serve as an example of misconduct by Chicago Police Officers, as well as the failure of the Chicago Police Department and OPS, to monitor itself.

**ANSWER:**    Defendant City denies any failure of the Chicago Police Department and/or OPS to "monitor itself."

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant City admits Broderick Jones pled guilty to certain charges in Federal Court before Judge Guzman.  Defendant City further admits the existence of a document entitled "Plea Agreement" in the case of *United States of America v. Broderick Jones*, Case No. 05 CR 70-1, that reflects, upon information and belief, Broderick Jones pled guilty to Counts I (a pattern of racketeering activity, in violation of 18 U.S.C. § 1962), II (conspiring to distribute and to possess with intent to distribute controlled substances) and XVI (possession, using, carrying and brandishing a firearm in furtherance of drug trafficking crimes and crimes of violence, in violation of 18 U.S.C. § 942(c)) of the superseding indictment.  To the extent any remaining allegations in paragraph 50 are inconsistent with the foregoing, Defendant City denies those allegations.

51.    In his plea of guilty, Broderick Jones admitted that he committed robbery, extortion and possession of cocaine with the intent to distribute, while he was working for the Chicago Police Department and while he was acting in the capacity of a Chicago Police Officer. He also admitted to undertaking these efforts from 1999 through March 2005.

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant City admits the existence of a document entitled "Plea Agreement" in the case of *United States of America v. Broderick Jones*, Case No. 05 CR 70-1, that reflects, upon information and belief, Broderick Jones pled guilty and admitted to being involved in a pattern of racketeering activity, including robbery, extortion and possession of controlled substances with intent to distribute, during the period from 1999 until about March 2005.  To the extent any remaining allegations in paragraph 51 are inconsistent with the foregoing, Defendant City denies those allegations.

52.    Chicago Police Officer Corey Flagg pled guilty, before the Honorable Judge Guzman, in Federal Court, to having conspired, along with Chicago Police Officers Eural Black, Darek Haynes, Broderick Jones and others, to intentionally possessing and distributing cocaine and marijuana.

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant City admits Corey Flagg pled guilty to certain charges in Federal Court before Judge Guzman.  Defendant City further admits the existence of a document entitled "Plea Agreement" in the case of *United States of America v. Corey Flagg*, Case No. 05 CR 70-2, that reflects, upon information and belief, Corey Flagg pled guilty to Counts I (conspiracy to distribute and to possess with intent to distribute controlled substances) and III (possessing, using, carrying, and brandishing a firearm in furtherance of a drug trafficking crime) of the indictment.  The City admits the Plea Agreement relative to Corey Flagg further reflects, upon information and belief, that Flagg conspired with Broderick Jones, Darek Haynes, Eural Black and others to possess with intent to distribute controlled substances, namely mixtures containing cocaine and qualities of marijuana, in violation of 21 U.S.C. §846.  To the extent any remaining allegations in paragraph 52 are inconsistent with the foregoing, Defendant City denies those allegations.

53.    Corey Flagg pled guilty to having worked with Eural Black, Darek Haynes and Broderick Jones to obtain cocaine, marijuana and drug money, through robbery and extortion.

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant City admits the existence of a document entitled "Plea Agreement" in the case of *United States of America v. Corey Flagg*, Case No. 05 CR 70-2, that reflects, upon information and belief, Corey Flagg admitted he worked with other officers, including Eural Black, Darek Haynes and Broderick Jones, to obtain cocaine, marijuana, as well as drug money, through robbery, extortion and other unlawful means.  To the extent any remaining allegations in paragraph 53 are inconsistent with the foregoing, Defendant City denies those allegations.

54.    Corey Flagg, in his plea of guilty, stated that he understood that any cocaine and marijuana obtained during the course of his criminal efforts would be distributed to the people he was criminally involved with (i.e. Eural Black, Darek Haynes and Broderick Jones).

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant City admits the existence of a document entitled "Plea Agreement" in the case of *United States of America v. Corey Flagg*, Case No. 05 CR 70-2, that reflects, upon information and belief, Corey Flagg "understood that any cocaine and marijuana obtained by the conspirators during the course if the conspiracy would be distributed to other individuals."  To the extent any remaining allegations in paragraph 54 are inconsistent with the foregoing, Defendant City denies those allegations.

