**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEWARD JOHNSON and ARTHUR BRIGHT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.:  07 C 7036 |
| C.S. JOHNSON (STAR #16589), C.M. BADY (STAR #11453), and the CITY OF CHICAGO, | ) ) ) ) | Judge Ronald Guzman Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) ) | |

## DEFENDANT CHERRON BADY'S ANSWER TO PLAINTIFFS' COMPLAINT AT LAW

Defendant, Cherron Bady, by her attorney, Terrence M. Burns of Dykema Gossett PLLC, for her answer to plaintiffs' complaint, states:

## JURISDICTION

1.     The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

**ANSWER:**   This Defendant admits plaintiffs' complaint includes claims that invoke the jurisdiction of this Court.  This Defendant denies any liability to plaintiffs for any of the claims asserted in the complaint.

## PARTIES

2.     PLAINTIFFS are residents of the State of Illinois and of the United States.

**ANSWER:**   This Defendant admits plaintiff Deward Johnson provided information to police indicating he resided in Chicago, Illinois.  This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of any information provided by plaintiff

Johnson.  This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 2.

3.    The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

**ANSWER:**    This Defendant admits she was employed by the Chicago Police Department and was on duty as a Chicago police officer on June 21, 2007.

4.    RICHARD DALEY was and is the acting mayor for the CITY OF CHICAGO.

**ANSWER:**    This Defendant admits Richard M. Daley has been the duly elected Mayor of the City of Chicago since 1989.

5.    PHILIP CLINE was and is the acting superintendent of police for the Chicago Police Department.

**ANSWER:**    This Defendant admits Philip Cline served as the Superintendent of Police for the Chicago Police Department from October 2003 through August 2007.

6.    TERRY HILLARD was the acting superintendent of police for the Chicago Police Department.

**ANSWER:**    This Defendant admits Terry Hillard served as the Superintendent of Police for the Chicago Police Department from 1998 to 2003.

7.    LORI LIGHTFOOT was the Chief Administrator of the Chicago Police Department's Office of Professional Standards (OPS) from August 2002 to July 2004.

**ANSWER:**    This Defendant admits the allegations contained in paragraph 7.

8.    TISA MORRIS was the Chief Administrator of the Chicago Police Department's OPS from July 2004 to October 2006.

**ANSWER:**    This Defendant admits the allegations contained in paragraph 8.

9.    The CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICERS.  At all times material to this complaint, the DEFENDANT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

**ANSWER:**     This Defendant makes no answer or response to the allegations of paragraph 9 to the extent they are directed against other defendants.  This Defendant admits she is employed by the Chicago Police Department as a police officer.  Defendant further admits that on June 21, 2007 she was employed as a Chicago police officer and acted in accordance with the duties of her office.  This Defendant denies any remaining allegations contained in paragraph 9 inconsistent with the foregoing.

## FACTS

10.     On or about June 21, 2007, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the PLAINTIFFS.  This conduct violated the Fourth Amendment to the United States Constitution.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 10.

11.     On or about June 21, 2007, PLAINTIFFS did not obstruct justice, resist arrest and/or batter and/or assault any of the DEFENDANT OFFICERS.

**ANSWER:**     This Defendant admits plaintiffs did not batter or assault her on June 21, 2007.  This Defendant further admits the police department reports concerning plaintiff Deward Johnson's June 21, 2007 arrest do not reflect that plaintiffs obstructed justice, resisted arrest, or battered or assaulted any of the Defendant Officers.  This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained paragraph 11.

12.     The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure to the PLAINTIFFS.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 12.

13.     The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFFS with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFFS notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/or learn that PLAINTIFFS had committed criminal activity of any sort.  The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFFS.

**ANSWER:**    This Defendant admits she participated in the arrest of plaintiff Deward Johnson

on June 21, 2007, and further, that plaintiff was charged with criminal offenses.  This Defendant

denies the remaining allegations contained in paragraph 13.

14.    On June 21, 2007, PLAINTIFFS had not committed an act contrary to the laws of
the State of Illinois.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 14.

15.    As a direct and proximate result of one or more of the aforesaid acts or omissions
of the DEFENDANT OFFICERS, PLAINTIFFS were caused to suffer damages.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 15.