55.    Corey Flagg admitted, in his plea agreement, that while he was a Chicago Police Officer, he knew that Broderick Jones recruited Chicago Police Officers, including himself and Officer Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant City admits the existence of a document entitled "Plea Agreement" in the case of *United States of America v. Corey Flagg*, Case No. 05 CR 70-2, that reflects, upon information and belief, Corey Flagg "knew that Jones recruited CPD officers, including himself (Flagg), Haynes, and others, to conduct vehicle stops and home invasions of drug dealers in order to illegally obtain drugs, money, and weapons from those drug dealers." To the extent any remaining allegations in paragraph 55 are inconsistent with the foregoing, Defendant City denies those allegations.

56.    Corey Flagg, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official position as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

**ANSWER:**    Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action.  Defendant admits the existence of a document entitled "Plea

Agreement" in the case of *United States of America v. Corey Flagg*, Case No. 05 CR 70-2, that reflects, upon information and belief, Corey Flagg "and the other CPD officers used their power, authority, official position, and knowledge as law enforcement officers to promote and protect the operation of the conspiracy." To the extent any remaining allegations in paragraph 56 are inconsistent with the foregoing, Defendant City denies those allegations.

57.     Eural Black, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Hibbler:

    a.    attempting to conspire and distribute controlled substances;

    b.    multiple acts of robbery and racketeering;

    c.    the procurement of weapons from individuals through robbery and extortion;

    d.    recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

    e.    delivering controlled substances in exchange for cash;

    f.    not enforcing the law with individuals that he was involved so that he could promote criminal activity;

    g.    along with Eural Black, Corey Flagg, Darek Haynes and non-Chicago Police Officers, distributing cocaine (up to 5 kilograms);

    h.    distributing cocaine in exchange for cash;

    i.    conducting home invasions of individuals (along with Corey Flagg, Eural Black and Darek Haynes) for the purpose of obtaining money, property, weapons and controlled substances;

    j.    using the power of his office as a Chicago Police Officer to engage in the above (a-i) acts;

    k.    using the facilities of the Chicago Police Department, namely, his badge, gun, bullet proof vest and handcuffs, to promote his illegal activity (a-i).

**ANSWER:**     Defendant City denies the allegations in this paragraph are applicable or relevant to plaintiff's claims in this action. Defendant City admits Eural Black was convicted of

certain charges by a Federal jury pursuant to a trial conducted by Judge Guzman.  Defendant

City denies the jury trial took place before Judge Hibbler.  Defendant City admits the existence

of a Jury Verdict Form that reflects, upon information and belief, Eural Black was convicted

by a jury of Counts I (racketeering conspiracy), II (drug conspiracy), III (robbery/extortion

conspiracy), IV (firearm offense), V (attempted possession of a controlled substance with

intent to distribute), VI (attempted armed robbery/extortion), VII (firearms offense) and XIII

(possession of a controlled substance) of the indictment.   Defendant City denies any

remaining allegations contained in paragraph 57 inconsistent with the foregoing.

## OPS INVESTIGATION RELATIVE TO
## BLACK, FLAGG, JONES AND HAYNES

58.    Corey Flagg, prior to being charged of criminal activity, possessed over 10
complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**    Defendant City upon information and belief denies the allegations contained in

paragraph 58.

59.    Corey Flagg has had no less then 15 federal lawsuits filed against him for civil
rights violations for activity that occurred while he was employed as a police officer for the
CITY OF CHICAGO.

**ANSWER:**    Based on its review of the Northern District of Illinois Pacer/ECF system,

Defendant City admits the allegations contained in paragraph 59.

60.    Eural Black, prior to being charged with criminal activity, possessed over 10
complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**    Defendant City upon information and belief denies the allegations contained in

paragraph 60.

61.    Broderick Jones, prior to being charged with criminal activity, possessed over 10
complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**    Defendant City upon information and belief denies the allegations contained in

paragraph 61.

62.     Darek Haynes has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**     Based on its review of the Northern District of Illinois Pacer/ECF system,

Defendant City denies the allegations contained in paragraph 62.

63.     Darek Haynes, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     Defendant City upon information and belief denies the allegations contained in

paragraph 63.