16.    On or about June 21, 2007, the DEFENDANT OFFICERS were on duty at all
times relevant to this complaint and were duly appointed police officers for the CITY OF
CHICAGO.  The DEFENDANT OFFICERS engaged in the conduct complained of, on said
date, in the course and scope of employment and while on duty.  This action is being brought
with regard to the individual capacity of the DEFENDANT OFFICERS.

**ANSWER:**    This Defendant admits that on June 21, 2007 she was employed by the Chicago

Police Department as a duly appointed police officer, and that her participation in the arrest of

plaintiff Deward Johnson while on duty was within the course and scope of her employment.

This Defendant admits plaintiff has sued her and defendant Officer Johnson in their individual

capacities.  This Defendant denies engaging in "the conduct complained of" in the complaint.

To the extent any remaining allegations in paragraph 16 are inconsistent with the foregoing, this

Defendant denies those allegations.

17.    Upon information and belief, C.S. JOHNSON (STAR # 16589), on June 21, 2007,
came into physical contact with PLAINTIFFS.

**ANSWER:**    This Defendant admits Officer Charles Johnson was assigned Star #16589 on

June 21, 2007, and that he participated in the arrest of plaintiff Deward Johnson on that date.

This Defendant is without knowledge or information as to the meaning of the vague term

"physical contact" as used by plaintiff in paragraph 17.  This Defendant therefore lacks

knowledge or information sufficient to form a belief as to the truth of falsity of the remaining allegations in paragraph 17.

18.     Upon information and belief, C.M. BADY (STAR # 11453), on June 21, 2007, came into physical contact with PLAINTIFFS.

**ANSWER:**     This Defendant admits she was assigned Star #11453 on June 21, 2007, and that she participated in the arrest of plaintiff Deward Johnson on that date.  This Defendant is without knowledge or information as to the meaning of the vague term "physical contact" as used by plaintiff in paragraph 18.  This Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 18.

## CONSPIRACY

19.     Some or all of the DEFENDANT OFFICERS conspired to cause damage to PLAINTIFFS in the following manner:

      a.      agreeing to falsely arrest and/or falsely institute criminal charges/proceedings against the PLAINTIFFS;

      b.      agreeing not to report each other after falsely arresting and/or charging PLAINTIFFS;

      c.      generating false documentation to cover-up for their own and each other's misconduct.

**ANSWER:**     To the extent the allegations of paragraph 19 are directed against this Defendant, she denies those allegations.

20.     In connection with the above conspiracy, the DEFENDANT OFFICERS specifically engaged in communication on or about June 21, 2007, whereby the DEFENDANT OFFICERS agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above.  As a result of this conspiracy, the DEFENDANT OFFICERS by and through their conduct, proximately caused PLAINTIFF JOHNSON to, *inter alia,* suffer injury, be charged with criminal allegations, incur financial loss, including attorney's fees, and suffer emotionally.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 20.

## EQUAL PROTECTION — CLASS OF ONE

21.     The actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFF JOHNSON, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly towards the PLAINTIFF JOHNSON, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:**     To the extent the allegations of paragraph 21 are directed against this Defendant,

she denies those allegations.

22.     In connection with the Equal Protection Claim, PLAINTIFF JOHNSON is a member of a protected class (African-American) and PLAINTIFF JOHNSON was treated differently by the DEFENDANT OFFICERS as a result.  The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF JOHNSON differently, trying to cause further injury to PLAINTIFF JOHNSON by illegally generating false evidence against and criminally charging PLAINTIFF JOHNSON, specifically due to the status of PLAINTIFF JOHNSON as African-American.

**ANSWER:**     This Defendant upon information and belief admits that plaintiff Deward Johnson

is African-American.  This Defendant denies the remaining allegations contained in paragraph

22.

23.     With regard to an Equal Protection Claim, PLAINTIFF JOHNSON was a "Class of One."  In that regard, PLAINTIFF JOHNSON was treated with ill will and/or discriminated against with no rational basis. PLAINTIFF JOHNSON was intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICERS.  The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF JOHNSON differently and trying to cause further injury to PLAINTIFF JOHNSON by generating false evidence against PLAINTIFF JOHNSON.  Further, PLAINTIFF JOHNSON was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

**ANSWER:**     To the extent the allegations of paragraph 23 are directed against this Defendant,

she denies those allegations.