### LAWLESSNESS IN THE CHICAGO POLICE DEPARTMENT AND ITS CONNECTION TO THE POLITICAL SCHEME OF THE CITY OF CHICAGO

64.     Due to the lack of legitimate review of misconduct by Chicago Police Officers, many police officers for the City of Chicago believe that they can engage in lawless activities.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 64.

65.     The financial relationship between the City of Chicago and the OPS is such that the OPS cannot be independent.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 65.

66.     This is due to the fact that, *inter alia,* if a determination is made by OPS that a police officer has committed an act of misconduct, said determination and the facts which flow from said determination may be used by the person, against whom the misconduct was inflicted, to receive a monetary award and/or settlement against the City of Chicago.

**ANSWER:**     To the extent that paragraph 66 is premised upon the allegations of paragraph 65,

Defendant City denies the allegations contained therein.  Further, the allegations contained in

paragraph 66 are vague, present incomplete hypothetical circumstances, and require speculation.

Defendant City therefore lacks knowledge or information sufficient to form a belief as to the

truth or falsity of any remaining allegations in this paragraph.

67.     In other words, if OPS renders a decision that a complaint should be sustained against an officer, the complainant may use the information gathered, as well as the fact that the complaint has been sustained, against the officer in a civil proceeding, to receive compensation.

**ANSWER:**    The allegations contained in paragraph 67 are vague, present incomplete hypothetical circumstances, and require speculation.  Defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.

68.    Sustained complaints by OPS dramatically increase the likelihood that the City of Chicago will have to indemnify the officer for the misconduct inflicted by said officer.

**ANSWER:**    The allegations contained in paragraph 68 are vague, present incomplete hypothetical circumstances, and require speculation.  Defendant City therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.

69.    Due to the structure of OPS and its intimate connection with the City of Chicago, OPS has been an illegitimate entity to investigate the misconduct of Chicago Police Officers.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 69.

70.    Due to the structure of OPS and its intimate connection with the City of Chicago, Chicago Police Officers have been able to engage in significant acts of lawlessness.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 70.

71.    It is due to these lawless activities that the constitutional rights of citizens become infringed, as police officers believe that they will be protected by OPS, which is, in turn, protected by the Mayor of the City of Chicago who appoints the person in charge of OPS.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 71.  Defendant City states the chief administrator of OPS was appointed by the mayor subject to the approval of city counsel.  Chicago Municipal Code, Section 2-57-030.  Defendant City further states that OPS was restructured by ordinance in 2007 as the Independent Police Review Authority.

72.    This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 72.

73.    A code of silence exists between the officers of said police department of the Defendant Municipality.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 73.

### MISCELLANEOUS FACTS REGARDING MONELL LIABILITY

74.    In the year 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable for misconduct.

**ANSWER:**    Defendant City admits in January 2000, Alderman William Beavers, then Chairman of the Committee on Police and Fire of the Chicago City Council, proposed a resolution that stated, in part, "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."  Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 74.

75.    William M. Beavers was an Alderman for the City of Chicago.  In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

**ANSWER:**    Defendant City admits the allegations contained in paragraph 75.

76.    Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

**ANSWER:**    Defendant City admits in January 2000, Alderman William Beavers, then Chairman of the Committee on Police and Fire of the Chicago City Council, proposed a resolution that stated, in part, "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."  Defendant City lacks knowledge or

information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 76.

77.    Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

**ANSWER:**    Defendant City admits the allegations contained in paragraph 77.

78.    Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago,* 2003 U.S. Dist., LEXIS, 16565 (N.D. Ill. Sep. 19, 2003).

**ANSWER:**    Defendant City admits Judge Holderman issued a legal opinion in *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16565 (N.D. Ill. Sept. 19, 2003), but denies its relevance or applicability to this matter.

79.    In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed and slanted in favor of officers.

**ANSWER:**    Defendant City denies the allegations of paragraph 79.  Defendant City states the reference by Judge Holderman in *Garcia v. City of Chicago* to investigations being incomplete, inconsistent, delayed and slanted in favor of the officers was limited to investigations of "off-duty police officer violence," and therefore is inapplicable to the circumstances alleged in the complaint.  Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 79.

80.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's to the 1990's, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 80.