### *MONELL* ALLEGATIONS

24.     It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

a.   generate false documentation to cover-up for the misconduct of fellow police officers;

b.   engage in acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

c.   fail to properly discipline officers from said police department who have committed act(s) of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

d.   fail to properly investigate a complaint of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence perpetrated by a CITY OF CHICAGO police officer upon another;

e.   fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence has been committed by said officer upon another;

f.   allow misconduct to occur in various types and severity such that police officers believe that they can engage in false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence without repercussions and/or significant repercussions;

g.   fail to provide adequate sanctions/discipline to officers who commit false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h.   fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i.   fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to

not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j.     fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.     fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l.     fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.     fail to properly investigate officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.     fail to take proper remedial action with officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, misrepresentation of facts, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.     fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing false arrest, fabricating evidence, malicious prosecuting others, misrepresenting facts, causing significant intrusions to the body of innocent citizens, using excessive force, and/or committing serious acts of violence, and violating

the rules, policies and procedures of the CITY OF CHICAGO police department.

**ANSWER:** The allegations in paragraph 24 do not appear to be directed against this Defendant. To the extent a response is deemed necessary from this Defendant, she denies participation in or knowledge of any of the purported customs, practices, and/or policies alleged by plaintiff in paragraph 24, and she therefore denies the allegations contained in paragraph 24, including subparagraphs (a) through (o), inclusive, and each of them.

25. This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:** The allegations in paragraph 25 do not appear to be directed against this Defendant. To the extent a response is deemed necessary from this Defendant, she denies participation in or knowledge of any of the purported practices and/or customs alleged in the complaint, and she therefore denies the allegations contained in paragraph 25.

26. A code of silence exists between the officers of said police department of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:** The allegations in paragraph 26 do not appear to be directed against this Defendant. To the extent a response is deemed necessary, this Defendant denies participation in or knowledge of any alleged "code of silence," and she therefore denies the allegations contained in paragraph 26.

## SPECIAL OPERATIONS OFFICERS

27. Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least 10 civilian complaints lodged against them.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.   To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 27.

28.     The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least 10 civilian complaints lodged against them, between the years 2001 and 2006.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.   To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 28.

29.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least 10 civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers").

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.   To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 29.

30.     The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.   To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 30.

31.     In the year 2007, an order was entered by the HONORABLE JUDGE LEFKOW regarding the Special Operations Officers for the City of Chicago.   The order provided, *inter alia,* that the parties were permitted to make public the names of 662 Special Operations Officers that had 10 or more civilian complaints lodged against them.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31.

32.     The CITY OF CHICAGO refuses to release the names of the Special Operations Officers, referenced in the order of the HONORABLE JUDGE LEFKOW, to the public.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32.

33.     There are at least 4 police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33.

34.     Within the last 4 years, 6 police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

**ANSWER:**   The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34.

35.     There are 10 police officers who worked in the Special Operations Section who received a combined total of 408 complaints of misconduct (with the Office of Professional Standards).  With regard to those 408 complaints, only three were sustained.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35.

36. Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never received a complaint that has been sustained.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 36.

37. The practices and/or customs regarding the actions and lack of investigation of the Special Operations Officers, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers designated as Special Operations Officers in the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 37.

38. A code of silence exists between the Special Operations Officers in the CITY OF CHICAGO. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 38.

## OFFICE OF PROFESSIONAL STANDARDS (OPS)

39.　　Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last 10 years, have resulted in a "sustained finding" against said officer.

**ANSWER:**　　The allegations contained in this paragraph are not directed against this

Defendant.　To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 39.

40.　　The OPS is fully funded by the City of Chicago.

**ANSWER:**　　The allegations contained in this paragraph are not directed against this

Defendant.　To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 40.

41.　　The OPS, over the last 10 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**　　The allegations contained in this paragraph are not directed against this

Defendant.　To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 41.

42.　　The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**　　The allegations contained in this paragraph are not directed against this

Defendant.　To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 42.

43.    Over the last 10 years, there has not been an entity and/or agency, not employed by the City of Chicago, which has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by OPS.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.    To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 43.

44.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, which has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.    To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 44.

45.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the work performed by OPS to determine whether OPS is properly investigating the complaints of misconduct of Chicago Police Officers.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.    To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45.

46.    Due to the intimate connection between the OPS and the Mayor of the City of Chicago, as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 46.

47.    For example, Officer Raymond Piwnicki obtained 56 complaints against him within 7 years and failed to receive meaningful discipline for any act of misconduct.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 47.

48.    Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as 10 lawsuits, amounting to over 2.5 million dollars in City tax dollars that had to be paid as a result of the litigation that was lodged against him.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 48.