81.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's to the 1990's, and the fact that the Mayor acknowledges that he failed to properly investigate torture that occurred by Chicago Police Officers while he was Cook County State's attorney, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same.  This has occurred

as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:** Defendant City denies the allegations contained in paragraph 81.

## BRAINMAKER

82. In 1995, the City of Chicago became aware of the BrainMaker program.

**ANSWER:** Defendant City denies the allegations contained in paragraph 82. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

83. "BrainMaker" is a software product which can be used as an assistive device to forecast which officers on the police force are potential candidates for misbehavior.

**ANSWER:** Defendant City admits "BrainMaker" is a computer software program. Defendant City states "BrainMaker" was described as a "neural network" artificial intelligence program intended to assist users by identifying patterns and making predictions using examples from the past. Defendant City denies any remaining allegations contained in paragraph 83 inconsistent with the foregoing. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

84. The Department's Internal Affairs Division used BrainMaker to study 200 officers who had been terminated for disciplinary reasons and developed a database of patterns of characteristics, behaviors and demographics found among the 200 police officers.

**ANSWER:** Defendant City admits "BrainMaker" was part of the Chicago Police Department's attempt in the 1990's to develop an "Automated Early Warning System," which system was intended to compare demographic, disciplinary, and performance data of certain personnel who had been separated from the CPD with data of incumbent personnel. The project attempted to utilize BrainMaker's purported "neural networking" to identify patterns among separated personnel in an attempt to identify those same patterns among incumbent personnel. Defendant City further admits the CPD's Internal Affairs Division supervised the project.

Defendant City denies the remaining allegations contained in paragraph 84. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

85. The purpose of this study was to try to predict and/or understand the misbehavior of Chicago Police Officers.

**ANSWER:** Defendant City admits the Chicago Police Department attempted in the 1990's to develop an "Automated Early Warning System" to identify personnel likely to engage in conduct that could result in their separation from the Chicago Police Department. The mission of the project was to provide the Department with the means to identify personnel who were exhibiting behavior that was reasonably predictive of future serious misconduct, so that appropriate preventative or interventional services and programs could be provided. Defendant City denies the remaining allegations contained in paragraph 85 inconsistent with the foregoing. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

86. BrainMaker compared current officers against the pattern gleaned from the 200 member control group and produced a list of officers who, by virtue of matching the pattern or sharing questionable characteristics, were deemed to be "at risk."

**ANSWER:** Defendant City admits "BrainMaker" was part of the Chicago Police Department's attempt in the 1990's to develop an "Automated Early Warning System." The mission of the project was to provide the CPD with the means to identify personnel who were exhibiting behavior that was reasonably predictive of future serious misconduct. The project attempted to utilize BrainMaker's purported "neural networking" to identify patterns among separated personnel in an attempt to identify those same patterns among incumbent personnel. Defendant City denies the remaining allegations contained in paragraph 86. In further response,

Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

87.     BrainMaker was used to study the records of 12,500 police officers (records that included such information as age, education, sex, race, number of traffic accidents, reports of lost weapons or badges, marital status, performance reports and frequency of sick leaves).

**ANSWER:**    Defendant City admits "BrainMaker" was part of the Chicago Police Department's attempt in the 1990's to develop an "Automated Early Warning System." The mission of the project was to provide the CPD with the means to identify personnel who were exhibiting behavior that was reasonably predictive of future serious misconduct. The project attempted to utilize BrainMaker's purported "neural networking" to identify patterns among separated personnel in an attempt to identify those same patterns among incumbent personnel. Defendant City denies any remaining allegations contained in paragraph 87 inconsistent with the foregoing.    In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

88.     The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago Police Officers. Of those 91 people, nearly half were found to be already enrolled in a counseling program founded by the personnel department to help officers that were found to have engaged in acts of misconduct.

**ANSWER:**    Defendant City admits "BrainMaker" was used as part of the Chicago Police Department's attempt in the 1990's to develop an "Automated Early Warning System." The mission of the project was to provide the CPD with the means to identify personnel who were exhibiting behavior that was reasonably predictive of future serious misconduct. Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 88. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

89.     Terry Heckart, a graduate student at Ohio's Bowling Green State University, recommended BrainMaker to OPS and/or the Office of Internal Affairs.