49.    This lack of independent review has been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that it has created an environment where police officers for the CITY OF CHICAGO recognize that they will not be punished for committing acts such as those alleged in this complaint and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 49.

## PARTICULARIZED MISCONDUCT OF
## CERTAIN OFFICERS[1]

50.     Chicago Police Officer Broderick Jones has pled guilty, in Federal Court, before the Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit: possession of cocaine with the intent to distribute, robbery and extortion.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.    To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50.

51.     In his plea of guilty, Broderick Jones admitted that he committed robbery, extortion and possession of cocaine with the intent to distribute, while he was working for the Chicago Police Department and while he was acting in the capacity of a Chicago Police Officer. He also admitted to undertaking these efforts from 1999 through March 2005.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.    To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 51.

52.     Chicago Police Officer Corey Flagg pled guilty, before the Honorable Judge Guzman, in Federal Court, to having conspired, along with Chicago Police Officers Eural Black, Darek Haynes, Broderick Jones and others, to intentionally possessing and distributing cocaine and marijuana.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.    To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 52.

---

[1] These allegations serve as an example of misconduct by Chicago Police Officers, as well as the failure of the Chicago Police Department and OPS, to monitor itself.

**ANSWER:**    The allegations contained in footnote 1 are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in footnote 1.

53.    Corey Flagg pled guilty to having worked with Eural Black, Darek Haynes and Broderick Jones to obtain cocaine, marijuana and drug money, through robbery and extortion.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 53.

54.    Corey Flagg, in his plea of guilty, stated that he understood that any cocaine and marijuana obtained during the course of his criminal efforts would be distributed to the people he was criminally involved with (i.e. Eural Black, Darek Haynes and Broderick Jones).

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 54.

55.    Corey Flagg admitted, in his plea agreement, that while he was a Chicago Police Officer, he knew that Broderick Jones recruited Chicago Police Officers, including himself and Officer Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 55.

56.    Corey Flagg, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official position as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 56.

57.     Eural Black, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Hibbler:

  a.  attempting to conspire and distribute controlled substances;

  b.  multiple acts of robbery and racketeering;

  c.  the procurement of weapons from individuals through robbery and extortion;

  d.  recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

  e.  delivering controlled substances in exchange for cash;

  f.  not enforcing the law with individuals that he was involved so that he could promote criminal activity;

  g.  along with Eural Black, Corey Flagg, Darek Haynes and non-Chicago Police Officers, distributing cocaine (up to 5 kilograms);

  h.  distributing cocaine in exchange for cash;

  i.  conducting home invasions of individuals (along with Corey Flagg, Eural Black and Darek Haynes) for the purpose of obtaining money, property, weapons and controlled substances;

  j.  using the power of his office as a Chicago Police Officer to engage in the above (a-i) acts;

  k.  using the facilities of the Chicago Police Department, namely, his badge, gun, bullet proof vest and handcuffs, to promote his illegal activity (a-i).

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 57.

## OPS INVESTIGATION RELATIVE TO
## BLACK, FLAGG, JONES AND HAYNES

58.     Corey Flagg, prior to being charged of criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**  The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 58.

59.     Corey Flagg has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**  The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 59.

60.     Eural Black, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**  The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 60.

61.     Broderick Jones, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**  The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 61.

62.     Darek Haynes has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 62.

63.    Darek Haynes, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 63.

### LAWLESSNESS IN THE CHICAGO POLICE DEPARTMENT AND ITS CONNECTION TO THE POLITICAL SCHEME OF THE CITY OF CHICAGO

64.    Due to the lack of legitimate review of misconduct by Chicago Police Officers, many police officers for the City of Chicago believe that they can engage in lawless activities.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 64.

65.    The financial relationship between the City of Chicago and the OPS is such that the OPS cannot be independent.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 65.

66.    This is due to the fact that, *inter alia,* if a determination is made by OPS that a police officer has committed an act of misconduct, said determination and the facts which flow

from said determination may be used by the person, against whom the misconduct was inflicted, to receive a monetary award and/or settlement against the City of Chicago.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 66.

67. In other words, if OPS renders a decision that a complaint should be sustained against an officer, the complainant may use the information gathered, as well as the fact that the complaint has been sustained, against the officer in a civil proceeding, to receive compensation.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 67.

68. Sustained complaints by OPS dramatically increase the likelihood that the City of Chicago will have to indemnify the officer for the misconduct inflicted by said officer.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 68.