**ANSWER:** Defendant City admits upon information and belief that in 1993, Ms. Teresa Heckert was a graduate student at Bowling Green State University. Defendant City further admits Ms. Heckert assisted the Chicago Police Department in its efforts to develop the "Automated Early Warning System" in the 1990's. Defendant City admits Ms. Heckert and another graduate student in 1993 suggested the Chicago Police Department could make use of recent advances in the field of artificial intelligence and suggested the "BrainMaker" software program as part of the development of an "Automated Early Warning System." Defendant City denies any remaining allegations contained in paragraph 89. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

90.    Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the City, through its agents, abandoned the project, further demonstrating the inherent difficulty in having the City of Chicago police itself.

**ANSWER:** Defendant City denies the allegations contained in paragraph 90. In further response, Defendant City denies the relevance or applicability of "BrainMaker" to the circumstances alleged in Plaintiff's Complaint.

<u>**COUNT I**</u>
<u>**§1983 False Arrest**</u>

The City of Chicago is not a party defendant from which plaintiffs seek relief in Count I. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiffs reallege and incorporate certain paragraphs in later counts against the City.

91.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:** Defendant City adopts and restates its answers and responses to paragraph 1 through 90 as and for its answer and response to paragraph 91 as though fully set forth herein.

92.    The actions of the DEFENDANT OFFICERS caused the arrest of the PLAINTIFFS without probable cause to believe that PLAINTIFFS committed criminal activity.

Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 92.

93.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 93.

## COUNT II
## False Arrest - State Claim

The City of Chicago is not a party defendant from which plaintiffs seek relief in Count II.

The City therefore does not answer or respond to the allegations in this count except to the extent

plaintiffs reallege and incorporate certain paragraphs in later counts against the City.

94.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1

through 90 as and for its answer and response to paragraph 94 as though fully set forth herein.

95.    The DEFENDANT OFFICERS arrested PLAINTIFFS without probable cause to believe that PLAINTIFFS committed criminal activity.  The conduct of the DEFENDANT OFFICERS was in violation of the Constitution to the State of Illinois as well as Illinois law. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations set forth above.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 95.

## COUNT III
## Malicious Prosecution - State Claim

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count

III.  The City therefore does not answer or respond to the allegations in this count except to the

extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

96.    PLAINTIFF JOHNSON re-alleges paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to paragraph 1

through 90 as and for its answer and response to paragraph 96 as though fully set forth herein.

97.     The DEFENDANT OFFICERS alleged that PLAINTIFF JOHNSON violated the laws of the State of Illinois.  These allegations commenced or continued a criminal proceeding against PLAINTIFF JOHNSON.

**ANSWER:**     Defendant City admits plaintiff Deward Johnson was arrested and charged with

violations of the laws of the State of Illinois.  Defendant City further admits criminal proceedings

were commenced against plaintiff.  Defendant City denies any remaining allegations contained

in paragraph 97 inconsistent with the foregoing.

98.     The DEFENDANT OFFICERS engaged in this effort without probable cause.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 98.

99.     The underlying criminal charges were ultimately resolved in favor of PLAINTIFF JOHNSON.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in paragraph 99.

100.     The underlying criminal charges were resolved in a manner indicative of innocence.

**ANSWER:**     Defendant City lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in paragraph 100.

101.     The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

**ANSWER:**     Defendant City denies Officers Johnson and/or Bady violated Illinois state law as

alleged, and it therefore denies the allegations of paragraph 101.

## COUNT IV
## §1983 Deliberate Indifference to Medical Needs

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count IV. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

102. PLAINTIFF JOHNSON re-alleges paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:** Defendant City adopts and restates its answers and responses to paragraph 1 through 90 as and for its answer and response to paragraph 102 as though fully set forth herein.

103. The actions of the DEFENDANT OFFICERS were deliberately indifferent to the medical needs of PLAINTIFF JOHNSON in that said OFFICERS failed to provide PLAINTIFF JOHNSON with immediate medical attention.

**ANSWER:** Defendant City denies the allegations contained in paragraph 103.

104. Said OFFICERS, instead of transporting PLAINTIFF JOHNSON for immediate medical treatment, collectively and/or individually, refused to provide PLAINTIFF JOHNSON with medical treatment while in police custody.