69. Due to the structure of OPS and its intimate connection with the City of Chicago, OPS has been an illegitimate entity to investigate the misconduct of Chicago Police Officers.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 69.

70. Due to the structure of OPS and its intimate connection with the City of Chicago, Chicago Police Officers have been able to engage in significant acts of lawlessness.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 70.

71.     It is due to these lawless activities that the constitutional rights of citizens become infringed, as police officers believe that they will be protected by OPS, which is, in turn, protected by the Mayor of the City of Chicago who appoints the person in charge of OPS.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 71.

72.     This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant denies that she "recognizes" police officers will not be disciplined by the Chicago Police Department for acts of misconduct. This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 72.

73.     A code of silence exists between the officers of said police department of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 73.

## MISCELLANEOUS FACTS REGARDING MONELL LIABILITY

74.    In the year 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable for misconduct.

**ANSWER:**    The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 74.

75.    William M. Beavers was an Alderman for the City of Chicago.  In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

**ANSWER:**    The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant admits William

Beavers was an alderman in Chicago.  This Defendant is without knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in

paragraph 75.

76.    Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

**ANSWER:**    The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in paragraph 76.

77.    Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant admits the allegations contained in paragraph 77.

78. Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago,* 2003 U.S. Dist., LEXIS, 16565 (N.D. Ill. Sep. 19, 2003).

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 78.

79. In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed and slanted in favor of officers.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 79.

80. Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's to the 1990's, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 80.

81. Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's to the 1990's, and the fact that the Mayor acknowledges that he failed to properly investigate torture that occurred by Chicago Police Officers while he was Cook County State's attorney, there has not been one Chicago

Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 81.

## BRAINMAKER

82.     In 1995, the City of Chicago became aware of the BrainMaker program.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 82.

83.     "BrainMaker" is a software product which can be used as an assistive device to forecast which officers on the police force are potential candidates for misbehavior.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 83.

84.     The Department's Internal Affairs Division used BrainMaker to study 200 officers who had been terminated for disciplinary reasons and developed a database of patterns of characteristics, behaviors and demographics found among the 200 police officers.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 84.

85.     The purpose of this study was to try to predict and/or understand the misbehavior of Chicago Police Officers.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 85.

86.     BrainMaker compared current officers against the pattern gleaned from the 200 member control group and produced a list of officers who, by virtue of matching the pattern or sharing questionable characteristics, were deemed to be "at risk."

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 86.

87.     BrainMaker was used to study the records of 12,500 police officers (records that included such information as age, education, sex, race, number of traffic accidents, reports of lost weapons or badges, marital status, performance reports and frequency of sick leaves).

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 87.

88.     The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago Police Officers. Of those 91 people, nearly half were found to be already enrolled in a counseling program founded by the personnel department to help officers that were found to have engaged in acts of misconduct.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 88.

89.     Terry Heckart, a graduate student at Ohio's Bowling Green State University, recommended BrainMaker to OPS and/or the Office of Internal Affairs.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.   To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 89.

90.     Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the City, through its agents, abandoned the project, further demonstrating the inherent difficulty in having the City of Chicago police itself.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.   To the extent a response may be deemed necessary, this Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 90.

## COUNT I
### §1983 False Arrest

91.     PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**     This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 91 as though fully set forth herein.

92.     The actions of the DEFENDANT OFFICERS caused the arrest of the PLAINTIFFS without probable cause to believe that PLAINTIFFS committed criminal activity. Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 92.

93.     The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 93.

WHEREFORE, Defendant, Cherron Bady, denies plaintiffs are entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiffs on count I, and for her costs and such further relief as this Court deems just.

## COUNT II
## False Arrest - State Claim

94.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 94 as though fully set forth herein.

95.    The DEFENDANT OFFICERS arrested PLAINTIFFS without probable cause to believe that PLAINTIFFS committed criminal activity.  The conduct of the DEFENDANT OFFICERS was in violation of the Constitution to the State of Illinois as well as Illinois law. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations set forth above.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 95.

WHEREFORE, Defendant, Cherron Bady, denies plaintiffs are entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiffs on count II, and for her costs and such further relief as this Court deems just.

## COUNT III
## Malicious Prosecution - State Claim

96.    PLAINTIFF JOHNSON re-alleges paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 96 as though fully set forth herein.