**ANSWER:** Defendant City denies the allegations contained in paragraph 104.

105. This conduct violated the Fourteenth Amendment to the United States Constitution.

**ANSWER:** Defendant City denies the "conduct" alleged in this count, and it therefore denies the allegations of paragraph 105.

106. The aforementioned actions of said OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

**ANSWER:** Defendant City denies the "conduct" alleged in this count, and it therefore denies the allegations of paragraph 106.

## COUNT V
## §1983 Conspiracy Claim

The City of Chicago is not a party defendant from which plaintiffs seek relief in Count V. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiffs reallege and incorporate certain paragraphs in later counts against the City.

107.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1 through 90 as and for its answer and response to paragraph 107 as though fully set forth herein.

108.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the United States Constitution, *inter alia* the Fourth Amendment and Fourteenth Amendment.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 108.

## COUNT VI
## Conspiracy Claim - State Law

The City of Chicago is not a party defendant from which plaintiffs seek relief in Count VI. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiffs reallege and incorporate certain paragraphs in later counts against the City.

109.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1 through 90 as and for its answer and response to paragraph 109 as though fully set forth herein.

110.    The aforementioned actions were the direct and proximate cause of the violations of the Constitution of the State of Illinois and Illinois law.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 110.

## COUNT VII
## §1983 LIABILITY OF DEFENDANTS DALEY
## CLINE, HILLARD, MORRIS AND LIGHTFOOT

The City of Chicago is not a party defendant from which plaintiffs seek relief in Count

VII.  The City therefore does not answer or respond to the allegations in this count except to the

extent plaintiffs reallege and incorporate certain paragraphs in later counts against the City.  The

City further notes that defendants Daley, Hillard, and Lightfoot have been dismissed from this

action.  (Dkt. #51).  Count VII therefore should be dismissed from plaintiffs' complaint.

111.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1

through 90 as and for its answer and response to paragraph 111 as though fully set forth herein.

112.    Defendants CLINE, HILLARD, MORRIS, DALEY and LIGHTFOOT, at all
times material to this complaint, were aware that the City maintained a widespread and settled
policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and
otherwise control its police officers.  These Defendants were also aware that the maintenance of
these practices would result in preventable police abuse.

**ANSWER:**    Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with

prejudice from this action, as reflected in the Court's Order dated May 5, 2008.  (Dkt. #51).  No

further answer to this paragraph is necessary.  To the extent this paragraph is realleged against

the City in any subsequent counts, Defendant City denies the allegations and further denies

liability to plaintiff.

113.    These Defendants oversaw, endorsed, condoned and/or acquiesced in the above-
mentioned policies, practices and customs and refused to take steps to correct them.

**ANSWER:**    Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with

prejudice from this action, as reflected in the Court's Order dated May 5, 2008.  (Dkt. #51).  No

further answer to this paragraph is necessary.  To the extent this paragraph is realleged against

the City in any subsequent counts, Defendant City denies the allegations and further denies liability to plaintiff.

114.    These Defendants, at all times material to this complaint, caused and facilitated the systematic denial of Plaintiffs constitutional rights, by, among other things:

        (a)    failing to monitor police officers and groups who violate the constitutional rights of citizens;

        (b)    failing to discipline police officers who engaged in constitutional rights violations;

        (c)    turning a blind eye to repeated and systemic abuses of the constitutional rights of citizens, including the Plaintiff; and

        (d)    failing to develop and implement an effective early warning system to identify police officers and groups who systematically violate the constitutional rights of citizens.

**ANSWER:**    Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with prejudice from this action, as reflected in the Court's Order dated May 5, 2008. (Dkt. #51). No further answer to this paragraph is necessary. To the extent this paragraph is realleged against the City in any subsequent counts, Defendant City denies the allegations and further denies liability to plaintiff.

115.    These Defendants were, at all times material to this complaint, deliberately indifferent to the rights and safety of Plaintiff, as evidenced by their acquiescence to and support of these policies and their obvious consequences.

**ANSWER:**    Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with prejudice from this action, as reflected in the Court's Order dated May 5, 2008. (Dkt. #51). No further answer to this paragraph is necessary. To the extent this paragraph is realleged against the City in any subsequent counts, Defendant City denies the allegations and further denies liability to plaintiff.