97.    The DEFENDANT OFFICERS alleged that PLAINTIFF JOHNSON violated the laws of the State of Illinois.  These allegations commenced or continued a criminal proceeding against PLAINTIFF JOHNSON.

**ANSWER:**    This Defendant admits plaintiff Johnson was arrested and subsequently charged with violations of the laws of the State of Illinois.  This Defendant further admits criminal

proceedings were commenced against plaintiff Johnson. This Defendant denies any remaining allegations contained in paragraph 97 inconsistent with the foregoing.

98.     The DEFENDANT OFFICERS engaged in this effort without probable cause.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 98.

99.     The underlying criminal charges were ultimately resolved in favor of PLAINTIFF JOHNSON.

**ANSWER:**     This Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 99.

100.     The underlying criminal charges were resolved in a manner indicative of innocence.

**ANSWER:**     This Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 100.

101.     The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 101.

WHEREFORE, Defendant, Cherron Bady, denies plaintiff Deward Johnson is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff Johnson on count III, and for her costs and such further relief as this Court deems just.

## <u>COUNT IV</u>
## <u>§1983 Deliberate Indifference to Medical Needs</u>

102.     PLAINTIFF JOHNSON re-alleges paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**     This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 102 as though fully set forth herein.

103.    The actions of the DEFENDANT OFFICERS were deliberately indifferent to the medical needs of PLAINTIFF JOHNSON in that said OFFICERS failed to provide PLAINTIFF JOHNSON with immediate medical attention.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 103.

104.    Said OFFICERS, instead of transporting PLAINTIFF JOHNSON for immediate medical treatment, collectively and/or individually, refused to provide PLAINTIFF JOHNSON with medical treatment while in police custody.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 104.

105.    This conduct violated the Fourteenth Amendment to the United States Constitution.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 105.

106.    The aforementioned actions of said OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 106.

WHEREFORE, Defendant, Cherron Bady, denies plaintiff Deward Johnson is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff Johnson on count IV, and for her costs and such further relief as this Court deems just.

## COUNT V
### §1983 Conspiracy Claim

107.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 107 as though fully set forth herein.

108.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the United States Constitution, *inter alia* the Fourth Amendment and Fourteenth Amendment.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 108.

WHEREFORE, Defendant, Cherron Bady, denies plaintiffs are entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiffs on count V, and for her costs and such further relief as this Court deems just.

## COUNT VI
## Conspiracy Claim - State Law

109.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 109 as though fully set forth herein.

110.    The aforementioned actions were the direct and proximate cause of the violations of the Constitution of the State of Illinois and Illinois law.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 110.

WHEREFORE, Defendant, Cherron Bady, denies plaintiffs are entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiffs on count VI, and for her costs and such further relief as this Court deems just.

## COUNT VII
## §1983 LIABILITY OF DEFENDANTS DALEY
## CLINE, HILLARD, MORRIS AND LIGHTFOOT

111.    PLAINTIFFS re-allege paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 111 as though fully set forth herein.

112.    Defendants CLINE, HILLARD, MORRIS, DALEY and LIGHTFOOT, at all times material to this complaint, were aware that the City maintained a widespread and settled policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and otherwise control its police officers.  These Defendants were also aware that the maintenance of these practices would result in preventable police abuse.

**ANSWER:**    Count VII is not directed against and seeks no relief from this Defendant, so no answer is made thereto.  Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with prejudice from this action as reflected in the Court's Order dated May 5, 2008.  (Dkt. #51).

113.    These Defendants oversaw, endorsed, condoned and/or acquiesced in the above-mentioned policies, practices and customs and refused to take steps to correct them.

**ANSWER:**    Count VII is not directed against and seeks no relief from this Defendant, so no answer is made thereto.  Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with prejudice from this action as reflected in the Court's Order dated May 5, 2008.  (Dkt. #51).

114.    These Defendants, at all times material to this complaint, caused and facilitated the systematic denial of Plaintiffs constitutional rights, by, among other things:

(a)    failing to monitor police officers and groups who violate the constitutional rights of citizens;

(b)    failing to discipline police officers who engaged in constitutional rights violations;

(c)    turning a blind eye to repeated and systemic abuses of the constitutional rights of citizens, including the Plaintiff; and

(d)    failing to develop and implement an effective early warning system to identify police officers and groups who systematically violate the constitutional rights of citizens.