WHEREFORE, for the foregoing reasons, Count VII of plaintiffs' complaint should be dismissed.

## COUNT VIII
### §1983 Equal Protection — Class of One

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count

VIII. The City therefore does not answer or respond to the allegations in this count except to the

extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

116.    PLAINTIFF JOHNSON re-alleges paragraphs 1 - 90 as though fully set forth
herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1

through 90 as and for its answer and response to paragraph 116 as though fully set forth herein.

117.    The actions of THE DEFENDANT OFFICERS violated the Equal Protection
clause to the United States Constitution.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 117.

118.    The aforementioned actions of said OFFICERS were the direct and proximate
cause of the constitutional violations set forth above.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 118.

## COUNT IX
### *Monell*

119.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1

through 90 as and for its answer and response to paragraph 119 as though fully set forth herein.

120.    As a direct and proximate result of the aforementioned acts and omissions by
Defendant CITY OF CHICAGO there existed a custom, practice, policy, and/or pattern, either
implicit or explicit, of the CITY OF CHICAGO in which officers were not held accountable for
their wrongful and/or illegal acts.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 120.

121.    Said custom, practice, policy, and/or pattern of the CITY OF CHICAGO
encouraged, endorsed, created willful ignorance of, or otherwise promoted said wrongful acts of
the DEFENDANT OFFICERS.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 121.

122.    As a direct and proximate result of said custom, practice, policy, and/or pattern, either implicit or explicit, of the CITY OF CHICAGO, PLAINTIFFS were injured in a personal and pecuniary manner.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 122.

WHEREFORE, defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count IX, and for its costs and fees, and for such further relief as this Court deems just and proper.

### COUNT X
### 745 ILCS 10/9-102 *Claim* Against the CITY OF CHICAGO

123.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1 through 90 as and for its answer and response to paragraph 123 as though fully set forth herein.

124.    Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS alleged above.

**ANSWER:**    Defendant City admits Defendant Officers Johnson and Bady were employees of the Chicago Police Department on June 21, 2007.

125.    The DEFENDANT OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF CHICAGO.

**ANSWER:**    Defendant City denies the allegations of misconduct asserted against Officers Johnson and Bady in the complaint, which is the underlying premise of this paragraph, and it therefore denies the allegations in paragraph 125.

WHEREFORE, defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count X, and for its costs and fees, and for such further relief as this Court deems just and proper.

## COUNT XI
## Supplementary Claim for *Respondeat Superior*

126.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraph 1 through 90 as and for its answer and response to paragraph 126 as though fully set forth herein.

127.    The aforesaid acts of the DEFENDANT OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent under the doctrine of *respondeat superior*.

**ANSWER:**    Defendant City denies the allegations of misconduct asserted against Officers Johnson and Bady in the complaint, which is the underlying premise of this paragraph, and it therefore denies the allegations in paragraph 127.

WHEREFORE, defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count XI, and for its costs and fees, and for such further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

NOW COMES defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states as follows:

1.    To the extent any individual employees of the City of Chicago or its police department are not liable as alleged in the complaint, the City would not be liable.

2.    Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.     Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.     Plaintiffs' claims in the complaint are barred by the applicable statutes of limitations.

5.     Plaintiffs' claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

6.     The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.

7.     As to plaintiffs' state law claims, Defendant City is not liable to pay attorney fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'"  *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

8.     To the extent any injuries or damages claimed by either plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of that plaintiff as reflected in the public record, including but not limited to police reports, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to that plaintiff by the jury in this case.

9.     To the extent either plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by that plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

**JURY DEMAND**

Defendant City of Chicago respectfully requests a trial by jury.


Dated: July 21, 2008                              Respectfully submitted,


                                    By: s/ Paul A. Michalik
                                        One of the Attorneys for Defendant,
                                        CITY OF CHICAGO

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Kimberly D. Fahrbach
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2008, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Horwitz, Richardson & Baker, LLC
20 South Clark Street
Suite 500
Chicago, Illinois  60603
312.676.2100 (telephone)
312.372.7076 (facsimile)
lobh@att.net

                                        s/ Paul A. Michalik
                                        _____
                                        Paul A. Michalik

CHICAGO\2465595.1
ID\PAM