**ANSWER:**    Count VII is not directed against and seeks no relief from this Defendant, so no answer is made thereto.  Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with prejudice from this action as reflected in the Court's Order dated May 5, 2008.  (Dkt. #51).

115.    These Defendants were, at all times material to this complaint, deliberately indifferent to the rights and safety of Plaintiff, as evidenced by their acquiescence to and support of these policies and their obvious consequences.

**ANSWER:**    Count VII is not directed against and seeks no relief from this Defendant, so no answer is made thereto.  Defendants Cline, Hillard, Morris, Daley and Lightfoot were dismissed with prejudice from this action as reflected in the Court's Order dated May 5, 2008.  (Dkt. #51).

## COUNT VIII
### §1983 Equal Protection — Class of One

116.    PLAINTIFF JOHNSON re-alleges paragraphs 1 - 90 as though fully set forth herein.

**ANSWER:**    This Defendant adopts and restates her answers and responses to paragraphs 1 through 90 as and for her answer and response to paragraph 116 as though fully set forth herein.

117.    The actions of THE DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 117.

118.    The aforementioned actions of said OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

**ANSWER:**    This Defendant denies the allegations contained in paragraph 118.

WHEREFORE, Defendant, Cherron Bady, denies plaintiff Deward Johnson is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff Johnson on count VIII, and for her costs and such further relief as this Court deems just.


## COUNT IX
### *Monell*

Defendant Bady is not a defendant from whom plaintiff seeks relief in count IX.  This Defendant therefore does not answer or respond to the allegations contained in count IX.


## COUNT X
### 745 ILCS 10/9-102 *Claim* Against the CITY OF CHICAGO

Defendant Bady is not a defendant from whom plaintiff seeks relief in count X.  This Defendant therefore does not answer or respond to the allegations contained in count X.

## COUNT XI
## Supplementary Claim for *Respondeat Superior*

Defendant Bady is not a defendant from whom plaintiff seeks relief in count XI. This Defendant therefore does not answer or respond to the allegations contained in count XI.

## DEFENDANT BADY'S AFFIRMATIVE DEFENSES

1.      An award of punitive damages would deprive Defendant Bady of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

2.      Under the Illinois Tort Immunity Act, Defendant Bady is not liable for any of the state law claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

3.      Defendant Bady is not liable for any of plaintiffs' alleged claims because a public employee acting within the scope of her employment is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

4.      Defendant Bady is entitled to qualified immunity for her conduct because it was not clearly established that her actions violated either plaintiff's constitutional rights. A reasonably competent police officer, objectively viewing the facts and circumstances then confronting defendant officers, could have believed that the actions taken by them were objectively reasonable and were within constitutional limits that were clearly established at the time.

5.      As to plaintiffs' state law claims, Defendant Bady is not liable to pay attorney fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

6.      Defendant Bady is absolutely immune for any testimony she may have given in plaintiff Deward Johnson's underlying criminal case.  *See Briscoe v. LaHue*, 460 U.S. 325 (1983).

7.      Under the Illinois Tort Immunity Act, a public employee is not liable for injuries caused by her institution or prosecution of any judicial or administrative proceeding within the scope of her employment, unless she acts maliciously and without probable cause.  745 ILCS 10/2-208.

8.      To the extent plaintiffs failed to mitigate any of their claimed injuries or damages, any verdict or judgment obtained by plaintiffs must be reduced by application of the principal that a plaintiff has a duty to mitigate those damages.

9.      To the extent any injuries or damages claimed by plaintiffs were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiffs as reflected in the public record, including but not limited to, police reports and court records, any verdict or judgment obtained by plaintiffs must be reduced by an amount commensurate with the degree of fault attributed to them by the jury in this case.

## JURY DEMAND

Defendant Cherron Bady respectfully requests a trial by jury.


Dated: July 21, 2008                                    Respectfully submitted,


                                                        By: s/ Paul A. Michalik
                                                            One of the Attorneys for Defendant,
                                                            CHERRON BADY

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Kimberly D. Fahrbach
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2008, I electronically filed the foregoing **Defendant**

**Cherron Bady's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF

system, which sent electronic notification of the filing on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Horwitz, Richardson & Baker, LLC
20 South Clark Street
Suite 500
Chicago, Illinois  60603
312.676.2100 (telephone)
312.372.7076 (facsimile)
lobh@att.net

s/ Paul A. Michalik
_____
Paul A. Michalik

CHICAGO\2471422.1
ID\PAM